Jura C. Zibas, Esq. (SBN 217864)
**WILSON, ELSER, MOSKOWITZ,**
  **EDELMAN & DICKER LLP**
150 E 42nd Street
New York, NY 10017
Telephone: (212) 915-5756
Facsimile:  (212) 490.3038
E-mail:     jura.zibas@wilsonelser.com

Marty B. Ready, Esq. (SBN 239135)
**WILSON, ELSER, MOSKOWITZ,**
  **EDELMAN & DICKER LLP**
401 West A Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 321-6200
Facsimile:  (619) 321-6201
E-mail:     marty.ready@wilsonelser.com

Attorneys for Plaintiffs,
LBF Travel Management Corp. and Michael Thomas

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

LBF TRAVEL MANAGEMENT
CORP., and MICHAEL THOMAS, an
individual,

                          Plaintiffs,

        vs.

THOMAS DEROSA, an individual, and
DOES 1 through 10,

                          Defendant.

Case No.  '20 CV 2404 W   AGS

**COMPLAINT FOR:**

(1)    Misappropriation of Trade Secrets
in Violation of the Defend Trade Secrets
Act, 18 U.S.C. §§ 1831 *et seq.*;

(2)    Misappropriation of Trade Secrets
in Violation of the California Uniform
Trade Secrets Act, Cal. Civ. Code §§
3426.1 *et seq.*;

(3)    Violation of the Computer Fraud &
Abuse Act, 18 U.S.C. §§ 1030, *et seq.*—
Count I (Based on Unauthorized Access
of Protected Computers);

(4)    Conversion;

(5)    Breach of Contract;

(6)    Breach of Oral Contract;

(7)    Breach of Fiduciary Duty and Duty
of Loyalty;

1
COMPLAINT

2185694v.1

| | |
|---|---|
| | ) (8)   Tortious Interference with<br>) Prospective Economic Relations;<br>)<br>) (9)   Unfair Competition in Violation of<br>) Cal. Bus. & Prof. Code §§ 17200 *et seq.*;<br>)<br>) (10)  Unjust Enrichment; and<br>)<br>) (11)  Preliminary Injunctive Relief<br>)<br>)<br>)<br>_____ ) |

LBF Travel Management Corp. and Michael Thomas, by and through their attorneys, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, complain and allege as follows:

## **INTRODUCTION**

1.    This Complaint arises from indisputable evidence that Defendant accessed, copied, retained, and continues to possess without authorization a large amount of proprietary, confidential, and trade secret information of Plaintiff LBF Travel Management Corp. fka LBF Travel, Inc. ("LBF"). Defendant surreptitiously accessed without authorization and in excess of his authorization the computer, server, and data center of Plaintiff LBF to copy the very software code Defendant sold all rights, title, and interest to Plaintiff LBF pursuant to an Asset Purchase Agreement.

2.    Defendant's conduct threatens the financial security of LBF and was used by Defendant to enrich himself to the detriment of LBF.  LBF seeks to be made whole for the significant harm it has suffered at the hands of Defendant as described more fully below.

3.    In addition to damages, LBF seeks injunctive relief from the Court to compel Defendant to refrain from disclosing and/or using LBF's confidential trade secret information and data. LBF seeks an order compelling the return of all proprietary, confidential, trade secret information of LBF in the possession of

2185694v.1

Defendant.

## **THE PARTIES**

4.     Plaintiff LBF is, and at all times relevant to this Complaint was, a corporation formed and existing under the laws of the State of Delaware.  LBF has its principal place of business at 4545 Murphy Canyon Road, Suite 210, San Diego, California.

5.     Plaintiff Michael Thomas ("Thomas") is, and at all times relevant to this Complaint was, an individual residing in San Diego County, California. Plaintiffs LBF and Thomas sometimes referred to collectively as Plaintiffs.

6.     Plaintiffs are informed and believe and thereon allege that defendant Thomas DeRosa ("Defendant") is, and at all times relevant to this Complaint was, an individual residing in San Diego County, California.

7.     The true names and capacities of Doe Defendants 1 through 10, inclusive, whether individual, corporate, associate or otherwise, are presently unknown to Plaintiffs. Plaintiffs are informed and believe and thereon allege that each of these Defendants is in some manner responsible for the events set forth in the Complaint. Plaintiffs therefore sue these Defendants by fictitious names. Plaintiffs will amend this Complaint to state the fictitious Defendants' true names and capacities when ascertained or according to proof at trial.

8.     Plaintiffs are informed and believe, and thereon allege, that at all times relevant to this Complaint, Defendant, and DOES 1 through 10, and each of them, were and still are the agents, subordinates, or employees of each other, and in doing the things alleged in this Complaint were acting in the course and scope of such agency, subordination or employment.

## **JURISDICTION AND VENUE**

9.     This Court has original and exclusive subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this action involves claims asserted pursuant to the federal Defend Trade Secrets Act (18 U.S.C. § 1830, *et seq*.) and the

3
COMPLAINT

2185694v.1

federal Computer Fraud and Abuse Act (18 U.S.C. § 1030, *et seq*.).

10.    The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 to consider Plaintiffs' claims under California common law, the California Uniform Trade Secret Act, and other California statutes.

11.    This Court has personal jurisdiction over Defendant because he regularly conducts business and/or solicits business in California and within this District and resides, was employed by, and entered into the agreements at issue with Plaintiffs in this District. The acts by Defendant caused injury to Plaintiffs within this District.

12.    Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is proper in this Court because Defendant resides in this judicial district, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## GENERAL ALLEGATIONS

### Background

13.    In 2004, Defendant incorporated EZGDS, Inc. ("EZGDS") to provide travel services. To facilitate the travel services provided by EZGDS, Defendant created a proprietary software program or booking engine. Since incorporation, on information and belief Defendant was the CEO, President, and a director of EZGDS.

14.    To market the travel services provided by EZGDS, Defendant engaged a company called BookingWiz. BookingWiz was a company owned and operated by Thomas.

15.    Unfortunately, the financial crisis of 2008 created a situation such that BookingWiz was floating Defendant's marketing efforts for EZGDS.  If not for the generosity of BookingWiz and Thomas, which was equivalent to approximately $178,394.28, EZGDS would have been forced to shutter its doors sooner.

