1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LBF TRAVEL MANAGEMENT CORP. and MICHAEL THOMAS, | Case No.: 20-cv-2404-MMA (AGS) |
| Plaintiffs, | **ORDER: (1) GRANTING IN PART AND DENYING IN PART THIRD-PARTY DEFENDANTS' MOTION TO DISMISS; (2) GRANTING THIRD-PARTY DEFENDANTS' REQUEST FOR JUDICIAL NOTICE;** |
| v. | |
| THOMAS DEROSA, | |
| Defendant. | |
| THOMAS DEROSA, | [Doc. No. 41] |
| Counter Claimant, | **AND (3) GRANTING THIRD-PARTY PLAINTIFF'S REQUEST FOR JUDICAL NOTICE** |
| v. | |
| LBF TRAVEL MANAGEMENT CORP. and MICHAEL THOMAS, | [Doc. No. 50] |
| Counter Defendants. | |
| THOMAS DEROSA, | |
| Third-party Plaintiff, | |
| v. | |
| LBF TRAVEL, INC.; LBF TRAVEL HOLDINGS, LLC; MONDEE HOLDINGS, LLC; MONDEE, INC.; and PRASAD GUNDUMOGULA | |
| Third-party Defendants. | |

Defendant, Counter Claimant, and Third-party Plaintiff Thomas DeRosa ("DeRosa") brings an employment contract-related counterclaim and third-party complaint against LBF Travel Management Corp. and Michael Thomas ("Thomas") (collectively "Counter Defendants") as well as LBF Travel, Inc., LBF Travel Holdings, LLC, Mondee Holdings, LLC, Mondee, Inc., and Prasad Gundumogula ("Gundumogula") (collectively, "Third-party Defendants").  *See* Doc. No. 35 ("Amended TP Compl.").  Third-party Defendants move to dismiss all causes of actions against them in DeRosa's Amended Third-party Complaint.  *See* Amended TP Compl.  DeRosa filed an opposition, to which Third-party Defendants replied.  *See* Doc. Nos. 50, 51.  The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. No. 45.  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Third-party Defendants' motion to dismiss.

## I. BACKGROUND[1]

The present action originates from an employment relationship between DeRosa, Thomas, and LBF Travel, Inc.  *See* Amended TP Compl. ¶¶ 1, 2.  Thomas is LBF Travel, Inc.'s Chief Executive Officer and majority shareholder.  *Id.* ¶ 17.  DeRosa is a computer programmer.  *Id.* ¶ 6.  DeRosa "developed the code that is the backbone for travel amalgamation websites, like Travelocity and Expedia."  *Id.*  In 2010, DeRosa sold the code to LBF Travel, Inc.  *Id.*  In exchange, DeRosa was supposed to receive guaranteed monthly payments, contingent quarterly payments, and "10% of LBF [Travel, Inc.] in stock."  *Id.* ¶ 7.  An asset purchase agreement ("APA") commemorated the exchange. *See id.* ¶¶ 6, 7.  DeRosa alleges Thomas "routinely missed monthly payments."  *Id.* ¶ 8.

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the Amended Third-party Complaint. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

Even though Thomas "made myriad promises to Mr. DeRosa to rectify the unpaid money . . . it became apparent that Mr. Thomas would not [follow through]." *Id.* ¶ 9.

Contemporaneous to the APA, DeRosa and LBF Travel, Inc. executed a consulting agreement (the "Consulting Agreement"). *Id.* ¶ 10.  Under the Consulting Agreement, DeRosa became LBF Travel, Inc.'s Chief Technology Officer. *Id.*  In exchange, DeRosa was supposed to receive payments "in addition to any money owed . . . under the APA." *Id.*  DeRosa alleges, "[l]ike the payments owed under the APA, Mr. Thomas would routinely promise to make up for missed payments." *Id.* ¶ 12.  Yet, "Thomas [has] never made good on any payments under the Consulting Agreement." *Id.*

Several years later, Thomas began shopping LBF Travel, Inc. to potential buyers. *See id.* ¶¶ 17, 18.  DeRosa alleges, "[i]n 2018 . . . Thomas had represented or caused to be represented to others in writing that LBF [Travel, Inc.] possessed a fair market value of $80 to $100 million." *Id.* ¶ 17.  DeRosa further alleges that at the end of 2018 or in early 2019, Thomas negotiated a potential merger that valued LBF Travel, Inc. at $250 million–$300 million. *Id.* ¶ 18.

In the summer of 2019, DeRosa learned that Thomas intended to sell LBF Travel, Inc. to Mondee, Inc. *Id.* ¶ 17.  In late 2019, DeRosa, "Gundumogula, Thomas, and Mondee" began to meet with each other. *Id.* ¶ 23.  The meetings focused on "paying Mr. DeRosa for the value of his LBF [Travel, Inc.] shares, his UCC lien over LBF's computer code, and other monies owed to Mr. DeRosa." *Id.*  DeRosa alleges that, in at least one of the meetings, "[a]ll Defendants falsely represented to Mr. DeRosa the sale price of LBF [Travel, Inc.'s] assets . . . and/or engaged in a coverup of what was taken from LBF and the value given to others for LBF's assets." *Id.* ¶ 110.  DeRosa further alleges that:

> Prasad Gundumogula, on behalf of the Mondee Defendants, told Mr. DeRosa that: He had invested $80 million cash in Mondee; that the company had a stock valuation of just over $500 million and he expected the stock to be worth substantially more after his next two acquisitions which included LBF Travel and a major consolidator (wholesale travel provider); and he expected the stock to [be] valued at $1 billion upon finalization of the two deals.

