1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LBF TRAVEL MANAGEMENT CORP. and MICHAEL THOMAS,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>THOMAS DEROSA,<br><br>　　　　　　　　　　　　Defendant. | Case No.:  20-cv-2404-MMA (AGS)<br><br>**ORDER AFFIRMING TENTATIVE RULINGS RE: THIRD-PARTY DEFENDANTS' MOTION TO DISMISS AND STRIKE AND COUNTER-DEFENDANTS' REQUEST TO DISMISS**<br><br>[Doc. Nos. 80, 81] |
| THOMAS DEROSA,<br><br>　　　　　　　　　　　　Counter-Claimant,<br><br>v.<br><br>LBF TRAVEL MANAGEMENT CORP. and MICHAEL THOMAS,<br><br>　　　　　　　　　　　　Counter-Defendants. | |
| THOMAS DEROSA,<br><br>　　　　　　　　　　　　Third-Party Plaintiff,<br><br>v.<br><br>LBF TRAVEL, INC.; LBF TRAVEL HOLDINGS, LLC; MONDEE HOLDINGS, LLC; MONDEE, INC.; and PRASAD GUNDUMOGULA<br><br>　　　　　　　　　　　　Third-Party Defendants. | |

1

On March 9, 2022, Defendant, Counter-Claimant, and Third-Party Plaintiff Thomas DeRosa ("DeRosa") filed a Second Amended Counterclaim and Third-Party Complaint against Counter-Defendants LBF Travel Management Corp. ("Old LBF") and Michael Thomas ("Thomas") (collectively "Counter-Defendants") and Third-Party Defendants LBF Travel, Inc. ("New LBF"), LBF Travel Holdings, LLC, Mondee Holdings, LLC, Mondee, Inc., and Prasad Gundumogula ("Gundumogula") (collectively, "Third-Party Defendants"). *See* Doc. No. 74 (the "Second Amended Pleading", or "SAP"). On April 22, 2022, Third-Party Defendants filed a motion to strike some of the claims against them pursuant to Federal Rule of Civil Procedure 12(f), along with a motion to dismiss all claims against them pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). *See* Doc. No. 80. On April 25, 2022, Old LBF and Thomas filed a notice of joinder. *See* Doc. No. 81. DeRosa filed an opposition, to which Third-Party Defendants and Counter-Defendants separately replied. Doc. Nos. 86, 90, 91.

On August 15, 2022, the parties appeared before the Court for a hearing on the motions to dismiss and motion to strike, along with the notice of joinder. In anticipation of the hearing, the Court issued tentative rulings on the pending motions. *See* Doc. No. 106. For the reasons set forth below, the Court **AFFIRMS** its tentative rulings.[1]

## I. BACKGROUND[2]

The present action originates from the fallout of a business relationship between Thomas and DeRosa. Thomas is Old LBF's co-founder, Chief Executive Officer, and majority shareholder. SAP ¶ 25. He is also the co-founder of New LBF. *Id.* ¶ 25. DeRosa is a software developer and a co-founder of Old LBF. *Id.* ¶¶ 1, 23. Starting in 1995, DeRosa developed software ("the Technology") "that has come to undergird parts of the world's travel e-commerce." *Id.* ¶¶ 1, 32.

---

[1] The Court **DENIES** all requests for supplemental briefing made during the hearing.

[2] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the Amended Third-Party Complaint. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

Thomas and Old LBF first sued DeRosa, alleging that DeRosa breached contracts and misappropriated trade secrets related to the Technology. *See* Doc. No. 1. In turn, DeRosa filed counter and third-party claims, alleging that Thomas, Thomas's friend Gundumogula, and a myriad of entities Thomas and Gundumogula own/manage, collaborated to gut Old LBF of its assets in an effort to defraud and avoid paying DeRosa what he was owed. *See* SAP.

## A.     The Technology and Services Contracts

"On or about October 22, 2010, DeRosa sold the Technology to Old LBF" via a 2010 Asset Purchase Agreement (the "APA"). *Id.* ¶ 39. In exchange, DeRosa was supposed to receive $1.25 million in cash and "10% of fully diluted Old LBF stock (which stock fully vested by 2013)." *Id.* ¶ 40. DeRosa was to receive the cash payment in two forms: $499,200 in 24 monthly installments; and $750,800 in quarterly installments equal to 25% of Old LBF's Net Income for the prior fiscal quarter. *Id.* On that same date, "DeRosa also entered into a consulting agreement with Old LBF to act as Old LBF's Chief Technology Officer (the "Consulting Agreement")". *Id.* ¶ 46.

Pursuant to Old LBF's employee stock option plan, on September 28, 2011, "Thomas and Old LBF granted DeRosa a right to purchase an additional 10% of Old LBF shares at $0.01 per share." *Id.* ¶ 47. "The stock option vested on November 22, 2011, and expired on the earlier of September 30, 2021, or three months after termination of DeRosa's service for any reason other than disability." *Id.*

"DeRosa's rights to the Technology in the event Old LBF defaulted under the APA were set forth in a separate security agreement (the "Security Agreement")," which provided that DeRosa had "a continuing security interest in, lien on, assignment of, and right of set-off over all of Old LBF's [c]ollateral until he was fully paid all of the installments." *Id.* ¶ 42 (internal quotations omitted). "Pursuant to the Security Agreement, DeRosa recorded a lien against the Technology to secure Old LBF's

obligations to pay him." *Id.* ¶ 43.[3]  DeRosa further alleges that the lien on the original Technology extended to the "DerivativeTech." *Id.* ¶ 138.  DerivativeTech refers to "ongoing modifications to the Technology[, which] have been evolutionary in nature and [ ] rely upon the fundamental design and structure of DeRosa's novel and revolutionary original Technology." *Id.* ¶ 10.

"After the term of the Consulting Agreement expired in 2012, Thomas and Old LBF entered into an agreement with DeRosa . . . for his continued provision of CTO services (the "CTO Services Agreement")." *Id.* ¶ 48.

"In or around May 2013, Thomas terminated the former President and CEO of Old LBF. . . ." *Id.* ¶ 49.  "To ensure that DeRosa continued in his capacity as CTO for Old LBF, Thomas and Old LBF offered—and DeRosa accepted—an amendment to the CTO Services Agreement that included a $10,000 per month increase in DeRosa's salary . . . and a grant to DeRosa of an additional 10% of Old LBF stock" with an option to purchase another 10% of Old LBF's equity.  *Id.* ¶¶ 49–50.

"In or around the Summer 2014, Thomas and Old LBF offered—and DeRosa accepted—another salary increase. . . ." *Id.* ¶ 50.