16.    The writing, however, was on the wall due to the worsening economic conditions resulting from the global financial crisis.  As a result, in 2010, EZGDS

was forced into bankruptcy.

17.     Thomas came to Defendant's rescue by agreeing to create the predecessor to LBF, LBF Travel, Inc., which would buy some of the assets of EZGDS from the bankruptcy court and the booking engine directly from Defendant because he was keeping the technology out of the bankruptcy proceeding.   The agreement between Thomas and Defendant was ratified and memorialized by an Asset Purchase Agreement, Consulting Agreement, Security Agreement, Promissory Note and Pledge Agreement.

### The Asset Purchase Agreement

18.     On November 22, 2010, LBF and Defendant entered into an Asset Purchase Agreement ("APA").   Pursuant to the terms of the APA, LBF agreed to purchase certain assets of EZGDS directly from the bankruptcy court, including a website brand called Travelation, email lists, and computer hardware.

19.     Further, LBF would purchase the booking engine directly from Defendant.   LBF agreed to purchase all "rights, title and interest in and to" the software, "including all associated Source Code and Object Code, archival copies, derivative works and improvements thereto" for $1,250,000 to be paid as follows:

- $499,200 would be paid to Defendant in equal monthly installments of $20,800 for 24 months; and

- $750,800 would be paid as Earn-Out Consideration in quarterly installments calculated at 25% of the Net Income per GAAP each quarter. In the event of a Change of Control Event, the APA included an Acceleration of Earn-Out Payment clause.

20.     In addition to monetary compensation, Defendant would be issued 200,000 shares of LBF representing 10% of then "issued and outstanding capital stock of Buyer calculated on a fully-diluted basis (including the option plan for 5% of Buyer) as of the closing date." The shares would initially be unvested.   At this time, the total issued and outstanding shares of LBF were 1,440,000 shares.

21.    Due to divorce proceedings at the time, Defendant requested the stock consideration be given to him in the form of stock options rather than receiving the shares on a vested basis.

22.    To secure his Earn-Out Consideration, a Security Agreement pledging the assets of LBF was entered into by Defendant.

23.    The $20,800 to be paid to Defendant monthly over a two year period would be in exchange for Defendant executing a Consulting Agreement to be the Chief Technology Officer of LBF, which was attached as Exhibit B to the APA. Pursuant to the Consulting Agreement, Defendant would ensure the booking engine remained functional allowing LBF to use it without disruption.  The Consulting Agreement also entitled Defendant to commissions from referral accounts originated by Defendant for the licensing and use of the booking engine technology.  Defendant, however, never originated any referral accounts entitling him to commissions.

24.    As part of the sale of the assets of EZGDS to LBF, Defendant also entered into a Promissory Note and Pledge Agreement for a personal loan from Thomas to Defendant in the amount of $25,000.  The loan would remain interest free if Defendant paid it back by October 1, 2012.  If Defendant failed to pay back the loan by this date, the note would be subject to an interest rate of 10% per annum until such date the loan was paid.  The note was secured by the Pledge Agreement executed by Defendant, which secured the payment of the Promissory Note against Defendant's Earn-Out Consideration.

25.    Moreover, over the course of Defendant's consulting relationship with LBF, Thomas and Defendant agreed that Defendant would receive advances against the Earn-Out Consideration to pay for various expenses of Defendant, including property taxes, medical and dental insurance, vehicle lease, and general advances. These advances totaled $322,394.29.

///

///

2185694v.1

**LBF's Struggles**

26.     The early years of LBF saw massive losses hurting the company's cash flow.  Also contributing to the lack of cash flow was a merchant account requiring a 5% ongoing rolling reserve of all sales processed because the travel business is considered high-risk.  To offset LBF's cash flow struggles and maintain the company as a going concern, its CEO, Thomas, personally loaned the company approximately $5.6 million over a period from about 2010 to 2016.

27.     Eventually to improve the company's balance sheet, Thomas agreed to convert his loans of approximately $5.6 million to additional paid in capital in exchange for 8,000,000 shares of LBF.  In addition, Thomas agreed to forgive the interest on the loans, which was accruing at 8% per year.

28.     Because of LBF's financial performance during this period, per Generally Accepted Accounting Principles ("GAAP"), the company experienced losses each year thereby not triggering the Earn-Out Consideration to Defendant as set forth in the APA.

**LBF Seeks a Strategic Partner or Acquisition**

29.     By 2018, the company was in need of an additional source of capital and began the process of seeking out a strategic partner or a company that would acquire LBF.

30.     After identifying a potential acquirer in 2018, the deal, unfortunately, fell through during the due diligence period because of the financial condition of LBF.

31.     Undeterred, LBF and its CEO Thomas tapped existing relationships with industry leaders in the travel business to inquire of interest in an acquisition of LBF.

32.     By way of these relationships, a potential partner was identified in Mondee, Inc. ("Mondee").  Mondee is a leading travel technology company located in the United States and the world's largest airfare wholesaler.  Moreover, LBF had

been a customer of Mondee since its inception.

33.     In 2019, LBF, through its CEO Thomas, engaged in several exploratory conversations with Mondee to determine whether a beneficial, synergistic arrangement between the two companies was possible.

34.     Through these discussions, LBF and Mondee agreed each company had attractive offerings beneficial to each company.  As a result, the conversation moved to what an acquisition of LBF would look like and how it would be structured.  By June 2019, LBF and Mondee agreed on an acceptable value of LBF and a structure that would work for Mondee.

35.     Thereafter, a term sheet was presented to LBF. Thomas and Defendant reviewed the terms and agreed the deal with Mondee was fair given the current financial condition of the company.

36.     Between July and August 2019, LBF and Mondee entered into a detailed due diligence phase scrutinizing LBF's financial position.  This due diligence revealed that LBF's financial position was not as rosy as anticipated causing Mondee to change the terms of the acquisition by cutting more than half of the up-front money to be paid.

37.     As the due diligence process continued many items were discussed including finance, technology and operations, as well as other future, possible synergies that Thomas could be involved in at a later time.