*Id.* ¶ 96.  DeRosa also alleges, "Thomas received more payout for the sale of LBF [Travel, Inc.'s] assets than reported," but that he "does not know the terms of the de facto merger of LBF [Travel, Inc.] into Mondee, or any statement of price or how it was derived."  *Id.* ¶¶ 83, 203.

DeRosa alleges that the misrepresentations were intended "to deceive" and "to force [him] to sign a settlement agreement that would give him far less than he was owed."  *Id.* ¶¶ 24, 100.  Nonetheless, DeRosa declined to sign any agreement.  *Id.* ¶ 24.

On December 13, 2019, Thomas terminated DeRosa from LBF Travel, Inc.  *Id.* ¶ 25.  DeRosa alleges his termination was "[i]n response to [his] inquiries, whistleblowing, and uncovering of Mr. Thomas's and LBF [Travel, Inc.'s] defrauding of its shareholders."  *Id.*  Despite the alleged fraud, "[o]n January 10, 2020, Mr. DeRosa . . . purchas[ed] an additional 200,000 shares of LBF [Travel, Inc.] stock," which increased DeRosa's interest in LBF Travel, Inc. from 10% to 30%.  *Id.* ¶ 17, 20.

On December 9, 2020, Thomas and LBF Travel Management Corp. brought eleven causes of action against DeRosa.  *See* Doc. No. 1.  In response, DeRosa filed a Counterclaim against Counter Defendants and Third-party Complaint against Third-party Defendants.  *See* Amended TP Compl.

DeRosa brings twenty-four causes of action in his Amended Third-party Complaint: (1) breach of contract against Thomas and "LBF"; (2) a second breach of contract against Thomas and "LBF"; (3) breach of oral contract against Thomas and "LBF"; (4) breach of fiduciary duties against Thomas and Gundumogula; (5) aiding and abetting in breach of fiduciary duties against Gundumogula; LBF Travel Management Corp.; LBF Travel Holdings, LLC; Mondee Holdings, LLC; and Mondee, Inc; (6) conversion against "all defendants"; (7) negligent misrepresentation against Thomas and Gundumogula; (8) aiding and abetting in negligent misrepresentation against Gundumogula; LBF Travel Management Corp.; LBF Travel Holdings, LLC; Mondee Holdings, LLC; and Mondee, Inc.; (9) intentional misrepresentation against Thomas; LBF Travel Management Corp.; LBF Travel Holdings, LLC; (10) aiding and abetting in

4

fraud against Gundumogula; LBF Travel Holdings, LLC; Mondee Holdings, LLC; Mondee, Inc.; (11) failure to pay wages against Thomas and "LBF"; (12) failure to pay all wages due at termination against Thomas and "LBF"; (13) failure to pay overtime against Thomas and "LBF"; (14) failure to provide breaks against Thomas and "LBF"; (15) failure to provide wage statements against Thomas and "LBF"; (16) failure to allow inspection of records against Thomas and "LBF"; (17) unfair business practices against "all defendants"; (18) retaliation in violation of public policy against "LBF"; (19) harassment against Thomas and "LBF"; (20) retaliation against "LBF"; (21) discrimination against Thomas and "LBF"; (22) accounting under "Cal. Corp. Code §§ 1601, et seq."  against Thomas and "LBF"; (23) "violation of Cal. Corp. Code §§ 1300, et seq." against "all defendants"; and (24) concealment against "all defendants." *See* Amended TP Compl. ¶¶ 44–220.  Third-party Defendants move to dismiss all causes of action against them under Rule 12(b)(6) and Rule 9(b).  *See* Doc. No. 41.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims made in the complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is provided "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face."  Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570.  The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth

of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). A court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Additionally, allegations of fraud or mistake require the pleading party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The context surrounding the fraud must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "'Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.' A party alleging fraud must 'set forth more than the neutral facts necessary to identify the transaction.'" *Kearns*, 567 F.3d at 1124 (citation omitted) (first quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); and then quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds*).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### III. REQUESTS FOR JUDICIAL NOTICE

As an initial matter, both DeRosa and Third-party Defendants have filed requests for judicial notice. Doc. Nos. 41-2, 50-1. Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003). However, a

court may consider certain materials, including matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment, *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  For example, "a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)) (internal quotation marks omitted).  A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)).  However, the Court cannot rely on information outside of the complaint to "short-circuit the resolution of a well-pleaded claim."  *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 829–30 (N.D. Cal. 2019).

## A.    Third-party Defendants' Request for Judicial Notice

Third-party Defendants ask the Court to take judicial notice of the following documents submitted in support of their motion to dismiss:

> **Exhibit A**: Conformed copy of Certificate of Incorporation of LBF Acquisition Corporation, Inc. filed with the Delaware Secretary of State on December 16, 2019.
> **Exhibit B**: Conformed copy of Certificate of Amendment of Certificate of Incorporation of LBF Acquisition Corporation, Inc. filed with the Delaware Secretary of State on January 9, 2020.
> **Exhibit C**: Conformed copy of Certificate of Amendment of "LBF Travel, Inc.", Changing Its Name from "LBF Travel, Inc." to "LBF Travel Management Corp." filed with the Delaware Secretary of State on January 7, 2020.

Doc. No. 41-2 at 2.[2]  DeRosa has not opposed the request.