**B.    Thomas' Alleged Malfeasance**

"Unbeknownst to DeRosa, Thomas used his position as the CEO and majority shareholder of Old LBF to embezzle an unknown amount (but at least tens of millions) of dollars from Old LBF, drain the company of its funds, and conceal Old LBF's profits from its minority shareholder DeRosa." *Id.* ¶ 52.  "Thomas's malfeasance caused Old LBF to be chronically under-capitalized. . . ." *Id.* ¶ 54.  Although "Thomas and Old LBF paid DeRosa the 24 monthly installments under the APA, Thomas/Old LBF did not pay DeRosa the $750,800 [ ] due in quarterly payments.  Thomas and Old LBF also routinely failed to pay DeRosa the full salary owed to him under the CTO Services Agreement."

---

[3] Although not clearly stated in the SAP, it appears that this lien was recorded via "Uniform Commercial Code-1 financing statement on October 17, 2018."  *See* SAP ¶ 66.

*Id.* ¶ 56.  All the while, "Thomas would regularly reassure DeRosa that once the company was profitable, Thomas would cure the breaches of the APA and CTO contracts by making 'catch up' payments to DeRosa." *Id.* ¶ 59.  However, according to DeRosa, Old LBF was profitable.  *Id.* ¶ 60.

Since at least 2018, Thomas began shopping Old LBF to potential buyers.  *Id.* ¶ 63. In multiple prospective deals, Thomas represented that Old LBF possessed a fair market value of $80 to $100 million.  *Id.*  "Upon learning of a possible sale, . . . DeRosa recorded a UCC-1 financing statement on October 17, 2018." *Id.* ¶ 66.  None of these deals ultimately came to fruition until 2019, when Thomas reached out to Gundumogula to negotiate a $5 million dollar loan from Mondee Inc. to Old LBF.  *Id.* ¶¶ 65, 70. However, "Gundumogula instead wanted to acquire Old LBF in order to use the Technology to maximize Mondee Inc's potential." *Id.* ¶ 70.

## C.   Sale of Old LBF

"In or around March 2019, Thomas informed DeRosa that . . . Mondee Inc. wanted to purchase Old LBF." *Id.* ¶ 75.  Mondee Inc's CEO was Gundumogula, who was Thomas' long-time personal friend.  *Id.* ¶ 29.

On June 29, 2019, Mondee Inc., Thomas, and Old LBF entered into a term sheet "setting forth their mutual understanding that Mondee Inc. would acquire 100% of Old LBF through a stock purchase agreement" (the "June Term Sheet").  *Id.* ¶ 77.  "In exchange, Old LBF's shareholders would receive $20 million ($5 million in cash and $15 million in Mondee Inc. stock)[,]" *id.*, "a price far below Old LBF's fair market value," *id.* ¶ 78.  DeRosa alleges that the "drastically under-valued price of $20 million" was "[i]n exchange for" the silence of Mondee Inc. and Gundumogula regarding "Thomas's corporate theft, other malfeasance, and the true value of Old LBF[,]" which Gundumogula and Mondee Inc. knew from "due diligence review of Old LBF's company documents, financials, and other information." *Id.* ¶¶ 79–81.  "Gundumogula and Mondee Inc. also agreed to provide Thomas with side-inducements to further incentivize him to sell Old LBF substantially below its true value." *Id.* ¶ 81.  This was done to

"leverage DeRosa's Technology for their own benefit without properly compensating DeRosa by creating a competing company that utilized the DerivativeTech[.]"  *Id.* ¶ 73.

"In August 2019, upon learning of the intended sale to Mondee Inc., DeRosa demanded to know the proposed terms of the sale, but Thomas refused to reveal the terms."  "Instead, Thomas asked that DeRosa 'trust him' and, in exchange, Thomas would compensate DeRosa with an immediate 'true up' payment of $2.2 million for all outstanding debts Old LBF owed DeRosa."  *Id.* ¶ 84.

"In or around August 2019, for the first time, Thomas briefly showed DeRosa the June Term Sheet and described some basic parameters for the proposed sale to Mondee Inc."  *Id.* ¶ 86.  "At that time, Thomas represented that a potential purchase price could be around $37 million, representing $26 million in cash and stock and $11 million in performance bonuses."  *Id.* ¶ 87.

"On or about October 29, 2019, DeRosa, through his counsel, submitted a letter to Mondee Inc., copying Thomas and his counsel, setting forth DeRosa's claims for breach of the APA, breach of his services Agreements, breach of fiduciary duty, self-dealing, violation of California's wage and hour laws, and violations of California and Delaware corporate statutes.  The letter also attached a copy of DeRosa's UCC-1 Financing Statement."  *Id.* ¶ 89.  Nonetheless, "Mondee Inc. authorized Gundumogula to continue dealing with Thomas to acquire Old LBF at a huge discount."  *Id.*

"On or about November 22, 2019, DeRosa attended a meeting with Gundumogula and Thomas at Mondee Inc.'s San Mateo office to discuss the proposed sale.  DeRosa requested to have his attorney present at the meeting, but Thomas and Gundumogula refused to allow DeRosa's attorney to attend."  *Id.* ¶ 87.  During the meeting, "Gundumogula informed DeRosa that Thomas and Old LBF could not and would not pay DeRosa what he was owed under the APA and CTO Services Agreement."  *Id.* ¶ 91.  "Gundumogula also threatened DeRosa repeatedly during the meeting, trying to intimidate him into accepting the deal outlined in the June Term Sheet . . . asked how DeRosa's daughter would be impacted if DeRosa were to lose his health insurance . . .

and warned DeRosa he should think about his daughter and her health before rejecting the sale terms." *Id.* ¶ 92.  Gundumogula "told DeRosa he should think about all of the other Old LBF employees who would lose their jobs if Thomas had to shut down Old LBF because of DeRosa's refusal to accept the proposed sale to Mondee Inc." *Id.* ¶ 93. "Gundumogula asked DeRosa if he should give [Old LBF] employees DeRosa's phone number so he could explain to them why they were all going to be out of work for the upcoming holiday season." *Id.*  "Thomas and Gundumogula physically blocked the exit to the room to prevent DeRosa from leaving" for "approximately 30–45 minutes." *Id.* ¶ 96.  "[N]ear the end of the meeting, Gundumogula and Thomas presented DeRosa with two options: (1) DeRosa agrees to sell his shares of Old LBF under the terms of the June Term Sheet; or (2) Thomas and Gundumogula would punish DeRosa by either firing DeRosa and going forward with the acquisition without DeRosa's participation or, if that was not possible, Thomas would bankrupt Old LBF." *Id.* ¶ 95.  DeRosa refused both options.  *Id.* ¶ 98.

"On or about November 28, 2019, Gundumogula, Mondee Inc., and Thomas presented DeRosa with a revised proposal seeking to persuade DeRosa to sell his shares and approve the sale of Old LBF to Mondee Inc." *Id.* ¶ 99.  DeRosa again refused this deal.  *Id.* ¶ 100.