38.     In addition, as part of the negotiations to acquire LBF and its technology, Defendant was offered a 6 month to 1-year consulting agreement to add features of the booking engine to the Mondee platform as well as $500,000 at the closing and a percentage of the total amount paid by Mondee over a period of 15 months after the closing.

39.     Defendant, however, balked at this opportunity and demanded, without justification, $10 million.

/ / /

COMPLAINT

2185694v.1

40.    Consistent with this demand, Defendant, on September 23, 2019, informed LBF the deal he was being offered was unacceptable and requested future communications and exchanges include his attorney Brent M. Douglas.

41.    Over the next month, Thomas had several conversations with Defendant to persuade him the deal was a fair deal in the best interest of the company given its current financial position.

42.    On October 29, 2019 Defendant responded by way of a letter from counsel again demanding $10 million, affirming Defendant would disrupt the acquisition by Mondee, and informing LBF he had placed a UCC lien on the software sold to LBF.

43.    LBF and Thomas continued to engage in good faith negotiations with Defendant to ensure the deal with Mondee would go forward.  Defendant, however, was motivated by his own self-interests in an effort to line his pockets.  Consistently, on November 13, 2019, while LBF still believed conversations and negotiations with Defendant were moving forward in a positive direction, Defendant's October 29, 2019 demand letter was forwarded to Mondee.

44.    The receipt of the letter by Mondee threatened the acquisition.  To attempt a resolution of this matter such that the acquisition could proceed, on November 22, 2019, Thomas and Defendant flew to San Francisco to meet with Mondee's CEO.

45.    The result of this meeting was that Defendant would receive $230,000 at closing and $2,170,000 when the put option became due between 18 and 30 months after closing.  The terms of a consulting agreement would be worked out in the following weeks.  Defendant agreed with the terms and shook hands on the deal.

46.    Between November 22 and December 13, 2019, Thomas, on behalf of LBF, worked with Defendant and his counsel to iron out the details of the arrangement discussed with Mondee's CEO on November 22, 2019, including agreeing to a consulting arrangement with Defendant for $40,000 per month for

2185694v.1

eighteen (18) months.  The parties then engaged in extensive iterations to the various contracts memorializing the agreements between Mondee, LBF, and Defendant.

47.   By December 13, 2019, final drafts of the documents had been seemingly agreed to and Defendant was expected to execute the documents on this date.

48.   Defendant, however, failed to respond to all efforts to reach him for execution of the documents.  Rather, at 5:35 p.m. on December 13th, an email was received by Thomas from Defendant's counsel attaching a copy of a formal complaint for damages to be filed December 16, 2019 if a meaningful response to Defendant's new $7.5 million demand was not received.

49.   LBF was caught completely off guard as it had believed Defendant would be executing the documents on December 13, 2019 per the agreement between the parties.

**Defendant Exceeds His Authorization, Accesses LBF's Servers and Downloads LBF's Code**

50.   Upon learning of Defendant's demand and refusal to execute the agreements on December 13, 2019, LBF also learned Defendant had cleaned out his office of all personal belongings seemingly in the middle of the night.

51.   Given this clear indication from Defendant he was no longer working for, or with, LBF, immediate steps were taken to revoke Defendant's email and server access as well as access to the offices. LBF also began investigating what other actions Defendant may have taken under the cloak of darkness the night before. The results were extremely troubling.

52.   On the evening of Friday, December 13th, 2019, during the process of removing Defendant's access to LBF's IT, LBF learned Defendant had one of the old file servers housing the original code for the booking engine to be placed on a network so Defendant would have access to the code.

/ / /

2185694v.1

53.     More troubling was Defendant causing himself to be made the global domain administrator of LBF's network.  This status enabled Defendant to override any and all security processes that were in place on LBF's network.

54.     As a result of these actions, Defendant now had unfettered access to any and all files he wished to download onto his personal laptop or his portable hard drive.

55.     Upon learning of Defendant's actions, LBF immediately began to determine what files and data Defendant had accessed. It was determined Defendant had requested the IT administrator to locate and make accessible on the LBF network and to make him, Defendant, the Domain Administrator.  He then accessed the file server that hosted the code of LBF's booking engine, as well as his desktop computer that had the current code that represented the initial code, as well as several millions of dollars of improvements to the code made over the previous 10 years.  Defendant renewed his carbonite backup software license on the same date enabling him to back up his desktop computer and the servers to his portable hard drive, which he took with him when he left on the evening of December 12th.

56.     Over the next few days, LBF conducted a detailed forensic analysis of its IT systems.  The results confirmed Defendant had copied 26.54 GB of data, including LBF's booking engine code, to his hard drive.

**Fallout from Defendant's Actions**

57.     Defendant's actions altered the acquisition from a stock purchase arrangement to an asset acquisition. But in order for an asset acquisition to occur, the UCC lien placed on LBF's code by Defendant needed to be removed.

58.     LBF had no choice but to provide Defendant with the Earn-Out Consideration, pledged as security for Defendant's unpaid Promissory Note to LBF, in the amount of $750,800, which it wired to Defendant on December 20, 2019.  Subsequently, LBF caused the UCC lien to be removed.  Accordingly, the asset acquisition by Mondee closed on the evening of December 20, 2019.

2185694v.1

59.     Surprisingly, Defendant continued to meddle in LBF's proprietary data. On January 9, 2020, LBF learned Defendant, using his private email account, attempted to change the access to LBF's Lucid Charts account by making himself the editor and creator.  LBF's Lucid Charts account was used to provide Mondee with visual charts on the structure and flow of LBF's booking engine and technology. Defendant would have no reason to access this type of data unless he wanted to present to other businesses the layout and structure of LBF's booking engine.

### LBF's Business & Trade Secrets

60.     LBF is a leading global travel company that operates multiple contact centers to assist leisure and business travelers seeking to research, plan and book the best travel options. As an integral part of its business, LBF has developed, compiled and maintains a central database that contains and compiles detailed confidential, private, proprietary, and trade secret information and data including, but not limited to: (a) proprietary software code that is the technology behind the company, including database files, SQL code, code, scripts, and all improvements thereof located on Defendant's workplace desktop and LBF's file server; (b) names/identities of customers and credit card information related to LBF's merchant account (where names and identities of such customers are not generally available and publicly disclosed by LBF); (c) customer data; and (d) other non-public financial information of LBF that would be valuable for a competitor to have. Collectively, the foregoing categories of information, whether the information is in the actual database, in any other electronic or paper form, or in a person's head as information the person was exposed to while working at and for LBF, are referred to herein as "**Trade Secrets**."