Exhibits A, B, and C consist of documents filed with, and available from, the Delaware Secretary of State.  The Court therefore concludes that they are proper subjects for judicial notice.  *See, e.g.*, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (taking judicial notice of information contained on a government website); *Brown v. Moll*, No. C 09-05881 SI, 2010 U.S. Dist. LEXIS 73875, at *1 n.1, *4 (N.D. Cal. July 21, 2010) (taking judicial notice of a certificate of incorporation). Accordingly, the Court **GRANTS** Third-party Defendants' request and takes judicial notice of Exhibits A, B, and C submitted in support of their motion to dismiss.

That said, the Court reminds the parties that while it may take judicial notice of these exhibits, the Court will not rely on them to the extent they are irrelevant to the issues presented in the present motion or are offered in an attempt to "short-circuit the resolution of a well-pleaded claim."  *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 829–80 (N.D. Cal. 2019).

**B.   DeRosa's Request for Judicial Notice**

DeRosa asks the Court to take judicial notice of the following documents, submitted as exhibits in support of his opposition to Third-party Defendants' motion to dismiss:

> Delaware Division of Corporations filing for LBF Travel Holdings, LLC which is attached to the Declaration of Skye Resendes as **Exhibit 1**, the Delaware Department of State UCC Financing Statement which is attached to the Declaration of Skye Resendes as **Exhibit 2**, and a Security Agreement attached as **Exhibit 3** thereto, which was produced by LBF and is mentioned in Exhibit A to the [Amended TP Compl.] but not attached.

Doc. No. 50-1 at 2.  Third-party Defendants have not opposed DeRosa's request.

---

[2] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

Having reviewed the exhibits attached to DeRosa's Request for Judicial Notice, the Court agrees that the proffered documents have either been incorporated into the Amended Third-party Complaint by reference or are otherwise a matter of public record. Accordingly, the Court **GRANTS** DeRosa's request and takes judicial notice of Exhibits 1, 2, and 3 submitted in support of his opposition to Third-party Defendants' motion.

## IV. DISCUSSION[3]

### A.    Claims 1–3, 11–16, and 18–22

As an initial matter, the parties dispute the relationship between, and potential liabilities of, the various LBF entities.[4]  On this motion to dismiss, the Court must take the facts alleged in the complaint as true.  *See Cahill*, 80 F.3d at 337–38.  However, the Amended Third-party Complaint is decidedly unclear on this front.  For example, DeRosa alleges at various points that "LBF Travel[, Inc.] is the correct party to the Asset Purchase Agreement ("APA") referenced by the original Plaintiffs in this action," Amended TP Compl. ¶ 4, that "DeRosa brings this case against Michael Thomas and LBF Travel Management Corp.[,]" *id.* ¶ 5, that LBF Travel Management Corp. is *not* the predecessor of LBF Travel, Inc., *id.*, but also that "Mr. DeRosa has a right to the property at issue because he is a shareholder of LBF Travel Management f/k/a LBF Travel, Inc.," *id.* ¶ 86.  Further, DeRosa brings claims 1–3, 11–16, and 18–22 against "LBF," without identifying which LBF entity is at issue.  Amended TP Compl.  Third-party Defendants argue that there are two distinct entities that have both, at times, been named "LBF Travel, Inc." and that the causes of action against the more recently incorporated LBF Travel, Inc., *i.e.*, the "new" LBF Travel, Inc., should be dismissed because the company did not exist at the time of the alleged misconduct.  *See* Doc. No. 41 at 11–12.  In his

---

[3] Only Third-party Defendants bring the present motion to dismiss; Thomas and LBF Travel Management Corp. neither bring nor join in the present motion.  Accordingly, the Court only addresses the sufficiency of DeRosa's claims to the extent he brings them against Third-party Defendants.

[4] Three different LBF-related entities are named parties to this action: (1) LBF Travel Management Corp.; (2) LBF Travel, Inc.; and (3) LBF Travel Holdings, LLC.

opposition to the motion to dismiss, DeRosa does not respond to Third-party Defendants' argument that the "new" LBF Travel, Inc. should be dismissed from the case because it was formed on December 16, 2019, after the alleged misconduct. *See* Doc. No. 50. Instead, DeRosa argues that "new LBF" can be held liable for these causes of action "even if the companies did not exist at the time of the alleged misconduct." *Id.* at 2–3.

As noted above, the Court takes judicial notice of the Conformed copy of Certificate of Incorporation of LBF Acquisition Corporation, Inc., filed with the Delaware Secretary of State on December 16, 2019, and the Conformed copy of Certificate of Amendment of Certificate of Incorporation of LBF Acquisition Corporation, Inc, which purports to change the name of LBF Acquisition Corporation, Inc. to LBF Travel, Inc. *See* Doc. No. 41-2. Additionally, the Court has taken judicial notice of the Conformed copy of Certificate of Amendment of "LBF Travel, Inc.", which purports to change the name of a *different* LBF Travel, Inc. to "LBF Travel Management Corp." *See id.*

"Under the 'incorporation by reference' doctrine in this Circuit, 'a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment.'" *Davis v. HSBC Bank*, 691 F.3d 1152, 1161 (9th Cir. 2012) (quoting *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)). "[C]ourts may take judicial notice of a document where "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Solis v. Pollick*, No. ED CV 14-01879-FMO (DFM), 2018 U.S. Dist. LEXIS 227424, at *3–4 (C.D. Cal. Mar. 9, 2018), *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). "A court 'may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Davis v. HSBC Bank*, 691 F.3d at 116 (quoting *Van Buskirk.*, 284 F.3d at 980). Here, it is clear that DeRosa alleges the contents of the certificate of incorporation and certificates of amendment. DeRosa's

entire Amended Third-party Complaint hinges on the activities and alleged misconduct involving LBF Travel, Inc.  However, according to Third-party Defendants' exhibits, it appears that two distinct corporate entities are at issue, which have both been named "LBF Travel, Inc."  Because the "new" LBF Travel, Inc. is the entity Third-party Defendants argue should be dismissed from this case, the Court assesses the sufficiency of DeRosa's claims to the extent he brings them against the "new" LBF Travel, Inc.