"[O]n December 10, 2019, Mondee Inc. authorized Gundumogula and Thomas to send DeRosa a written proposed settlement offer in which DeRosa would release any and all claims he had against Old LBF and Thomas "arising out of or related to the [2010] APA, the UCC Lien, the [Consulting Agreement] and any equity interests in [Old] LBF and its subsidiaries and affiliates, including the claims DeRosa raises in his October 29, 2019 letter in exchange for cash and Mondee Inc. stock." *Id.* ¶ 104 (alteration in original) (internal quotations omitted).  DeRosa refused to sign the settlement offer "until he had an opportunity to review Old LBF's financials." *Id.* ¶ 108.

"On or about December 13, 2019, . . . in retaliation for DeRosa's inquiries and threatened exposure of Thomas's and Old LBF's fraud upon its shareholders, Thomas

and Old LBF terminated DeRosa." *Id.* ¶ 112.  Gundumogula and Thomas then changed the structure of the planned acquisition of Old LBF from an equity purchase agreement to a tangled web of agreements including an asset purchase agreement with multiple side contribution agreements (collectively, the "LBF Purchase Agreement"), in order to defraud DeRosa and misappropriate DeRosa's Technology. *See id.* ¶¶ 117, 131–40. "Mondee Inc. made no other attempt to acquire the Technology from Old LBF or to secure any license to use the Technology." *Id.* ¶ 136.

According to DeRosa, because he was never "promptly paid in full, as promised under the APA, pursuant to the Security Agreement, and as the holder of a UCC lien against Old LBF's assets, DeRosa is still the legal and equitable owner of the Technology." *Id.* ¶ 137.  DeRosa further alleges that the lien on the original Technology extended to the DerivativeTech and that New LBF and Mondee Inc. continue to misappropriate and use the Technology to this day. *Id.* ¶ 138, 140.

"On January 10, 2020, not knowing that Thomas and Mondee Inc. had purportedly entered into the LBF Purchase Agreement, DeRosa exercised his option rights under the APA, purchasing an additional 200,000 shares of Old LBF stock, which made DeRosa a 30% shareholder of Old LBF." *Id.* ¶ 128.  DeRosa still owns those shares. *Id.*

## D.    The Second Amended Pleading

DeRosa brings fifteen claims in his Second Amended Pleading: (1) breach of the APA against Thomas and Old LBF; (2) tortious interference with the APA against Thomas; (3) breach of the CTO Services Agreement against Thomas and Old LBF; (4) tortious interference with the Consulting Agreement against Thomas; (5) breach of fiduciary duties and violation of California Corporations Code §§ 309, *et seq.* against Thomas; (6) aiding and abetting breach of fiduciary duties and violation of California Corporations Code §§ 309, *et seq.* against Gundumogula, Mondee LLC, and Mondee Inc; (7) fraudulent conveyance against Thomas, Old LBF, New LBF, Mondee LLC, and Mondee Inc; (8) intentional misrepresentation in violation of California Civil Code §§ 1710 and 3294 against Thomas; (9) intentional misrepresentation in violation of

California Civil Code §§ 1710 and 3294 against Gundumogula; (10) violation of California Corporations Code §§ 1300, *et seq.* for failure to allow inspection of records against Thomas and Old LBF; (11) unfair business practices against Thomas, Mondee Inc., Mondee LLC, and New LBF; (12) intentional infliction of emotional distress against Thomas, Old LBF, Gundumogula, and Mondee Inc.; (13) civil conspiracy against Mondee LLC, Mondee Inc., and Gundumogula; (14) unjust enrichment against all Counter-Defendants and Third-Party Defendants; and (15) various violations of California employment law against Thomas and Old LBF.  SAP ¶¶ 144–295.

## II. LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(f)

A Rule 12(f) motion to strike allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  For the purposes of this rule, "'[i]mmaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706–07 (1990)), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc.*, 984 F.2d at 1527 (quoting 5 Charles A. Wright & Arthur R. Miller, at 711); *see also Whittlestone, Inc.*, 618 F.3d at 974.

The purpose of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  "Motions to strike are generally disfavored, unless 'it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *Haghayeghi v. Guess?, Inc.*, No. 14-cv-00020 JAH-NLS, 2015 WL 1345302, at *5 (S.D. Cal. Mar. 24, 2015) (quoting *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992));

*see also Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998)).  In ruling on a motion to strike, the court may only consider the face of the pleading or matters subject to judicial notice.  *See Fantasy, Inc.*, 984 F.2d at 1528.  "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party."  *Snap! Mobile, Inc. v. Croghan*, No. 18-cv-04686-LHK, 2019 WL 884177, at \*3 (N.D. Cal. Feb. 22, 2019) (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)).  Ultimately, the decision about whether to strike allegations is a matter within the district court's discretion.  *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citing *Fantasy, Inc.*, 984 F.2d at 1528); *see also Whittlestone, Inc.*, 618 F.3d at 974 (quoting *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000)).

**B.**   **Federal Rules of Civil Procedure 12(b)(6) and 9(b)**

A Rule 12(b)(6) motion tests the legal sufficiency of the claims made in the complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is provided "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face."  Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570.  The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the

nonmoving party.  *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  A court need not take legal conclusions as true merely because they are cast in the form of factual allegations.  *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Additionally, allegations of fraud or mistake require the pleading party to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b). The context surrounding the fraud must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'"  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "'Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.'  A party alleging fraud must 'set forth more than the neutral facts necessary to identify the transaction.'"  *Kearns*, 567 F.3d at 1124 (citation omitted) (first quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (then quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds*).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading.  *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### III. ANALYSIS

#### A.  Motion to Strike under FRCP 12(f)

##### 1.  New Claims Attacked as "Procedurally Improper"

Third-Party Defendants move to strike Claims 7, 9, 12–14 as procedurally improper because "the time to amend as a matter of course [under Federal Rule of Civil Procedure 15]" has expired and "DeRosa failed to obtain the opposing party's consent or leave of

court to add new claims." *See* Doc. No. 80-1 at 12. As support for this argument, Third-Party Defendants point to various scheduling orders issued by Magistrate Judge Schopler and the Court's November 2021 Order on Third-Party Defendant's second motion to dismiss.

The Court granted leave to amend the third-party complaint without limiting the scope of amendment to existing claims. *See* Doc. No. 52. DeRosa also timely sought— and was granted—extensions to file his second amended pleading. *See* Doc. Nos. 55, 58, 64–67. Accordingly, DeRosa had leave to add the new claims.[4] Moreover, none of the challenged claims constitute "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See* Fed. R. Civ. P. 12(f).