61.     LBF's Trade Secrets were compiled and developed by LBF over many years through substantial efforts and trial-and-error. LBF has expended a great deal of time, money and effort identifying, cultivating relationships with, and servicing the needs of its customers. To do this, LBF invested a substantial amount of time and money developing its database. LBF derives substantial benefit by maintaining the

2185694v.1

confidentiality of the Trade Secrets in its database, and disclosure and use of this information would be injurious to LBF.

62.     LBF's Trade Secrets, all of which are a product of substantial time and expense, are not generally known to the public. LBF's Trade Secrets are not readily ascertainable in LBF's industry or in any type of trade or public directory or any other source. Additionally, this information was secured with considerable time, effort and expense to LBF, and is not readily ascertainable by others including LBF's competitors.

63.     LBF's Trade Secrets are valuable to LBF, and the value of LBF's Trade Secrets lies primarily in being kept secret and not generally known. For that reason, LBF has taken, and continues to take, careful, substantial, and reasonable steps to safeguard the secrecy of its Trade Secrets, including, but not limited to: (a) restricting access to the physical servers located in its data centers to only four (4) individuals; (b) requiring coded passwords to access the data centers and other electronic systems, networks, servers, and computers of LBF; (c) implementing a number of physical and electronic security measures, including restricting access to databases and network space, assigning passwords and user-level permissions to access information on LBF's computers and electronic system, servers, and networks, and requiring that Trade Secrets be kept in secure locations; (d) emphasizing LBF's need to keep this information a secret; and (e) imposing strict confidentiality standards in LBF's Consulting Services Agreement with Defendant.

## FIRST CLAIM FOR RELIEF

**(Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1831 *et seq*.)**

(Against Defendant and DOES 1-10 inclusive)

64.     Plaintiff re-alleges and incorporates by this reference the allegations set forth in Paragraphs 1 through 63.

/ / /

13

COMPLAINT

65. LBF's Trade Secrets alleged above constitute trade secrets under the Defend Trade Secrets Act (18 U.S.C. *Civil Code* §§ 1831 *et seq*.).

66. LBF's Trade Secrets are valuable because they are not generally known or readily accessible, through proper means, to others who can profit from use of the Trade Secrets.

67. LBF has taken more than adequate measures under the circumstances to maintain the secrecy of this information, including requiring computer access passwords to be used to access LBF's computer systems and records, restricting access to its computer systems and data centers, and having Defendant, sign agreements which expressly prohibit the use, removal and disclosure of such information.

68. The foregoing conduct of Defendant constitutes an actual and threatened misappropriation and misuse of LBF's trade secret information in violation of the Defend Trade Secrets Act, 18 U.S.C. §1831 *et seq*.

69. Defendant's actions with respect to LBF's Trade Secrets, as alleged above, were a deliberate scheme and plan to deprive LBF of the benefits of LBF's own substantial investment and efforts and steal the fruits of years of LBF's labor.

70. As a proximate result of Defendant's acts as alleged above, LBF to date has suffered, and will continue to suffer, actual damages, including, but not limited to, loss of capital, loss of valuable business, loss of profits and future profits, and loss of goodwill, in an amount to be proven at trial. As a further proximate result of the misappropriation, LBF is informed and believes that Defendant has been unjustly enriched as a result of the misappropriation of LBF's Trade Secrets. The amount of this unjust enrichment cannot presently be ascertained.

71. LBF is informed and believes that Defendant continues to possess, use, and disclose LBF's misappropriated Trade Secrets. Defendant's conduct therefore threatens further wrongful misappropriation, use, disclosure, and destruction of LBF's Trade Secrets.

2185694v.1

72.     As a proximate result of Defendant's acts as alleged above, LBF will continue to suffer actual damages in an amount to be proven at trial unless Defendant is enjoined.

73.     LBF has no adequate remedy at law for these injuries unless and until Defendant is restrained from using LBF's misappropriated Trade Secrets in the future and ordered to return such information and property to LBF, because calculations of damages will be difficult and LBF will be compelled to bring multiple suits to protect its interest. LBF's damages are not easily quantified but include, and are not limited to, its lost profits and productivity as a result of damage to its reputation, goodwill, disruption of its operations, and time and resources spent investigating Defendant's unlawful conduct, in an amount to be proven at trial.

74.     LBF, therefore, is entitled to preliminary and permanent injunctions, as prayed for herein, prohibiting Defendant from further acts of misuse and disclosure of LBF's misappropriated Trade Secrets and ordering Defendant to return such Trade Secrets to LBF immediately.

75.     LBF is informed and believe that Defendant's conduct was, and is, malicious, fraudulent, deliberate and willful, as revealed by Defendant's conduct described above. LBF is therefore entitled to recover from Defendant exemplary damages in an amount twice the total of the damages recovered for actual loss as permitted by 18 U.S.C. §1836(b)(3)(C).

76.     LBF is entitled to an award of attorneys' fees pursuant to 18 U.S.C. §1836(b)(3)(D).

## SECOND CLAIM FOR RELIEF

**(Misappropriation of Trade Secrets in Violation of the California Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426.1 *et seq*.)**

(Against Defendant and DOES 1-10 inclusive)

77.     LBF incorporates the allegations in paragraphs 1 through 76 as if fully set forth in this paragraph.

2185694v.1

78.     LBF's Trade Secrets alleged above constitute trade secrets under the California Uniform Trade Secrets Act (California *Civil Code* sections 3426 *et seq*.), and contain information which is not generally known to the public or to LBF's competitors, who can obtain economic value from disclosure and use of such information in their own interest since the information was compiled based on LBF's years of experience in business. This information is a valuable asset in that it provides LBF a competitive advantage over others. As set forth herein above, LBF has made reasonable efforts to protect the secrecy of its Trade Secrets, including requiring confidentiality agreements, setting forth confidentiality rules and policies, and implementing security measures on LBF's computer system to prevent unauthorized access or disclosure.