In his opposition to the motion to dismiss, DeRosa argues that "[o]ne company can assume the obligations and debts of another by assignment, transfer or under alter ego liability" and that it would be "premature for the Court to categorically state that LBF's debts and liabilities were not subsumed in either of the new LBFs."  Doc. No. 50 at 3. Thus, the Court considers whether "new" LBF Travel, Inc., an entity formed after the alleged misconduct, can be properly named as a party to this case through any of the routes raised by DeRosa.

To determine alter ego liability, the Court applies the law of the forum state.  *In re Schwarzkopf*, 626 F.3d 1032, 1037 (9th Cir. 2010).  Under California law, a plaintiff needs to demonstrate two essential elements to prove that one company is the alter ego of another: (1) unity of interest and (2) that alter ego liability is necessary to avoid an inequitable result.  *Vasey v. Cal. Dance Co.*, 70 Cal. App. 3d 742, 749 (1977). Something more than mere ownership and control by a single individual is necessary to maintain an alter-ego theory.  *See Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837–39 (1962).  There are numerous factors that typically are alleged to demonstrate a unity of interest, including the "commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other."  *Roman Catholic Archbishop v. Sup. Ct.*, 15 Cal. App. 3d 405, 411 (1971).

Here, DeRosa alleges there is unity of interest because

11

> Prasad and Thomas dominated, influenced, and controlled the affairs of the other Defendants" and "that Prasad, Inc, LLC, DOES and Thomas formed companies pursuant to a fraudulent scheme, plan, and device whereby their income, revenue, and profits were diverted to the shells or Prasad, the Mondee Defendants, DOES and Thomas or vice versa[.]

Amended TP Compl. ¶ 39.  He further asserts that "one or both of the LBF parties sold all of their assets to Mondee Holdings, LLC and/or Mondee, Inc., with the aid of Prasad Gundumogula, by using some shell company, which may be LBF Travel but that fact is unknown at present" and that "[i]t appears that Defendant LBF Travel Holdings, LLC, a Delaware company that was created on or about 12/19/2019 was used as a shell to transfer LBF's assets; names were changed to try to obscure all the transactions." *Id.* ¶ 4.  Additionally, DeRosa alleges that "Prasad and Thomas failed to adequately capitalize their business entities; [and] that DOES, Prasad and Thomas commingled company funds and assets with their own." *Id.* ¶ 39.

Assuming the truth of all factual allegations in the light most favorable to the nonmoving party, *Cahill*, 80 F.3d at 337–38 (citing *Nat'l Wildlife Fed'n*, 45 F.3d at 1340), DeRosa fails to allege facts supporting an alter ego claim against "new" LBF Travel, Inc.  Although "under the single-enterprise rule, liability can be found between sister companies[,]" *Advanced Eng'g Solutions Co. v. Corner*, Case No. CV 20-5955-JFW(PLAx), 2021 U.S. Dist. LEXIS 78477, at *10–11 (C.D. Cal. Feb. 25, 2021) (quoting *Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal. App. 3d 1220, 1249 (1991)), "purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard[.]" *See In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003).  DeRosa provides only conclusory allegations that speak to a unity of interest between the "new" LBF Travel, Inc., Thomas, and Gundumogula.  *See* Amended TP Compl. ¶ 39 ("Prasad and Thomas dominated, influenced, and controlled the affairs of the other Defendants . . . Prasad and Thomas commingled company funds and assets with their own").  More is required.  *See Sonora Diamond Corp. v. Superior Court*, 83 Cal. App.

4th 523, 539 (Cal. Ct. App. 2000) ("Alter ego is an extreme remedy, sparingly used.");
*see also Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("The doctrine of
piercing the corporate veil, however, is the rare exception, applied in the case of fraud or
certain other exceptional circumstances . . . .").

Moreover, DeRosa has also fails to adequately allege that an inequitable result
would follow if the corporate separateness of "new" LBF Travel, Inc. is not disregarded.
The "inequitable result" prong of alter ego liability looks to whether "adherence to the
fiction of the separate existence of the corporation would, under the particular
circumstances, sanction a fraud or promote injustice." *First Western Bank & Trust Co. v.
Bookasta*, 267 Cal. App. 2d 910, 914–15 (1968) (citations omitted). Here, DeRosa
alleges that "LBF Travel Holdings, LLC is a mere sham company that is undercapitalized
and will not be able to satisfy any judgment herein[.]" Amended TP Compl. ¶ 41. This
is insufficient. *See Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101,
1117 (2003) ("The purpose of the doctrine is not to protect every unsatisfied creditor, but
rather to afford him protection, where some conduct amounting to bad faith makes it
inequitable, under the applicable rule above cited, for the equitable owner of a
corporation to hide behind its corporate veil[.]") (internal citation and quotation marks
omitted)).

DeRosa's argument that "[o]ne company can assume the obligations and debts of
another by assignment [or] transfer[,]" *see* Doc. No. 50 at 3, is also unpersuasive because
DeRosa has not alleged any facts suggesting that LBF Travel, Inc.'s obligations and debts
were assigned or transferred to "new" LBF Travel, Inc. *See Starr v. Baca*, 652 F.3d
1202, 1216 (9th Cir. 2011) ("[A complaint] must contain allegations of underlying facts
sufficient to give fair notice and to enable the opposing party to defend itself
effectively.")