Accordingly, the Court **DENIES** the motion to strike Claims 7, 9, and 12–14 as procedurally improper. *See Forest Ambulatory Surgical Assocs., L.P. v. Ingenix, Inc.*, No. CV 12-2916 PSG FFMX, 2013 U.S. Dist. LEXIS 190701, at *8–13 (C.D. Cal. Dec. 13, 2013) ([B]ecause the Court granted Plaintiff leave to amend without limitation, it implicitly authorized Plaintiff to raise these new [ ]claims."); *Topadzhikyan v. Glendale Police Dept.*, No. CV 10-387 CAS (SSx), 2010 U.S. Dist. LEXIS 78717, at *6 n.1 (C.D. Cal. July 8, 2010) (declining to strike new claims where court granted leave to amend without limitation).

---

[4] Additionally, the Court notes that even assuming such an analysis is necessary, DeRosa satisfies both Federal Rules of Civil Procedure 15 and 16. Pursuant to Rule 16, a pretrial scheduling order "may be modified only for good cause and with the judge's consent." "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recs., Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Simply put, the amended pleadings deadline set forth in the Rule 16 Scheduling Order was superseded by the Court's numerous extensions to file an amended pleading and thus DeRosa does not need, in this instance, to satisfy Rule 16 with regard to this particular deadline. But in any event, DeRosa has demonstrated diligence—he complied with the amended counterclaim deadlines set forth in the Court's orders on the motion to dismiss or timely requested extensions that were granted. And pursuant to Federal Rule of Civil Procedure 15, when the time to amend as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. Proc. 15(a)(2). The Court gave leave to amend in its November 15, 2021 Order on the motion to dismiss, *see* Doc. No. 52, and in orders granting subsequent extension requests.

### 2. *Waiver of Claim 9*

Third-Party Defendants move to strike claim 9 on the additional ground that DeRosa waived claim 9 because a previously withdrawn claim cannot be reasserted against a defendant later in the case.  Doc. No. 80-1 at 13–14.  DeRosa originally pleaded a claim for intentional misrepresentation against Gundumogula as part of his original Third-Party Complaint, *see* Doc. No. 12, and did not re-plead that claim as part of his First Amended Pleading.  *See* Doc. No. 35.  DeRosa now reasserts an intentional misrepresentation claim against Gundumogula in the SAP as Claim 9.  *See* Doc. No. 74.

As support for this argument, Third-Party Defendants primarily rely on *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).  *See* Doc. No. 80-1 at 13–14.  In turn, DeRosa urges that *Lacey* has been misinterpreted in "a small number of district court cases."  *See* Doc. No. 86 at 18.  Specifically, DeRosa argues that *Lacey* is inapposite because it deals with unpled claims on appellate review, and not unpled claims under review by the district court.  *See id.* at 18–19.

The Court is not persuaded by DeRosa's argument.  "Although *Lacey* addressed the waiver of rights on appeal, district courts have extended the reasoning of the decision to apply to waiver of causes of action in the district court when claims could have been pled in a subsequent complaint but were voluntarily withdrawn."  *See Heath v. Google LLC*, No. 15-cv-01824-BLF, 2018 WL 398463, at *3 (N.D. Cal. Jan. 12, 2018) (citing *Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, at *6 (N.D. Cal. July 7, 2015)); *Gazzano v. Stanford Univ.*, No. C 12-05742 PSG, 2013 WL 2403646, at *4 n.31 (N.D. Cal. May 31, 2013); *Westley v. Oclaro, Inc.*, No. C-11-2448 EMC, 2013 WL 2384244, at *11 (N.D. Cal. May 30, 2013)).  This Court has done the same.  *See, e.g., Lara v. Experian Info. Sols., Inc.*, No. 20-cv-2449, 2021 U.S. Dist. LEXIS 118150, at *18 (S.D. Cal. June 24, 2021); *Demand v. Midvale Indem. Co.*, No. 21-cv-2051, 2022 U.S. Dist. LEXIS 19283, at *7 (S.D. Cal. Feb. 2, 2022).

1   Accordingly, the Court **GRANTS** the motion to strike Claim 9 as waived.[5]

2   **B.    Motion to Dismiss Pursuant to FRCP 12(b)(6) and 9(b)**

3       Third-Party Defendants move to dismiss all claims against them: Claims 6, 7, 9,

4   and 11–14.  *See* Doc. No. 80.  Counter-Defendants join in this motion, and additionally

5   ask that the Court dismiss Claims 2 and 4.  *See* Doc. No. 81.

6       *1.    Tortious Interference with Contract (Claims 2 and 4)[6]*

7       In his second claim, DeRosa alleges tortious interference with the APA against

8   Thomas.  SAP ¶¶ 153–58.  DeRosa alleges that "Thomas intended to induce Old LBF to

9   breach the APA by failing to make required payments thereunder."  *Id.* ¶ 156.  Similarly,

10  in his fourth claim, DeRosa alleges tortious interference with the Consulting Agreement

11  against Counter-Defendant Thomas.  *Id.* ¶¶ 165–70.  DeRosa alleges that "Thomas

12  intended to induce Old LBF to breach the CTO Services agreement by failing to make

13  require payments thereunder."  *Id.* ¶ 168.

14      As an initial matter, in the Notice of Joinder, Counter-Defendants newly attack

15  Claims 2 and 4, which were not challenged in Third-Party Defendants' motion to dismiss.

16  Although Counter-Defendants state in their Notice of Joinder that they "move the Court

17  for an order dismissing certain claims of Counter-Claimant against Counter-

18  Defendants[,]"  *see* Doc. No. 81 at 2, the Court notes that Claims 2 and 4 are not

19  properly before the Court on a noticed motion.  *Martia v. Specialized Loan Servicing,*

20  *LLC*, 2019 U.S. Dist. LEXIS 167609, at *14 (C.D. Cal. June 10, 2019) ("[T]he Court

21  notes that in its Notice of Joinder, [defendant] appears to raise new arguments why the

22  Motion [to dismiss] should be granted as to [defendant] specifically. . . . If [defendant]

23  wanted to make additional arguments to those presented in the Motion, it should have

24  made such arguments in a properly noticed motion.").  Nonetheless, because DeRosa

---

25

26

27   [5] The Court **DENIES** DeRosa's request, made for the first time at the hearing, for leave to amend to
     replead Claim 9.  *See Lacey*, 693 F.3d at 928.

28   [6] The Court addresses Claims 2 and 4 together because both are tortious interference claims against the
     same party (Thomas) and the parties make identical arguments as to both claims.

responded to these new arguments in his opposition to the motion to dismiss, *see* Doc. No. 86 at 27, the Court addresses them on the merits.

First, Thomas urges that the claims "fail as a matter of law because Thomas as the CEO and agent of [Old LBF] was not a stranger to the contracts at issue and was privileged to induce the breach of the contracts." Doc. No. 81 at 3. Specifically, Thomas points to DeRosa's allegation that Thomas was the "CEO and majority shareholder of Old LBF" and urges that "[a]s the CEO of Old LBF, Thomas was an agent of Old LBF and cannot be liable for interfering with what is essentially its own contract." *Id.* at 4 (citing SAP ¶ 25).