79.     Defendant's actions with respect to LBF's Trade Secrets, as alleged above, were a deliberate scheme and plan to deprive LBF of the benefits of LBF's own substantial investment and efforts and steal the fruits of years of LBF's labor.

80.     As a proximate result of Defendant's acts as alleged above, LBF to date has suffered, and will continue to suffer, actual damages, including, but not limited to, loss of capital, loss of valuable business, loss of profits and future profits, and loss of goodwill, in an amount to be proven at trial. As a further proximate result of the misappropriation, LBF is informed and believes that Defendant has been unjustly enriched as a result of the misappropriation of LBF's Trade Secrets. The amount of this unjust enrichment cannot presently be ascertained.

81.     LBF is informed and believes that Defendant continues to possess, use, and disclose LBF's misappropriated Trade Secrets. Defendant's conduct therefore threatens further wrongful misappropriation, use, disclosure, and destruction of LBF's Trade Secrets.

82.     As a proximate result of Defendant's acts as alleged above, LBF will continue to suffer actual damages in an amount to be proven at trial unless Defendant is enjoined.

2185694v.1

83.     LBF has no adequate remedy at law for these injuries unless and until Defendant is restrained from using LBF's misappropriated Trade Secrets in the future and ordered to return such information and property to LBF, because calculations of damages will be difficult and LBF will be compelled to bring multiple suits to protect its interest. LBF's damages are not easily quantified but include, and are not limited to, its lost profits and productivity as a result of damage to its reputation, goodwill, disruption of its operations, and time and resources spent investigating Defendant's unlawful conduct, in an amount to be proven at trial.

84.     LBF, therefore, is entitled to preliminary and permanent injunctions, as prayed for herein, prohibiting Defendant from further acts of misuse and disclosure of LBF's misappropriated Trade Secrets and ordering Defendant to return such Trade Secrets to LBF immediately.

85.     LBF is informed and believe that Defendant's conduct was, and is, malicious, fraudulent, deliberate and willful, as revealed by Defendant's conduct described above. LBF is therefore entitled to recover from Defendant exemplary damages in an amount twice the total of the damages recovered for actual loss as permitted by Cal. Civ. Code § 3426.3.

86.     LBF is entitled to an award of attorneys' fees pursuant to Cal. Civ. Code § 3426.4.

## THIRD CLAIM FOR RELIEF

**(Violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et seq*. – Based on Unauthorized Access of Protected Computers.)**

(Against Defendant and DOES 1-10 inclusive)

87.     LBF incorporates the allegations in paragraphs 1 through 86 as if fully set forth in this paragraph.

88.     LBF's computers, servers, and data center are "protected computers" within the meaning of 18 U.S.C. § 1030(e) because these electronic devices were purchased by LBF then issued to Defendant, who used these devices for the purposes

2185694v.1

of performing services for LBF.

89.     LBF is informed and believes and on that basis alleges that Defendant knowingly, intentionally, and with the intent to defraud LBF and improperly acquire its Trade Secrets and confidential information, accessed LBF's desktop computer and server without authorization and/or in excess of his authorized scope of access in an effort to download and transfer files containing LBF's confidential and proprietary files, Trade Secrets, confidential information, and other digital property.

90.     The unauthorized access of LBF's desktop computer and server occurred at a point when Defendant had decided to voluntarily terminate his consulting relationship with LBF, at a point in time when Defendant did not have LBF's authorization or exceeded his authorization to access any information on LBF-owned devices that Defendant unlawfully retained.

91.     Defendant accessed the desktop computer and server when he unilaterally terminated his relationship with LBF. To make matters worse, Defendant accessed these devices and transferred and copied data from these devices while he had engaged and was being advised by his counsel.

92.     There is no right or privilege to advise Defendant to violate the law and access another person's protected computer without authorization.

93.     As a result, Defendant furthered his intended fraud upon LBF and Defendant caused LBF damages and loss to LBF's computers in excess of $5,000.

94.     As a consequence of the foregoing, LBF has suffered and will continue to suffer irreparable harm and loss, and has sustained damages including but not limited to loss of capital, loss of valuable digital property (including, but not limited to, proprietary code, business records, customer contact information, prospective customer contact information, and other business-related data that was stored on the computer and servers), loss and threatened disclosure and use of work product Defendant created or developed during his consultancy with LBF that belongs to LBF either by operation of law or under the Consulting Services Agreement, and the

cost of LBF's investigation of Defendant's unlawful retention and access of LBF's desktop computer and server post-termination of his consulting relationship with LBF, in an amount to be determined at trial, which damages are ongoing and continue unabated at the time of the filing of this Complaint.

95.    LBF has no adequate remedy at law as to its ongoing injuries unless and until Defendant is restrained from using in the future any of LBF's Trade Secrets, confidential information, and other digital property that Defendant accessed on the desktop computer and server without authorization, because calculations of damages will be difficult and LBF will be compelled to bring multiple suits to protect its interest.

96.    LBF, therefore, is entitled to preliminary and permanent injunctions, as prayed for herein, prohibiting Defendant from further acts of misuse and disclosure of LBF's Trade Secrets, Confidential Information, and other digital property, as alleged herein.

## FOURTH CLAIM FOR RELIEF

### (Conversion)

(Against Defendant and DOES 1-10 inclusive)

97.    LBF incorporates the allegations in paragraphs 1 through 96 as if fully set forth in this paragraph.

98.    At all times herein mentioned, LBF was the rightful owner and entitled to possession of its Trade Secrets, confidential information, and other proprietary information, data and work product, including, but not limited to, Trade Secrets and/or confidential data that Defendant had access to by virtue of Defendant's consulting relationship with LBF. LBF has an ownership right to the Trade Secrets and confidential information defined above pursuant to Defendant's Consulting Services Agreement.

99.    Defendant knowingly and intentionally interfered with LBF's dominion, possession, use, and ownership of its Trade Secrets, confidential information, and

2185694v.1

other proprietary information by misappropriating such information, and converting such information to his own possession and use.

100.   Defendant has not returned any of LBF's property that he took possession of without LBF's authorization or consent.

101.   Defendant knew or had reason to know that LBF was lawfully entitled to the property, but intentionally withheld it and attempted to and actually did destroy it to damage LBF and/or with a conscious disregard for LBF's lawful right to ownership and possession and the privacy rights of LBF's customers.