Accordingly, the Court **GRANTS** Third-party Defendants' motion on this basis
and **DISMISSES** Claims 1–3, 11–16, and 18–22 to the extent he brings them against
"new" LBF Travel, Inc.

**B.      Claim 4**

In his fourth claim, DeRosa alleges that Thomas and Gundumogula breached their fiduciary duties to him.  Amended TP Compl. ¶ 66–72.  As support, DeRosa claims that "Thomas and . . . Gundumogula [] were the majority shareholders or owners of LBF or companies into which LBF's assets were transferred throughout DeRosa's employment." *See id.* ¶ 67.  In the alternative, DeRosa argues that "Prasad's duty to DeRosa can be resolved on alter ego theory, or de facto merger."  Doc. No. 50 at 3.  Third-party Defendants argue that Gundumogula was never a shareholder of "old" LBF Travel, Inc. and so does not owe DeRosa any fiduciary duties.  Doc. No. 41-1 at 12.

A breach of a fiduciary duty requires the "existence of a fiduciary relationship, its breach, and damage proximately caused by that breach*." City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 483 (1998).  Beyond the bald allegation that, together with Thomas, Gundumogula was a "majority shareholder[] or owner[] of LBF or companies into which LBF's assets were transferred[,]" DeRosa does not provide any support for his claim that he was owed fiduciary duties by Gundumogula. *See* Amended TP Compl. ¶ 67.  Although Rule 12(b)(6) is a low hurdle, it requires greater specificity than a vague allegation that two people together or alone owned a majority of the stock in some company or companies.  Because DeRosa fails to adequately allege a duty, he also fails to allege a breach of that duty.  Additionally, DeRosa does not plausibly plead that Gundumogula's actions proximately caused DeRosa's damage; DeRosa's current allegations describe only Thomas's actions, not Gundumogula's.  *See id.* ¶ 69 ("*Thomas* also stole corporate funds for private uses. *Thomas* also did not seek the best deal for all shareholders when selling LBF.") (emphasis added).

Nor is there any merit to DeRosa's argument that Gundumogula's duty to DeRosa can be resolved on alter ego theory or de facto merger.  DeRosa provides no support for this argument, and the Court is unaware of any cases supporting such a contention.

14

Accordingly, the Court **GRANTS** Third-party Defendants' motion on this basis and **DISMISSES** DeRosa's breach of fiduciary claim against Gundumogula.

**C.     Claim 5**

DeRosa also brings a claim for aiding and abetting a breach of fiduciary duty against Third-party Defendants. *Id.* ¶ 73–78. "Under California law, '[l]iability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.'" *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1118 (C.D. Cal. 2003) (quoting *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325–26 (1996)); *see also In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006). "Knowledge is the crucial element" of aiding and abetting liability. *See In re First All. Mortg. Co.*, 471 F.3d at 995 (quoting *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1145 (2005)). If there is actual knowledge, even "ordinary business transactions" can qualify as substantial assistance. *See id.*

DeRosa alleges that Third-party Defendants had actual knowledge of Thomas's breach of fiduciary duties because DeRosa's "claims are discussed in at least one of Defendants' contract" and because "Defendants actually acted as purported transferor of assets which they now claim they did not purchase." Amended TP Compl. ¶ 75. First, it is unclear what "claims" or "assets" DeRosa refers to in paragraph 75. Second, and relatedly, it is unclear what wrong Defendants are alleged to have aided Thomas in. Consequently, DeRosa fails to plausibly allege actual knowledge. *Cf. Chang v. Wells Fargo Bank*, N.A., 2020 U.S. Dist. LEXIS 61168 (N.D. Cal. Apr. 7, 2020) (finding that plaintiffs sufficiently alleged actual knowledge where plaintiffs alleged "a number of facts in support of their claim[,]" including, *e.g.*, that the defendant "processed all transactions and reviewed the accounts as part of its due diligence").

20-cv-2404-MMA (AGS)

DeRosa further alleges that these Defendants provided substantial assistance or encouragement to Thomas in carrying out the breach.  Amended TP Compl. ¶ 76. According to DeRosa, "Defendants intended to assist Thomas through their conduct, which is shown by changing the type of deal from asset purchase to equity purchase, and the creation of shell companies to move assets and liabilities around," and that these Defendants "would have known about Thomas' breach of fiduciary duties during the course of [a due diligence] investigation."  *Id.*  Yet according to DeRosa's own allegations, the deal originated as an equity purchase: "In around August of 2019, Mr. DeRosa learned that Mr. Thomas intended to sell LBF to a competitor, Mondee, Inc. for $20 million in cash and stock, plus "incentives" for LBF's CEO."  *Id.* ¶ 17. Consequently, DeRosa fails to plausibly allege that these Defendants provided substantial assistance in aiding and abetting Thomas's alleged breach of fiduciary duties.

Accordingly, the Court **GRANTS** the motion and **DISMISSES** claim five against Third-party Defendants.

**D.   Claim 6**

Third-party Defendants argue that the sixth cause of action should be dismissed as to Third-party Defendants.  Doc. No. 41-1 at 15.  Under California law, the elements of a conversion claim are (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or dispossession of plaintiff's property rights; and (3) damages.  *Hartford Financial Corp. v. Burns*, 96 Cal. App. 3d 591, 598; *see also Miles, Inc. v. Scripps Clinic & Research Found*, 810 F. Supp. 1091, 1094 (S.D. Cal. 1993).