In opposition, DeRosa urges that "[o]wners and officers of companies can indeed tortiously interfere with those companies' contracts so long as they are not themselves parties to the contract (that is, not in an individual capacity)." Doc. No. 86 at 28.

> Under California law, the elements of the tort of intentional interference with contractual relations are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)). "[A] stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract." *Pac. Gas & Elec. Co.*, 50 Cal. 3d at 1126 (citations omitted).

From the face of the pleading, Thomas is neither a party nor a complete stranger to these agreements. *See* SAP. And there is no definitive answer on the issue of who constitutes a "stranger" in the context of a tortious interference claim under California law. In 2001, the Ninth Circuit stated in *Marin Tug* that "California law has long recognized that the core of intentional interference business torts is interference with an

economic relationship by a third party *stranger* to that relationship, so that an entity with a direct interest or involvement in that relationship is not usually liable for harm caused by pursuit of its interests." *Marin Tug & Barge, Inc. v. Westport Petroleum*, Inc., 271 F.3d 825, 832 (9th Cir. 2001) (emphasis in original). However, in 2014, the Ninth Circuit partially retreated from its prior position in *Marin Tug*, stating in *Fresno Motors* that

> The "not - a – stranger" principle relied on by the district court is an elusive concept that has spawned much controversy in both the California courts and this court. . . . As is readily apparent, the viability of the "not - a – stranger" principle relied on by the district court is in a state of flux, and there is no indication that the California Supreme Court will clarify it any time soon.

*Fresno Motors, LLC*, 771 F.3d at 1127. The Ninth Circuit noted but did not clarify the scope of the "not – a – stranger" principle in California. *Id.* Neither of the parties point to, and the Court is unaware of, any authority that resolves this issue.

Given that California law still appears to be in flux, and because the parties devoted minimal briefing on this issue, the Court **DENIES** the request to dismiss Claims 2 and 4 on this basis. *See Bruner v. LUX EAP, LLC,* No. ED CV 17-1359-DMG (SPx), 2018 U.S. Dist. LEXIS 227212, at *11–13 (C.D. Cal. July 27, 2018) (quoting *Fresno Motors, LLC*, 771 F.3d at 1127) (explaining that "[T]he Ninth Circuit eschewed the District Court's reasoning in *Fresno Motors*, explaining that 'the "not-a-stranger" principle . . . is in a state of flux' and that 'only parties to a contract are immune from claims of intentional interference with existing contractual relations.'").

Second, Thomas urges that the tortious interference claims fail because "Thomas has the affirmative defense of manager's privilege as to DeRosa's tortious interference claims." Doc. No. 81 at 4. However, "[t]he scope of the manager's privilege under California law is 'neither clear nor consistent.'" *Centerline Hous. P'ship v. Palm Cmtys.*, No. SACV 21-00107JVS(JDEx), 2021 U.S. Dist. LEXIS 116189, at *11–12 (C.D. Cal. Apr. 26, 2021) (quoting *Huynh v. Vu*, 111 Cal. App. 4th 1183, 1195 (2003)). Generally,

20-cv-2404-MMA (AGS)

the rule stands for the proposition that a manager or agent "may, with impersonal or disinterested motive, properly endeavor to protect the interests of his principal by counseling the breach of a contract with a third party which he reasonably believes to be harmful to his employer's best interests." *Huynh*, 111 Cal. App. 4th at 1194 (citing *Olivet v. Frischling*, 104 Cal. App. 3d 831, 840–41 (1980), *disapproved on other grounds in Applied Equipment*, 7 Cal. 4th 503). "There are three formulations of the manager's privilege: absolute, mixed motive, and predominant motive. . . ." *Centerline Hous. P'ship*, 2021 U.S. Dist. LEXIS 116189, at *11–12 (citing *Huynh*, 111 Cal. App. 4th at 1195).

Given the emphasis on a defendant's conduct, the applicability of the manager's privilege is therefore an argument better suited to summary judgment. *See id.* (declining to rule on the applicability of the manager's privilege to a tortious interference claim at the motion to dismiss stage because "[T]he manager's privilege is bound up in the conduct of the defendant and is thoroughly fact intensive . . . While it is possible that the manager's privilege may apply, the Court cannot conclude at the current stage of the pleadings that it does. Moreover, the Court will not convert the instant motion to dismiss into a motion for summary judgment to do so.") (internal citation and quotation omitted).

In sum, the Court **DENIES** the request to dismiss Claims 2 and 4 without prejudice to the parties raising these issues at a later stage of the litigation.

### 2. *Aiding and Abetting Breach of Fiduciary Duties (Claim 6)*

In his sixth claim, DeRosa alleges aiding and abetting breach of fiduciary duties and violation of California Corporations Code §§ 309, *et seq.* against Gundumogula, Mondee LLC, and Mondee Inc. SAP ¶¶ 176–83. Specifically, DeRosa identifies four instances in which Third-Party Defendants aided and abetted Thomas in violating his fiduciary duties of care and loyalty: (1) "usurping a corporate opportunity that belonged to Old LBF by facilitating the creation a company that would utiliz[e] the 2018 payment processing workflow to compete with Old LBF"; (2) restructuring the equity purchase to an asset purchase in order to strip DeRosa of his security interested; (3) underpaying for

Old LBF and giving Thomas additional/undisclosed consideration as part of the purchase of Old LBF; and (4) refusing to provide DeRosa with information regarding the fact of and the terms of the proposed transaction.  *Id.*

"Under California law, '[l]iability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.'"  *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1118 (C.D. Cal. 2003) (quoting *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325–26 (1996)); *see also In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006). "Knowledge is the crucial element" of aiding and abetting liability.  *See In re First All. Mortg. Co.*, 471 F.3d at 995 (quoting *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1145 (2005)).  If there is actual knowledge, even "ordinary business transactions" can qualify as substantial assistance.  *See id.*

First, Third-Party Defendants argue that DeRosa's theory that Thomas breached his fiduciary duties by "usurping corporate opportunities" should be dismissed.   Doc. No. 80-1 at 14–15.  Third-Party Defendants urge that any "usurped corporate opportunity" belongs to Old LBF and not DeRosa as a shareholder.  The Court agrees.  In Claim 6, DeRosa speaks only of harm to himself and seeks punitive damage for himself; by his own allegations, DeRosa only brings this claim individually and not derivatively on behalf of Old LBF.  *See, e.g.*, SAP ¶ 182 ("[T]he conduct of Defendants Gundumogula, Mondee LLC, and Mondee Inc. was a substantial factor in *causing harm to DeRosa* by permitting Thomas to dissipate the assets of Old LBF in a manner that benefited Thomas *to the detriment of DeRosa*.") (emphasis added).  By definition, a director or officer who usurps a "corporate opportunity" breaches a fiduciary duty owed to, and commits an intentional tort against, the corporation and not individuals like DeRosa.  *In re Digex Inc. S'holders Litig.*, 789 A.2d 1176, 1189 (Del. Ch. 2000) ("A

claim that a director or officer improperly usurped a corporate opportunity belonging to the corporation is a derivative claim. . . . [T]he claim that the defendants usurped a corporate opportunity must necessarily constitute an "injury" to the corporation . . . .") (applying Delaware law); *see also Robinson, Leatham & Nelson, Inc. v. Nelson*, 109 F.3d 1392 (9th Cir. 1997) ("The corporate opportunity doctrine prohibits a fiduciary from acquiring, 'in opposition to the corporation, property in which the corporation has an interest or tangible expectancy.'") (applying California law).  Accordingly, this is not DeRosa's claim to bring as an individual.[7]