102.   LBF's property that Defendant took and/or destroyed without authorization is valuable, as it was compiled by LBF through substantial investment of time and resources. Defendant has failed to return this property. Thus, LBF has suffered the actual loss of the property, the value of which is an amount to be determined at trial.

103.   To the extent Defendant has lost or destroyed the property he took from LBF, in addition to the value of the converted property and as a proximate and/or direct result of Defendant's actions or inactions in failing to securely return the property to LBF leading to the loss of the property, LBF suffered and will continue to suffer consequential damages in an amount to be determined at trial.

104.   Defendant's failure to return LBF's Trade Secrets, confidential information, and other proprietary information threatens to cause irreparable harm to LBF. So long as the Trade Secrets, confidential information, and other proprietary information that Defendant took without authorization remain in an unsecure, unsafe or unknown location, this property is in jeopardy of being hacked, leaked, disclosed, distributed or destroyed. Thus, LBF is entitled to preliminary and permanent injunctive relief ordering Defendant to immediately return all confidential information of LBF within his possession, custody or control.

/ / /

/ / /

2185694v.1

### FIFTH CLAIM FOR RELIEF

**(Breach of Contract)**

(Against Defendant and DOES 1-10 inclusive)

105.  LBF and Thomas incorporate the allegations in paragraphs 1 through 104 as if fully set forth in this paragraph.

106.  Thomas and Defendant are parties to a Promissory Note and Pledge Agreement and LBF and Defendant are parties to a Consulting Services Agreement each executed on or about October 22, 2010 (collectively, "Agreements").

107.  LBF and Thomas have performed all of the terms and conditions required of them under the Agreements.

108.  Defendant's obligations under the Agreements as to the protection of LBF's proprietary, confidential, and trade secret information are valid, enforceable and binding on each of them.   In addition, the Promissory Note obligated Defendant to pay $25,000 plus interest at 10% per annum since October 1, 2012.

109.  Despite his contractual obligations, Defendant materially breached the respective Agreements based on the conduct described in the preceding paragraphs by, among other things, (a) taking, disclosing, transferring, removing, destroying, misusing, and/or misappropriating LBF's Trade Secrets, (b) taking, disclosing, transferring, removing, destroying, misusing, and/or misappropriating LBF's confidential information, and (c) failing to pay the note for $25,000 plus interest at 10% per annum since October 1, 2012.

110.  LBF and Thomas have been damaged by Defendant's breaches of the Agreements in an amount to be proven at trial.

111.  Because Defendant expressly consented to injunctive relief in his Consulting Services Agreement, and because damages alone may not provide LBF with a complete or adequate remedy, LBF is also entitled to preliminary and permanent injunctive relief prohibiting Defendant from directly or indirectly breaching the respective Agreement.

2185694v.1

### SIXTH CLAIM FOR RELIEF

**(Breach of Oral Contract)**

(Against Defendant and DOES 1-10 inclusive)

112.   LBF incorporates the allegations in paragraphs 1 through 111 as if fully set forth in this paragraph.

113.   From about October 22, 2010 to December 12, 2019, LBF and Defendant entered several oral agreements whereby LBF agreed to advance a total of $322,394.29 against Defendant's Earn-Out Consideration and Defendant agreed the $322,394.29 would be paid as an offset to his Earn-Out Consideration when received.

114.   LBF has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the oral contract.  Specifically, LBF advanced the following monies to Defendant against his Earn-Out Consideration:

| | |
|---|---|
| Advance January 2017 | $135,000 |
| Advance Property Taxes July 2018 | $12,612 |
| Medical & Dental Insurance Paid through December 2019 | $167,410.82 |
| Personal Items Paid | $379 |
| Mobile Phone Paid | $982 |
| BMW Lease December 2019 – July 2020 | $6010.47 |
| TOTAL | $322,394.29 |

115.   On December 20, 2019, Defendant breached the oral agreement by failing to offset the $750,800 Earn-Out Consideration, which LBF was forced to pay Defendant based on the conduct described in the preceding paragraphs and as alleged herein.

116.   As a result of Defendant's breach of the oral contract, Plaintiff has suffered compensatory damages in an amount to be proven at trial but at least in the

2185694v.1

amount of $322,394.29.

## SEVENTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

(Against Defendant and DOES 1-10 inclusive)

117.   LBF incorporates the allegations in paragraphs 1 through 116 as if fully set forth in this paragraph.

118.   As a trusted consultant in the nature of the Chief Technology Officer at LBF, Defendant owed to LBF a fiduciary duty and duty of loyalty to act toward LBF fairly, honestly, in good faith, with undivided loyalty, to avoid conflicts of interest, to maintain the confidentiality of LBF's Trade Secrets and confidential information, and to refrain from any act, or omission to act, calculated or likely to: (a) injure LBF; (b) disclose LBF's Trade Secrets to third parties; (c) disclose private information of LBF's customers and prospective customers to third parties; and (d) misappropriate for his personal advantage or the advantage of any third party LBF's Trade Secrets and/or other proprietary information.

119.   Following the end of his consultancy with LBF, Defendant continued to owe a fiduciary duty to LBF to refrain from any act, or omission to act, calculated or likely to disclose to third parties LBF's Trade Secrets and/or confidential information acquired during the course of Defendant's respective consultancy at LBF, or to misappropriate to his personal advantage or the advantage of a third party such Trade Secrets and/or confidential information or any other property belonging to LBF.

120.   Defendant intentionally and knowingly breached his fiduciary duty or duty of loyalty owed to LBF by engaging in the conduct alleged above and, in particular, by: (a) taking and using LBF's Trade Secrets for Defendant's own benefit; (b) taking and using LBF's confidential information that LBF owns in accordance with Defendant's respective Consultant Services Agreement for Defendant's own benefit; and (c) engaging in other acts of unfair competition.

121.   As a direct and proximate result of Defendant's breach of his fiduciary duty and duty of loyalty to LBF, LBF to date has suffered and will continue to suffer unless Defendant is enjoined and LBF awarded actual damages in an amount to be proven at trial.