DeRosa alleges that he "owned, possessed, or had the right to possess at least 10% of LBF's assets (and up to 30% based on Thomas' promises and DeRosa's exercise of his option) at the time LBF's assets were transferred to shell companies."  Amended TP Compl. ¶ 80.  He further alleges that "LBF and Thomas failed to pay DeRosa any LBF dividends or distributions from 2010-2020."  *Id.*  DeRosa does not allege any facts suggesting that he had any ownership in LBF Travel, Inc. beyond stock.  However,

shareholders do not possess ownership rights over a corporation's assets.  *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets").  Additionally, DeRosa fails to provide facts supporting an inference that Third-party Defendants are responsible for the failure of "old" LBF Travel, Inc., a distinct corporate entity, to pay DeRosa dividends.

DeRosa further alleges that he had a UCC lien securing the source code of LBF Travel, Inc. and that "one or all of the Defendants removed that lien or aided and abetted the others with removing the lien."  *Id.* ¶ 82.  However, DeRosa provides no information regarding the alleged removal of the lien beyond the legal conclusions that Defendants "conspired to move the [ ] source code", *see id.*, and that Defendants "stole Plaintiff's secured assets" and so "violated Article 9, Part 6 of the Uniform Commercial Code", *see id.* ¶ 156.  This is insufficient to plausibly plead conversion of property by Third-party Defendants.

Finally, DeRosa alleges that "Defendants took Mr. DeRosa's [personal] hard drives and [computer] screens and have not returned them."  *See id.* ¶ 84.  In support of this claim, DeRosa provides no information beyond alleging that "Defendants took Mr. DeRosa's hard drives and screens and have not returned them despite a demand for their return."  *Id.* ¶ 84.  At most, DeRosa plausibly states a claim against "old" LBF Travel, Inc. and Thomas.  *See id.* ¶ 161 (alleging that "LBF [Travel, Inc.] established an employer-employee relationship with Mr. DeRosa" and that DeRosa "had an office at LBF [Travel, Inc.] premises[.]"  However, these facts do not support a plausible claim that Third-party Defendants converted DeRosa's hard drives and computer screens.  Thus, DeRosa fails to state a claim for conversion against any of the Third-party Defendants.  The Court therefore **GRANTS** Third-party Defendants' motion on that basis and **DISMISSES** DeRosa's claim for conversion to the extent he brings it against the Third-party Defendants.

**E.     Claim 7**

Seventh, DeRosa alleges a claim for negligent misrepresentation against Thomas and Gundumogula.  *Id.* ¶ 93–102.  Third-Party Defendants argue that the claim should be dismissed against Gundumogula because DeRosa fails to show justified reliance and because the representations were immaterial.  Doc. No. 41-1 at 16–17.

Under California law, the elements required to prove negligent misrepresentation are "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage."  *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 70 Cal. Rptr. 3d 199, 213 (Cal. Ct. App. 2007) (citing *Shamsian v. Atl. Richfield Co.*, 132 Cal. Rptr. 2d 635, 647 (Cal. Ct. App. 2003)).  The Court finds Rule 9(b) applies because DeRosa alleges that Third-party Defendants engaged in "long term, secretive behavior designed to defraud Mr. DeRosa."  *See* Amended TP Compl.  ¶ 97; *Vess*, 317 F.3d at 1103; *see also Stewart v. Kodiak Cakes, LLC*, No. 19-cv-2454-MMA (MSB), 2021 WL 1698695, at *13 (S.D. Cal. Apr. 29, 2021) (stating that where fraud is not a necessary element of a claim, a plaintiff may still opt to allege fraudulent conduct).

DeRosa alleges that "Defendants falsely represented to Mr. DeRosa the sale price of LBF's assets to Mondee or other company."  Amended TP Compl. ¶ 95 (emphasis added).  In its prior Order, the Court found DeRosa adequately pleaded the first, second, and third element, but that he had failed to plead justifiable reliance and damages.  *LBF Travel Mgmt. Corp. v. DeRosa*, No. 20-cv-2404-MMA (AGS), 2021 U.S. Dist. 120278, at *12–18 (S.D. Cal. June 25, 2021).  In his Amended Third-party Complaint, DeRosa now provides particulars about Gundumogula's alleged statements:

> Prasad Gundumogula, on behalf of the Mondee Defendants, told Mr. DeRosa that: He had invested $80 million cash in Mondee; that the company had a stock valuation of just over $500 million and he expected the stock to be worth substantially more after his next two acquisitions which included LBF Travel

18

and a major consolidator (wholesale travel provider); and he expected the stock to [be] valued at $1 billion upon finalization of the two deals.

Amended TP Compl. ¶ 96.  DeRosa also asserts that "[i]t was reasonable for DeRosa to rely on Gundumogula's representations because DeRosa had seen a term sheet and expected the deal to go through[.]"  *Id.*  DeRosa further alleges that he was "harmed because he paid cash for the exercise of the other LBF option, and the money has not been returned to DeRosa after the deal did not go as Gundumogula said it would."  *Id.*

Third-party Defendants argue that Gundumogula's alleged misrepresentations are not actionable because they constitute mere opinion.  Doc. No. 41-1 at 17.  However, DeRosa alleges more than Gundumogula's opinion as to the value of Mondee's stock; he alleges that Gundomogula falsely represented that he intended to take action by acquiring "LBF Travel and a major consolidator."  *See* Amended TP Compl. ¶ 96 ("[Gundumogula] expected the stock to be worth substantially more after his next two acquisitions which included LBF Travel and a major consolidator.").