Second, Third-Party Defendants argue that the entire claim should be dismissed because they did not owe DeRosa any duties.  However, defendants can be "liable for aiding and abetting a breach of fiduciary duty even though they did not owe a fiduciary duty to [a plaintiff]." *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 171 Cal. Rptr. 3d 548, 565–69 (2014) ("In [*Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003)], the court thoroughly reviewed California case law and concluded that under California law a defendant can be liable for aiding and abetting a breach of fiduciary duty in the absence of an independent duty owed to the plaintiff."); *see also Lennard v. Yeung*, No. CV 10-09322 MMM (AGRx), 2012 U.S. Dist. LEXIS 200611, at *64 (C.D. Cal. Feb. 23, 2012) (discussing a claim for aiding and abetting a breach of fiduciary duty and concluding that "[n]o California case . . . holds that a party must owe the plaintiff a duty before it can be held liable as an aider and abettor.").  Thus, despite Third-Party Defendants' arguments to the contrary, DeRosa need not allege that Third-

---

[7] At the hearing, DeRosa urged the Court that *Jara v. Suprema Meats, Inc.*, 121 Cal. App. 4th 1238 (2004), allows DeRosa to maintain his "usurping a corporate opportunity" theory as an individual and not a derivative claim.  But "[t]he court in [*Jara*] simply held that an individual shareholder has standing to assert a direct cause of action for breach of fiduciary duty against the majority shareholders and is not limited to a derivative action." *Cheng v. Coastal L.B. Associates, LLC*, 69 Cal. App. 5th 112, 125 (2021).  The Court is not convinced that *Jara* stands for the proposition that a shareholder may individually bring a claim for breach of fiduciary duty based on the theory that an officer usurped a corporate opportunity.

Party Defendants owed DeRosa a fiduciary duty; his allegations that (1) Thomas owed him, as a minority shareholder, the fiduciary duties of care and loyalty; (2) Third-Party Defendants knew Thomas owed duties to DeRosa; (3) Thomas breached those duties; and (4) Third-Party Defendants provided substantial assistance or encouraged Thomas to breach those duties, are sufficient to survive a motion to dismiss. *See Am. Master Lease LLC*, 171 Cal. Rptr. 3d at 569.

Third, Third-Party Defendants urge that "DeRosa claims that Gundumogula, Mondee LLC, and Mondee Inc. 'concealed' Thomas' looting of Old LBF's assets" but "under California law, concealment is only actionable when the defendant has a duty to disclose a certain fact." Doc. No. 80-1 at 14–15. Third-Party Defendants point to no authority requiring DeRosa to allege an underlying cause of action for concealment in order to state a claim for aiding and abetting a breach of fiduciary duty, even if that claim (specifically, the tortious conduct element) is premised in part upon concealment. The primary case Third-Party Defendants cite deals with an actual claim for concealment and so is not instructive here. *See id.* at 15 (citing *GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F. Supp. 3d 1007, 1040 (C.D. Cal. 2017)).

Accordingly, the Court **GRANTS** the motion to dismiss as to DeRosa's "usurping a corporate opportunity" theory and **DENIES** the remainder of the motion to dismiss Claim 6.

### 3. *Fraudulent Conveyance (Claim 7)*

In his seventh claim, DeRosa alleges fraudulent conveyance against Thomas, Old LBF, New LBF, Mondee LLC, and Mondee Inc. Doc. No. 74 ¶¶ 184–95. At the hearing, DeRosa argued that he sufficiently alleges the claim under common law or as a claim for fraudulent transfer pursuant to the California's Uniform Voidable Transactions Act, California Civil Code § 3439.04. The elements for a fraudulent transfer claim under common law are the same as under § 3439. *See Lehman Bros. Holdings, Inc. v. Cafcalas*, No. LA CV16-03167 JAK (PJWx), 2018 U.S. Dist. LEXIS 229076, at *15–16 (C.D. Cal. Feb. 27, 2018) ("[T]he necessary elements and available remedies for a fraudulent

transfer under common law are the same as under the UVTA[.]"); *see also Hyosung (Am.), Inc.*, No. C 10–02160 SBA, 2011 U.S. Dist. LEXIS 21935, at *7 (N.D. Cal. Mar. 4, 2011) (citation omitted) (noting that in the UFTA[8],"[T]he elements for a fraudulent transfer claim under common law or the UFTA, Cal. Civ. Code § 3439.04(a)(1), are the same." Under California state law, "[a] fraudulent conveyance is 'a transfer by the debtor of the property to a third person undertaken with the intent to prevent a creditor from reaching the interest to satisfy its claim.'" *LaChapelle v. Kim*, No. 15-CV-02195-JSC, 2015 U.S. Dist. LEXIS 161801, at *12 (N.D. Cal. Dec. 2, 2015) (quoting *Yaesu Elecs. Corp. v. Tamara*, 28 Cal. App. 4th 8, 13 (1994)). The California statute against fraudulent conveyances allows recovery from the entities who transferred the assets and those who received them. Cal. Civ. Code § 3439.08. Rule 9(b)'s heightened pleading standard applies to actual fraudulent transfer claims. *See LaChapelle*, 2015 U.S. Dist. LEXIS 123859, at *14.

First, Third-Party Defendants and Counter-Defendants argue that the claim should be dismissed because, as an alleged minority shareholder of Old LBF, DeRosa does not have a property interest in Old LBF's former assets. *See* Doc No. 80-1 at 16; 81 at 2. However, DeRosa alleges he is more than a mere shareholder of Old LBF; he alleges that he "publicly registered his security interest in Old LBF's assets by properly recording a UCC lien on those assets." SAP ¶ 8.[9] DeRosa also asserts that "Old LBF clearly owed DeRosa debts under the APA and CTO Services Agreement, promises to fund his employer contribution programs, and for the benefits of the Technology subject to his UCC lien." *See* Doc. No. 86 at 21 (citing SAP ¶¶ 21, 42, 56, 62, 84). Accepting the

---

[8] California's Uniform Fraudulent Transfer Act (UFTA) was superseded by California's Uniform Voidable Transactions Act (UVTA).