122.   LBF has no adequate remedy at law for these injuries unless and until Defendant is restrained from violating his legal obligations, because calculations of damages will be difficult and LBF will be compelled to bring multiple suits in Court to protect its interest. LBF's damages are not easily quantified but include, and are not limited to, LBF's lost profits on its sales and damage to its goodwill with clients and prospective clients, in an amount to be proven at trial. Therefore, LBF is entitled to temporary, preliminary and permanent injunctions as prayed for herein prohibiting Defendant from acts of misuse and misappropriation of Trade Secrets and confidential information and compelling Defendant to immediately return such information in all its forms to LBF.

123.   In committing the breach of fiduciary duties as described above, Defendant is guilty of malice and oppression in that he secretly converted LBF's Trade Secrets and confidential information with the deliberate intent to benefit himself at the expense of harm to LBF's goodwill with its customers and prospective customers, and has acted with conscious disregard for LBF's rights and Defendant's own duties to LBF, thereby warranting an award of punitive damages, in an amount appropriate to punish Defendant and deter others from similar misconduct.

## EIGHTH CLAIM FOR RELIEF

### (Tortious Interference with Prospective Economic Relations)

(Against Defendant and DOES 1-10 inclusive)

124.   LBF incorporates the allegations in paragraphs 1 through 123 as if fully set forth in this paragraph.

125.   An economic and ongoing business relationship existed between LBF and Mondee to whom LBF was a customer since its inception. In the preceding

allegations, LBF has specifically alleged facts regarding a business opportunity with Mondee.

126.   LBF is informed and believes and on that basis alleges that Defendant knew of the existence of the economic and business relationship between LBF and Mondee in that Defendant was actively involved in the negotiations related to the prospective business opportunity.

127.   LBF is informed and believes and on that basis alleges that Defendant knowingly, fraudulently and intentionally tortiously interfered with its relationship with Mondee by utilizing LBF's Trade Secrets and other proprietary information in an attempt to gain an unfair competitive advantage and enrich himself by way of his agreement with Mondee to the detriment of LBF.

128.   LBF is informed and believes and on that basis alleges that the economic relationships between LBF and Mondee was interfered with and disrupted by Defendant. As a proximate result of Defendant's actions and/or inactions as alleged above, LBF to date has suffered, and will continue to suffer, unless Defendant is enjoined and LBF awarded actual damages in an amount to be proven at trial.

129.   LBF has no adequate remedy at law for these injuries unless and until Defendant are restrained from engaging in the wrongful acts described above, in the future, because calculations of damages will be difficult and LBF will be compelled to bring multiple suits to protect its interest. LBF's damages are not easily quantified but include, and are not limited to, LBF's lost profit on any of Defendant's improper dealings, profits or advantages in an amount to be proven at trial. LBF therefore is entitled to preliminary and permanent injunctions as prayed for herein prohibiting Defendant from engaging in acts of unfair competition, and/or misuse and misappropriation of LBF's Trade Secrets and confidential information, as alleged herein.

/ / /

2185694v.1

130.   The aforementioned acts of Defendant were willful, oppressive, fraudulent, despicable, and in conscious disregard of the rights of LBF, and the resulting harm to LBF. LBF therefore is entitled to punitive and exemplary damages in an amount according to proof at the time of trial.

**<u>NINTH CLAIM FOR RELIEF</u>**

**(Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

(Against Defendant and DOES 1-10 inclusive)

131.   LBF incorporates the allegations in paragraphs 1 through 130 as if fully set forth in this paragraph.

132.   This is a claim for unfair business practices arising under California Business and Professions Code sections 17200 *et seq.*, which prohibits unfair competition.

133.   In violation of California Business and Professions Code sections 17200 *et seq.*, Defendant improperly misappropriated, removed, retained, and/or began using LBF's Trade Secrets, as alleged above.

134.   In violation of California Business and Professions Code sections 17200 *et seq.*, Defendant improperly misappropriated, removed, retained, and/or began using LBF's confidential information that LBF owns in accordance with Defendant's respective Consulting Services Agreement, as alleged above.

135.   Defendant's actions and inactions are part of a deliberate scheme and plan to steal and subvert for his own gain the fruits of several years of LBF's labor and efforts in establishing goodwill with clients and compiling confidential information, and to give Defendant an unfair competitive advantage in a new business venture.

136.   As a proximate result of Defendant's actions and inactions as alleged above, LBF to date has suffered, and will continue to suffer damages, unless Defendant is enjoined from (a) breaching Defendant's Consulting Services Agreement; (b) using LBF's Trade Secrets that Defendant has misappropriated; and

26
COMPLAINT

(c) using LBF's confidential information that Defendant has misappropriated. Thus, as a proximate result of Defendant's wrongful acts alleged above, LBF is entitled to restitution as provided for by California Business and Professions Code sections 17200 *et seq.* and a constructive trust in which Defendant, as constructive trustee, holds income, profits, commissions, fees, revenues or other funds, received as a result of Defendant's wrongful acts alleged herein above, for LBF's benefit.

137. Defendant's wrongful conduct alleged above will continue unless and until enjoined and restrained by order of the Court. Without such order, Defendant's conduct in stealing the fruits of LBF's business investments will cause great and irreparable injury to LBF's business, goodwill, and reputation, resulting in a loss of market share and profits by virtue of the Trade Secrets and/or confidential information and/or other work product that Defendant misappropriated and, on information and belief, has and continues to wrongfully use to his benefit.

138. LBF has no adequate remedy at law for the injuries currently being suffered in that Defendant will continue to use LBF's Trade Secrets and confidential information that was wrongfully misappropriated, including but not limited to any information concerning LBF and its clients and prospective clients that is not generally available to the public but that does not rise to the level of a trade secret under applicable law. LBF is entitled to a preliminary and permanent injunction against Defendant, as prayed for herein.

139. Defendant's conduct was willful and malicious, oppressive, fraudulent, despicable and in conscious disregard of the rights of LBF and the resulting harm to LBF. Defendant acted with the intent to cause injury and to obtain for himself an unfair competitive advantage in the market place. Therefore, Defendant is liable for restitution and exemplary and/or punitive damages in an amount to be established according to proof at trial for unfair competition, and a permanent injunction against Defendant is warranted enjoining Defendant's unfair business practice as prayed herein.