The Court is satisfied that DeRosa plausibly pleads negligent misrepresentation against Gundumogula.  The Court therefore **DENIES** Third-party Defendants' motion to dismiss claim seven against Gundumogula.

## F.   Claim 8

In his eighth claim, DeRosa alleges that Third-party Defendants aided and abetted Thomas's negligent misrepresentations.  *Id.* ¶ 103–08.  The elements required to prove aiding and abetting the tortious breach of a duty are: (1) knowledge that another's conduct constitutes a breach of a duty, and (2) substantial assistance or encouragement of that breach.  *See Neilson v. Union Bank of California*, 290 F. Supp. 2d 1101, 1133 (C.D. Cal. 2003) (citing *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325 (1996)).  Third-party Defendants appear to concede that DeRosa sufficiently alleges knowledge.  *See* Doc. No. 41-1 at 19.  Instead, they argue that DeRosa's substantial assistance claims are not plausible.  *See id.*  As described *supra* Section IV.C in the context of DeRosa's fifth claim, the foundation of DeRosa's substantial assistance claim is that Third-party

Defendants "intended to assist Thomas through their conduct, which is shown by changing the type of deal from asset purchase to equity purchase . . ." Amended TP Compl. ¶ 17.  Yet according to DeRosa's own allegations, the deal originated as an equity purchase: "In around August of 2019, Mr. DeRosa learned that Mr. Thomas intended to sell LBF to a competitor, Mondee, Inc. for $20 million in cash and stock, plus 'incentives' for LBF's CEO." *Id.*  Consequently, DeRosa fails to plausibly allege that Third-party Defendants provided substantial assistance to Thomas's alleged negligent misrepresentations.  Accordingly, the Court **GRANTS** the motion and **DISMISSES** claim eight against the Third-party Defendants.

## G.   Claim 9

Third-party Defendants ask the Court to dismiss DeRosa's ninth claim for intentional misrepresentation to the extent it is brought against LBF Travel Holdings, LLC because the company "was not in existence at the time of the alleged misrepresentations." Doc. No. 41-1 at 18.  The elements required to prove intentional misrepresentation are "(1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage." *Chapman v. Skype Inc.*, 162 Cal. Rptr. 3d 864, 875 (Cal. Ct. App. 2013) (first citing *Lazar v. Superior Ct.*, 909 P.2d 981, 984 (Cal. 1996); and then citing *Mirkin v. Wasserman*, 858 P.2d 568, 570 & 570 n.2 (Cal. 1993)).  The Court finds Rule 9(b) also applies to this claim because DeRosa alleges that LBF Travel Holdings, LLC engaged in "long term, secretive behavior designed to defraud Mr. DeRosa." *See* Amended TP Compl. ¶ 110.

DeRosa alleges that "All Defendants falsely represented to Mr. DeRosa the true sale price of LBF's assets to the other Defendants." *Id.* ¶ 97.  DeRosa alleges that he was terminated on December 13, 2019.  Amended TP Compl. ¶ 14.  In his Amended Third-party Complaint, DeRosa newly alleges two formation dates for LBF Travel Holdings, LLC: "LBF Travel Holdings, LLC . . . was created on 12/16/19" and "LBF Travel Holdings, LLC . . . was created on or about 12/19/2019[.]" *See id.* ¶ 41, 4.  Under either formation date, DeRosa's termination predated formation of the entity.  DeRosa alleges

no facts explaining how LBF Travel Holdings, LLC, a company that, per DeRosa's own allegations, was not yet in existence until after DeRosa's termination, was involved in the alleged misrepresentations that occurred prior to his termination. *See id.* ¶ 41. DeRosa therefore fails to state a claim for intentional misrepresentation against LBF Travel Holdings, LLC. On that basis, the Court **GRANTS** Third-party Defendants' motion and **DISMISSES** claim nine to the extent the claim is brought against LBF Travel Holdings, LLC.

### H.    Claim 10

DeRosa alleges that Third-party Defendants aided and abetted Thomas's fraud. *Id.* ¶ 117–22. In this context, "fraud" is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Cal. Civ. Code § 3294(c)(3). DeRosa alleges that Thomas committed "*negligent* misrepresentation." Amended TP Compl. ¶ 118–19 (emphasis added). Because DeRosa does not allege intentional misrepresentation, he fails to state a claim a claim for fraud. Absent a plausible claim for fraud, his claim for aiding and abetting fraud must be dismissed. Accordingly, the Court **GRANTS** Third-party Defendants' motion and **DISMISSES** claim ten against Third-party Defendants.

### I.    Claim 17

DeRosa alleges that Third-party Defendants engaged in unfair business practices, in violation of Cal. Bus. & Professions Code § 17200, et seq. *Id.* ¶ 154–59. The UCL "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999) (internal quotations omitted). "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis*, 691 F.3d at 1168. DeRosa alleges that Defendants violated all three prongs. Amended TP Compl. ¶ 154–59.

20-cv-2404-MMA (AGS)

First, DeRosa alleges that Third-party Defendants engaged in unlawful business conduct. *Id.* ¶ 156. Under the unlawful prong, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech.*, 20 Cal. 4th at 180 (internal quotations omitted). As described above, the Court dismisses Third-party Defendants from all claims alleged against them that would serve as a basis for an unlawful business conduct claim. A plaintiff who "cannot state a claim under the 'borrowed' law . . . cannot state a UCL claim either." *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1206 (E.D. Cal. 2013) (quoting *Rubio v. Capital One Bank*, 572 F. Supp. 2d 1157, 1168 (C.D. Cal. 2008), *affirmed in part, reversed in part*, 613 F.3d 1195 (2010)). Accordingly, DeRosa fails to state a claim under the unlawful business conduct prong.