[9] Additionally, Third-Party Defendant urges that "DeRosa has already admitted in prior pleadings that his UCC lien has been removed" and cites "ECF No. 35 at ¶ 82; ECF No. 50 at 7:10-16." *See* Doc. No. 90 at 12. This argument is more appropriately addressed on summary judgment as there appears to be a factual dispute regarding removal of the lien.

SAP's material allegations as true, DeRosa plausibly pleads a property interest that can form the basis of a fraudulent transfer claim.

Second, Third-Party Defendants and Counter-Defendants argue that "DeRosa's fraudulent conveyance claim fails Rule 9(b)'s particularity requirement."  Doc. No. 80-1 at 16; 81 at 2.  Specifically, they argue that "DeRosa does not explain what was wrongful about the alleged transfer of assets between Mondee-owned companies."  *See id.* at 17.  However, DeRosa alleges that:

- "Thomas and Old LBF concealed the true value of Old LBF's assets from DeRosa, and concealed the transfer of those assets to a wholly-owned subsidiary of Mondee Inc."

- "Thomas and Old LBF transferred substantially all of Old LBF's assets to a wholly-owned subsidiary of Mondee Inc. in order to hinder and delay DeRosa in satisfying his claims against Thomas and Old LBF."

- "Thomas and Old LBF's attempt to hinder and delay DeRosa in satisfying his claims against Thomas and Old LBF were successful, as Thomas and Old LBF no longer have assets sufficient to satisfy DeRosa's claims."

- "In an effort to further protect Old LBF's assets from DeRosa, Mondee Inc. caused LBF Acquisition Corp to transfer Old LBF's assets to New LBF, again without receiving a reasonably equivalent value in exchange for those assets."

SAP ¶ 189–92.

DeRosa also points to specific paragraphs in the SAP wherein he identifies the particulars of the purportedly wrongful transfer:

- The SAP alleges that Old LBF under Thomas' control (the who);

- Transferred most of Old LBF's assets to LBF Acquisition (a wholly owned Mondee subsidiary) minus its debts and the Technology subject to DeRosa's lien (the what);

- At Mondee's office in San Mateo (the where);

- On December 20, 2019 (the when);

- Through an asset purchase agreement (the how).

- Additionally, LBF Acquisition at Gundumogula's direction (the who);

- Transferred these same assets to New LBF (another wholly owned Mondee subsidiary) (the what);

- At the same place (the where);

- At the same time (the when);

- Through the same asset purchase agreement (the how).

- Thomas and Gundumogula directed the transfer of these assets through these entities to avoid paying DeRosa debts he is owed, compensation for use of the Technology and Derivative Technology, and fair market value for his equity share.

*See* Doc. No. 86 at 22 (citing SAP ¶ 21, 28, 42, 56, 84, 118, 188, 190–95).

Together with the rest of the allegations in the SAP—which details specific misrepresentations and tortious conduct—this is sufficient to allege what was wrongful as to each of the identified parties' actions.   Rule 9(b) "does not require nor make legitimate the pleading of detailed evidentiary matter." *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir. 1973).  "It only requires identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Id.* (noting that alleging in conclusory fashion that defendant's conduct was fraudulent was not sufficient under Rule 9(b)).

In sum, DeRosa presents sufficient factual allegations to state a plausible claim for relief for fraudulent transfer against each of the alleged parties. *See Iqbal*, 129 S. Ct. at 1949. Therefore, the Court **DENIES** the motion to dismiss as to Claim 7.

### 4. *Intentional Misrepresentation (Claim 9)*

In his ninth claim, DeRosa alleges intentional misrepresentation in violation of California Civil Code §§ 1710 and 3294 against Gundumogula. SAP ¶¶ 203–07. In light of the Court's reasoning *supra* Section III.A.2, the Court **DENIES AS MOOT** the motion to dismiss Claim 9.

### 5. *Unfair Business Practices (Claim 11)*

In his eleventh claim, DeRosa alleges unfair business practices against Thomas, Mondee Inc., Mondee LLC, and New LBF. SAP ¶¶ 211–31.

California's Unfair Competition Law ("UCL") "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999) (internal quotations omitted). "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis*, 691 F.3d at 1168. DeRosa alleges that Thomas, Mondee Inc., Mondee LLC, and New LBF have violated all three prongs. SAP ¶¶ 211–31.

Third-Party Defendants and Thomas argue that DeRosa's eleventh cause of action fails because it "is derivative of his prior failed claims." *See* Doc. No. 80-1 at 18; 81 at 2. However, claims survive as to Thomas (Claims 1–5, 7, 8, and 10), Mondee Inc. (Claims 6 and 7), Mondee LLC (Claims 6 and 7), and New LBF (Claim 7). Third-Party Defendants and Thomas point to no authority suggesting that the facts supporting these claims are insufficient to plausibly state a claim for unfair competition. Accordingly, the Court **DENIES** the motion to dismiss Claim 11.

6.    *Intentional Infliction of Emotional Distress (Claim 12)*

In his twelfth claim, DeRosa alleges intentional infliction of emotional distress against Thomas, Old LBF, Gundumogula, and Mondee Inc.  SAP ¶¶ 232–36.  Under California law,

> [a] cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff[s] suffer[ed] severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Evans v. City of San Diego*, 913 F. Supp. 2d 986, 1000 (S.D. Cal. 2012) (quoting *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009)); *see also Christensen v. Superior Court*, 820 P.2d 181, 202 (Cal. 1991).  "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'"  *Hughes*, 209 P.3d at 976 (quoting *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 819 (Cal. 1993)).  A court may dismiss such claims as a matter of law if the conduct alleged is insufficiently outrageous, particularly where the conduct alleged amounts to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *Id.* (quotations and citations omitted).

Third-Party Defendants and Counter-Defendants attack the outrageousness element, arguing that "[t]aking these claims at face value, they do not rise to a level of objective outrageousness."  *See* Doc. Nos. 80-1 at 20; 81 at 2.  The Court agrees.  Based upon California case law, DeRosa's intentional infliction of emotional distress claim fails because the alleged conduct is not outrageous as a matter of law.  *See id.* [10]

--------

[10] During oral argument, DeRosa argued that the claim should survive dismissal because, under *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 689, 697 (9th Cir. 2001), any conduct that is criminal is

Accordingly, the Court **GRANTS** the motion to dismiss Plaintiff's IIED claim as to Third-Party Defendants and Counter-Defendants.

### 7.    *Civil Conspiracy (Claim 13)*

In his thirteenth claim, DeRosa alleges civil conspiracy against Mondee LLC, Mondee Inc., and Gundumogula.  SAP ¶¶ 237–39.  Third-Party Defendants argue that this claim is duplicative of DeRosa's sixth cause of action for aiding and abetting breach of fiduciary duties and that the claim for civil conspiracy therefore fails for the same reasons as the sixth claim—namely, that Third-Party Defendants did not owe DeRosa a duty to disclose information.  *See* Doc. No. 80-1 at 14–16.