COMPLAINT

2185694v.1

140.   The rights invoked herein petition for, implicate, invoke, and demand the enforcement of important rights affecting the public interest. Furthermore, because the relief sought will provide a significant benefit to the general public at large, LBF is entitled to an award of attorneys' fees to reimburse LBF for attorneys' fees incurred by undergoing the burden of seeking the private enforcement of statutes vindicating important public rights, including the right of the public to be free from illegal restraints of trade, unfair competition, and violations of the California Business and Professions Code.

## TENTH CLAIM FOR RELIEF

### (Unjust Enrichment)

(Against Defendant and DOES 1-10 inclusive)

141.   LBF and Thomas incorporate the allegations in paragraphs 1 through 140 as if fully set forth in this paragraph.

142.   LBF and Thomas are informed and believe and based thereon allege that Defendant's actions in intentionally and fraudulently converting and using LBF's Trade Secrets, confidential information, and other proprietary information, as alleged above, to satisfy his greed and for his own personal gain constitute circumstances wherein it would be manifestly unjust, grossly unfair, and unconscionable to allow Defendant to retain such property, Trade Secrets, confidential information, and/or any profits generated from his conversion and use of said Trade Secrets, confidential information, and/or other proprietary information Defendant's own use. To allow Defendant to retain such property or proceeds would unjustly enrich them at the expense of LBF and Thomas.

/ / /

/ / /

/ / /

/ / /

/ / /

2185694v.1

## **ELEVENTH CLAIM FOR RELIEF**

### **(Preliminary Injunctive Relief)**

(Against Defendant and DOES 1-10 inclusive)

143.   LBF incorporates the allegations in paragraphs 1 through 142 as if fully set forth in this paragraph.

144.   LBF demonstrated, and the evidence to be presented at a hearing and/or trial will show, that LBF has a likelihood of success on the merits of one or more of their claims set forth in this Complaint.

145.   The CFAA, 18 U.S.C. § 1030(g) authorizes and provides an adequate, independent basis for the preliminary injunctive relief sought by LBF. So do the DTSA, 18 U.S.C. § 1836(b)(3)(A), and the CUTSA, Cal. Civ. Code § 3426.2.

146.   LBF will be irreparably harmed without preliminary injunctive relief that restores the status quo ante between LBF and Defendant before Defendant committed one or more of the wrongful acts described in this Complaint.

147.   A balancing of the equities favors the entry of preliminary injunctive relief upon a hearing before the Court, in favor of LBF and, without the entry of such relief, LBF will suffer a greater hardship than Defendant would suffer if such relief were entered.

148.   LBF has no adequate remedy at law.

149.   It is in the public interest that confidential information remain protected and that the integrity of protected computers and devices remains intact, rather than the alternative: unabated breaches of confidentiality agreements, disclosures of confidential information and the unauthorized access of computers, servers, and data centers, and other devices by an individual who, at the time of his access, was not authorized to access such devices or whose access of such devices in excess of his authorized access for the purpose of committing fraud, transferring information and/or destroying information that resides on protected computers and devices.

/ / /

2185694v.1

## **PRAYER**

WHEREFORE, Plaintiffs respectfully demand as follows:

1.    Judgment upon the Complaint against Defendant;

2.    Preliminary and permanent injunctive relief, including a preliminary injunction, prohibiting Defendant from:

    a. any further possession, disclosure, and/or use of LBF's Trade Secrets, Confidential Information, and other proprietary information, work product, and photos;

    b. accessing without authorization or in excess of authorized access, or damaging, LBF's Database, Trade Secrets, Confidential Information and/or computers and other electronic devices;

    c. revealing or disclosing LBF's Trade Secrets, Confidential Information, and/or contents of its Database to any person or entity for any reason or purpose whatsoever, or making use of such information for Defendant's benefit or for the benefit of any other person or entity;

    d. engaging in unlawful, unfair, and fraudulent business practices, including intentional interference with LBF's business relationships and contracts with its clients, vendors, freelancers and other third parties; and

    e. profiting or benefiting from his wrongful conduct.

3.    An order that Defendant return to LBF, and then purge from his possession, custody and control, any and all documents, computer-based files or data, or information in any form, whether originals, copies, compilations or derivations, which were removed from any LBF- owned computer or electronic device issued to Defendant by LBF, or which were obtained by Defendant or anyone acting on his behalf or in concert with Defendant;

2185694v.1

4.  An order that Defendant return any and all confidential and/or trade secret information of LBF, and an order prohibiting any further use or benefit from the use of said information;

5.  An award of general, special, consequential, and compensatory damages in an amount to be proven at trial, as well as the attorney's fees, computer forensic fees, and costs LBF incurred to investigate and address Defendant's unauthorized access and improper use of LBF's computers, servers, and electronic networks, databases, and systems, plus all applicable pre-judgment and post-judgment interest;

6.  Costs of suit herein incurred, including without limitation LBF's attorneys' fees pursuant to the common law and under the Defend Trade Secrets Act, the California Uniform Trade Secrets Act, and Cal. Bus. and Prof. Code § 17203; and

7.  An award of exemplary damages in an amount twice the total of the damages recovered for actual loss as permitted by 18 U.S.C. § 1836(b)(3)(C) and by Cal. Civ. Code § 3426.3;

8.  An award of punitive damages in an amount to be determined at trial;

9.  An award of attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D) and Cal. Civ. Code § 3426.4;

10.  Compensation to Plaintiffs for any unjust enrichment enjoyed by Defendant, including restitution of all revenues, gains, profits, and advantages obtained by Defendant as a result of his wrongful and unlawful conduct, in an amount to be determined at a hearing and/or trial;

/ / /

/ / /

/ / /

/ / /

COMPLAINT

2185694v.1

11.    Such other and further legal and equitable relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand trial to a jury on all issues so triable.

Dated:  December 9, 2020                    **WILSON, ELSER, MOSKOWITZ,**
                                            **EDELMAN & DICKER LLP**


By:    */s/ Marty B. Ready*
       _____
       Jura C. Zibas, Esq.
       Marty B. Ready, Esq.
       Attorneys for Plaintiffs, LBF Travel
       Management Corp. and Michael Thomas

COMPLAINT

2185694v.1