Second, DeRosa alleges that Third-party Defendants engaged in unfair business conduct. Amended TP Compl. ¶ 158. There is a split of authority among the California Courts of Appeal as to which of three tests applies in determining unfairness in consumer cases. *See Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256–57 (Cal. Ct. App. 2010) (describing the split of authority). One line of cases requires that "the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to a specific constitutional, statutory, or regulatory provisions." *Drum*, 182 Cal. App. 4th at 256; *see Cel-Tech*, 20 Cal. 4th at 186–87 (requiring finding of unfairness under UCL be tethered to legislatively declared policy). The second line of cases looks to whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1260, 1260 (Cal. Ct. App. 2006). The third line of cases uses the definition of "unfair" in section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(n), and requires that "(1) [t]he consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that

consumers themselves could not reasonably have avoided." *Davis v. Ford Motor Credit Co. LLC*, 179 Cal. App. 4th 581, 597–59 (Cal. Ct. App. 2009).

The Court finds that DeRosa fails to allege a claim under any of the three tests as his allegations are too conclusory to state a claim. *See* Amended TP Compl. ¶ 158 ("The gravity of Defendants' conduct is not outweighed by any benefit; Defendants' conduct is tethered to numerous legal violations. . .").

Finally, DeRosa alleges that Third-party Defendants engaged in fraudulent business conduct, "as discussed in the negligent misrepresentation and fraud causes of action, and the aiding and abetting causes of action." *Id.* ¶ 157. However, mere negligent misrepresentation cannot alone serve as the basis for a fraudulent business conduct claim under the UCL. *See Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (Cal. Ct. App. 1994) ("Fraudulent, as used in the [UCL], does not refer to the common law tort of fraud but [ ] requires a showing [that] members of the public are likely to be deceived.") Moreover, the Court dismisses the fraud and aiding and abetting causes of actions against Third-party Defendants. Because DeRosa fails to plausibly allege that Third-party Defendants engaged in fraudulent business conduct, he fails to state a claim for unfair business practices under the fraudulent business conduct prong.

Accordingly, the Court **GRANTS** Third-party Defendants' motion and **DISMISSES** the unfair business practices claim against them.

## J.    Claim 23

DeRosa alleges that Third-party Defendants violated Cal. Corp. Code §§ 1300, *et seq.* and 1110 because they failed to provide "statutory notice to Mr. DeRosa of the de facto merger" and failed to "provide to Mr. DeRosa the complete terms of the purchase and acquisition or advise him of his dissenter's rights." Amended TP Compl. ¶ 199–208.

Cal. Corp. Code § 1110 addresses mergers of a subsidiary corporation into a parent corporation. However, DeRosa does not allege a parent-subsidiary relationship between LBF Travel, Inc. and any of the Third-party Defendants. Thus, DeRosa fails to plausibly allege this claim against Third-party Defendants under this statute.

Cal. Corp. Code §§ 1300, *et seq.* addresses dissenters' rights, including rules detailing the notice owed *by the issuing corporation* to holders of dissenting shares. DeRosa only alleges stock ownership of "old" LBF Travel, Inc.  Amended TP Compl. ¶ 80 ("DeRosa owned, possessed, or had the right to possess at least 10% of LBF's assets (and up to 30% based on Thomas' promises and DeRosa's exercise of his option) at the time LBF's assets were transferred to shell companies for eventual sale to the other Defendants.")  Thus, he does not plausibly state a claim that Third-Party Defendants had an obligation to provide notice about the alleged merger.

Accordingly, the Court **GRANTS** Third-party Defendants' motion and **DISMISSES** claim twenty-three against the Third-party Defendants.

## K.     Claim 24

DeRosa alleges that Third-Party Defendants engaged in concealment, in violation of Civil Code § 1710(3).  Amended TP Compl. ¶ 199–208.  To state a claim for fraud by concealment, a plaintiff must allege:

> (1) the defendant must have concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact; and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

*Jones v. ConocoPhillips*, 198 Cal. App. 4th 1187, 1198 (Cal. Ct. App. 2011).

DeRosa alleges, inter alia, that Third-party Defendants "failed to disclose Thomas' breach of fiduciary duties to DeRosa . . . [and] failed to keep DeRosa apprised as a shareholder of important facts affecting his rights."  Amended TP Compl. ¶ 211.  Based on the foregoing analysis, the Court is not convinced that Third-party Defendants owed DeRosa a duty to disclose any of these facts.

In the alternative, DeRosa alleges that "in the absence of a fiduciary or confidential relationship, all Defendants owed a duty to DeRosa to disclose material facts."  *Id.* ¶ 211.

However, DeRosa fails to provide sufficient information about what material facts Third-party Defendants should have disclosed in the absence of a fiduciary or confidential relationship.  Thus, DeRosa fails to state a claim against the Third-party Defendants.  Accordingly, the Court **GRANTS** Third-party Defendants' motion and **DISMISSES** claim twenty-four against Third-party Defendants.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Third-party Defendants' motion to dismiss.  In particular, the Court **DENIES** their request to dismiss claim seven against Gundumogula.  The Court **GRANTS** the remainder of Third-party Defendants' motion and **DISMISSES** the claims with leave to amend.  If Third-party Plaintiff DeRosa wishes to file a second amended third-party complaint, he must do so on or before **December 3, 2021**.

**IT IS SO ORDERED**.

Dated: November 15, 2021

HON. MICHAEL M. ANELLO
United States District Judge

20-cv-2404-MMA (AGS)