Although "California courts recognize that conspiracy and aiding and abetting are closely allied forms of liability[,]" they are not identical claims.  *See Lennard*, 2012 U.S. Dist. LEXIS 200611, at *63–64 (citing *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 63–64 (1996)).  To state a claim for conspiracy under California law, a plaintiff must allege the following elements: "(1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts."  *Wasco Products, Inc. v. Southwall Technologies*, Inc., 435 F.3d 989, 992 (9th Cir. 2006) (citing *Cellular Plus, Inc. v. Superior Court*, 18 Cal. Rptr. 2d 308, 314 (1993)).  Conspiracy is not a distinct cause of action but "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration."  *Applied Equip. Corp.*, 7 Cal. 4th at 510–11.

---

inherently outrageous.  *Cramer* held that the "criminal use of hidden cameras and two-way mirrors in restrooms to conduct clandestine surveillance," in violation of Cal. Penal Code § 653, was *per se* outrageous.  It cannot be that *Cramer* stands for the proposition that every purported violation of the California Penal Code constitutes outrageous behavior sufficient to support an intentional infliction of emotional distress claim.  *See Yardley v. ADP TotalSource, Inc.*, 2014 U.S. Dist. LEXIS 56114, at *34–35 (C.D. Cal. 2014) (rejecting a plaintiff's argument that *any* criminal violation is *per se* outrageous).  Accordingly, the Court is not persuaded by DeRosa's argument that *Cramer*'s reasoning salvages his IIED claim.

"[A] conspiracy claim may not be asserted against one who did not owe the injured party a duty." *Neilson*, 290 F. Supp. 2d at 1127 (first citing *Applied Equipment*, 7 Cal. 4th at 51) (then citing *Doctors' Co.v. Superior Court*, 49 Cal. 3d 39, 44 (1989)). During oral argument, DeRosa's counsel urged that DeRosa need not allege Third-Party Defendants owed him a *fiduciary* duty in order to plausibly state a claim for civil conspiracy. This may be true; however, DeRosa does not plausibly plead *any* duty owed by Third-Party Defendants to him. Accordingly, his claim fails. The Court therefore **GRANTS** the motion to dismiss as to Claim 13 as to Third-Party Defendants.

### 8.     *Unjust Enrichment (Claim 14)*

In his fourteenth claim, DeRosa alleges unjust enrichment against all Counter-Defendants and Third-Party Defendants. SAP ¶¶ 240–43. Third-Party Defendants and Counter-Defendants contend that the claim should be dismissed because "California law does not recognize a standalone claim for unjust enrichment." *See* Doc. Nos. 80 at 20–21; 81 at 2. Additionally, they argue that "the basis of DeRosa's unjust enrichment claim is the same as his claim for intentional misrepresentation, i.e., that DeRosa was dissuaded from investigating Thomas' fraud and bringing suit earlier than he already did (SAP ¶ 242), which fails for the reasons previously discussed." *See* Doc. Nos. 80-1 at 20–21; 81 at 2.[11]  DeRosa urges that California recognizes unjust enrichment as a standalone cause of action and that, alternatively, "the Court need not resolve this issue [ ] because . . . when a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." Doc. No. 86 at 27 (citations and quotation marks omitted).

There is a mix of authority on this issue. On one hand, many "courts have consistently dismissed stand-alone claims for unjust enrichment." *Brodsky v. Apple Inc.*,

---

[11] At the hearing, Third-Party Defendants' counsel raised a new, additional argument as to this claim: the claim must be dismissed as to Gundomogula as there is no allegation that Gundumogula retains any unjust benefits. The Court declines to consider arguments newly raised at the hearing. *Stanley v. Novartis Pharms. Corp.*, 11 F. Supp. 3d 987, 1000 fn.3 (C.D. Cal. 2014).

445 F. Supp. 3d 110, 132–33 (N.D. Cal. 2020) (citations omitted); *see also Astiana v. Hain Celestial Grp., Inc*, 783 F.3d 753, 762 (9th Cir. 2015) ("In California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'") (citations omitted).  On the other hand, more recently in 2016 in *ESG Capital Partners, LP v. Stratos*, the Ninth Circuit, in a three-judge panel, "considered this issue and reasoned that an unjust enrichment claim can proceed as either 'a claim for relief as an independent cause of action or as a quasi-contract claim for restitution.'" *Snopes Media Grp., Inc. v. Mikkelson*, No. 21-cv-1730-BAS-DEB, 2022 U.S. Dist. LEXIS 80447, at \*15 (S.D. Cal. May 2, 2022) (quoting *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016)).

Accordingly, given that the case law is unsettled, the Court **DENIES** the motion to dismiss as to DeRosa's unjust enrichment claim without prejudice to the parties raising this issue at a later stage of the litigation.  *See Snopes Media Grp., Inc.*, 2022 U.S. Dist. LEXIS 80447, at \*15–17 (finding a standalone unjust enrichment claim plausibly stated where a plaintiff alleged that defendant "unlawfully withheld" funds "she knew were obtained through embezzlement . . . or obtained . . . by her own extortion").[12]

## IV. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** its tentative rulings. Accordingly, the Court (1) **GRANTS IN PART** and **DENIES IN PART** the motion to strike; (2) **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss; and (3) **DENIES** Counter-Defendants' request to dismiss Claims 2 and 4.  In particular, the Court:

- **DENIES** the motion to strike Claims 7, 9, and 12–14 as "procedurally improper";
- **GRANTS** the motion to strike Claim 9 as waived;

---

[12] Because the Court defers reaching a conclusion on the issue of whether unjust enrichment is a standalone claim at this time, the Court declines to reach the remaining intentional misrepresentation and quasi-contract arguments.

- **GRANTS** the motion to dismiss Claim 6 only as to the "usurping a corporate opportunity theory" and **DENIES** the motion to dismiss Claim 6 as to the remaining theories;
- **GRANTS** the motion to dismiss Claims 12 and 13;
- **DENIES** the motion to dismiss Claims 7, 11, and 14;
- **DENIES AS MOOT** the motion to dismiss Claim 9 in light of the ruling on the motion to strike; and
- **DENIES** the request to dismiss Claims 2 and 4.

Because DeRosa has had three opportunities to allege viable claims, dismissal is **with prejudice** and therefore **without leave to amend** as to the following claims: Claim 6 to the extent it is premised on the "usurping a corporate opportunity" theory, Claim 12 in its entirety, and Claim 13 in its entirety.

Third-Party Defendants and Counter-Defendants must respond to the Second Amended Counterclaim and Third-Party Complaint within the time prescribed by Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED**.

Dated: August 22, 2022

HON. MICHAEL M. ANELLO

United States District Judge

20-cv-2404-MMA (AGS)