# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LBF TRAVEL MANAGEMENT CORP. and MICHAEL THOMAS,<br><br>                               Plaintiffs,<br><br>v.<br><br>THOMAS DEROSA,<br><br>                               Defendant. | Case No.:  20-cv-2404-MMA-SBC<br><br>**ORDER ON *DAUBERT* MOTIONS AND MOTIONS FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 203, 204, 205, 208, 210, 211] |
| THOMAS DEROSA,<br><br>                               Counter-Claimant,<br><br>v.<br><br>LBF TRAVEL MANAGEMENT CORP. and MICHAEL THOMAS,<br><br>                               Counter-Defendants. | |
| THOMAS DEROSA,<br><br>                               Third-Party Plaintiff,<br><br>v.<br><br>LBF TRAVEL, INC.; LBF TRAVEL HOLDINGS, LLC; MONDEE HOLDINGS, LLC; MONDEE, INC.; and PRASAD GUNDUMOGULA,<br><br>                               Third-Party Defendants. | |

Plaintiffs/Counter-Defendants LBF Travel Management Corp. ("Old LBF") and Michael Thomas ("Thomas") (collectively, "Plaintiffs") and Defendant/Counter-Claimant/Third-Party Plaintiff Thomas DeRosa ("DeRosa") cross-move for summary judgment, or in the alternative partial summary judgment, regarding Plaintiffs' Complaint filed on December 9, 2020, Doc. No. 1.  *See* Doc. Nos. 204; 208.  In addition, Third-Party Defendants LBF Travel, Inc. ("New LBF"), LBF Travel Holdings, LLC, Mondee Holdings, LLC, Mondee, Inc., and Prasad Gundumogula ("Gundumogula") (collectively, "Third-Party Defendants") move for summary judgment, or in the alternative partial summary judgment, against DeRosa regarding the remaining claims against them in his Second Amended Counterclaim and Third-Party Complaint ("Second Amended Pleading" or "SAP") filed on March 9, 2022, Doc. No. 74.  *See* Doc. No. 210.  The parties also relatedly move to exclude certain opinions offered by each other's retained experts.  *See* Doc. Nos. 203; 205; 211.  The Court found these matters suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1.  *See* Doc. No. 268.  For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' motion for partial summary judgment, Doc. No. 204, **GRANTS in part** and **DENIES in part** DeRosa's motion for summary judgment, Doc. No. 208, **GRANTS in part and DENIES in part** Third-Party Defendants' motion for summary judgment, Doc. No. 210, and **DENIES** the parties' respective motions to exclude expert testimony.  Doc. Nos. 203, 205, 211.

## I. BACKGROUND[1]

The present action originates from the fallout of a business relationship between Thomas and DeRosa.  Thomas is Old LBF's co-founder, Chief Executive Officer, and majority shareholder.  Doc. No. 239 ("Plaintiffs' Response to DeRosa's Separate

---

[1] These material facts are taken from the parties' separate statements of fact and responses thereto, as well as the supporting declarations and exhibits.  Disputed material facts are discussed in further detail where relevant to the Court's analysis.  Facts that are immaterial for purposes of resolving the current motions are not included in this recitation.

Statement" or "PRS") at No. 47.  He is also the co-founder of New LBF.  Doc. No. 247 ("DeRosa's Additional Material Facts" or "AMF") at No. 72.  DeRosa is a software developer who "developed e-commerce software for booking airfares online" (the "Technology"), which he sold to Old LBF.  PRS at Nos. 1–2.

Thomas and Old LBF first sued DeRosa, alleging that DeRosa breached contracts and misappropriated trade secrets related to the Technology.  *See* Doc. No. 1.  Plaintiffs seek partial summary judgment on only their fifth cause of action for breach of contract.  *See* Doc. No. 204.  DeRosa cross-moves for summary judgment, or in the alternative partial summary judgment, on all eleven of Plaintiffs' causes of action in their Complaint, including: (1) misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1831 *et seq.*; (2) misappropriation of trade secrets in violation of the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426.1 *et seq.*; (3) violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq.*; (4) conversion; (5) breach of contract; (6) breach of oral contract; (7) breach of fiduciary duty; (8) tortious interference with prospective economic relations; (9) unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (10) unjust enrichment; and (11) preliminary injunctive relief.  *See generally* Doc. Nos. 1, 208.

DeRosa also filed counterclaims[2] and third-party claims, alleging that Thomas, Gundumogula, and a myriad of entities Thomas and Gundumogula own/manage, collaborated to gut Old LBF of its assets in an effort to defraud and avoid paying DeRosa what he was owed.  *See* Doc. No. 74.  Third-Party Defendants seek summary judgment, or in the alternative partial summary judgment, on all of the remaining claims[3] against them in DeRosa's SAP, including: (1) aiding and abetting breach of fiduciary duties, not

---

[2] The Court notes that the remaining counterclaims against Counter-Defendants Thomas and Old LBF in DeRosa's SAP (Claims 1–5, 7–8, 10–11 & 14–15), which primarily deal with Thomas's alleged malfeasance and "looting" of Old LBF, are not at issue in any of the pending motions.  *See generally* Doc. No. 74; *see also* Doc. No. 117.
[3] The Court previously dismissed several claims in DeRosa's SAP following Third-Party Defendants' motions to dismiss.  *See* Doc. Nos. 34, 52, 117.

1  including DeRosa's theory of "usurping a corporate opportunity" (Claim 6);

2  (2) fraudulent conveyance (Claim 7); (3) unfair business practices (Claim 11); and

3  (4) unjust enrichment (Claim 14).  *See* Doc. Nos. 74, 117, 210.

4  **A.    The Technology and Relevant Contracts**

5         In October 2010, "DeRosa sold his Technology to Old LBF through an Asset

6  Purchase Agreement."  PRS at No. 2.  The sale of the Technology was "for Old LBF to

7  own all of the current Technology, as well as any modifications to and derivatives of the

8  Technology," which DeRosa refers to as "DerivativeTech."  Doc. No. 247 ("Third-Party

9  Defendants' Reply to DeRosa's Separate Statement" or "TPDRS") at No. 5.  The

10  purchase price for the Technology was $1.25 million in cash "plus 200,000 shares of Old

11  LBF stock, representing 10% of the business."  PRS at No. 6.  DeRosa was to receive the

12  cash payment in two forms: $499,200 in 24 monthly installments; and total "Earn-Out

13  Consideration" of $750,800 in quarterly installments equal to 25% of Old LBF's Net

14  Income for the prior fiscal quarter.  *Id.* at Nos. 7–8; Doc. No. 208-4 ("Asset Purchase

15  Agreement" or "APA") at 7–8.  On September 28, 2011, Thomas and Old LBF granted

16  DeRosa a right to purchase an additional 10% of Old LBF shares at $0.01 per share.[4]

17  PRS at No. 21.  This stock option vested on November 22, 2011, and expired on

18  September 30, 2021.  *Id.* at Nos. 21–22.

19         DeRosa and Old LBF also entered into a Consulting Services Agreement in

20  October 2010 where DeRosa would "provide services and advice in a capacity similar to

21

22  ───────────────

23  [4] DeRosa and Plaintiffs dispute whether this stock option grant was an amendment to the Asset Purchase

24  Agreement.  Doc. No. 238 at 7–8.  Plaintiffs argue that this option grant "resulted from DeRosa's
    expressed desire to keep the APA assets out of his divorce proceeding."  *Id.* at 7.  In response, DeRosa

25  argues that he had already disclosed his interest in Old LBF to his estranged wife Jennifer DeRosa and
    therefore requests judicial notice of a 2011 declaration from her in their divorce proceeding.  Doc.

26  Nos. 208-1 at 16; 209 at 3.  DeRosa's request for judicial notice is unopposed.  The Court finds this
    document proper for judicial notice and therefore **GRANTS** DeRosa's request, Doc. No. 209.  Fed. R.

27  Evid. 201(b) (stating that a court may take judicial notice of facts not subject to reasonable dispute); *see*
    *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (noting courts may take

28  judicial notice of court filings and other matters of public record).

a Chief Technology Officer." Doc. No. 239 at Nos. 3, 5; Doc. No. 208-5 ("Consulting Services Agreement") at 3. Pursuant to the Consulting Services Agreement, DeRosa agreed to a nondisclosure clause regarding Old LBF's confidential information and trade secrets. TPDRS at No. 4; Consulting Services Agreement at 5–6. By its own terms, the Consulting Services Agreement terminated in October 2012. PRS at No. 4; Consulting Services Agreement at 4. However, DeRosa continued to provide his services to Old LBF until December 2019. PRS at Nos. 42, 67.

In December 2010, DeRosa and Old LBF entered into a Promissory Note, "pursuant to which DeRosa agreed to pay Thomas $25,000 on or before October 1, 2012." Doc. No. 204-2 at 83; PRS at No. 14; *see also* Doc. No. 223-1 ("DeRosa's Response to Plaintiffs' Separate Statement" or "DRS") at No. 1. The Promissory Note was secured by a Pledge Agreement, wherein DeRosa "pledged his right to receive the Earn-Out Consideration until he paid the amount due under the [Promissory] Note." Doc. No. 204-2 at 86; DRS at No. 7. Under the Pledge Agreement, "a default [would] occur[] 'in the event of a [d]efault under the [Promissory] Note." Doc. No. 223-1 ("DeRosa's Additional Materials Facts to Plaintiffs' Separate Statement" or "AMF-2") at No. 14; Doc. No. 204-2 at 87. DeRosa never paid the amount due under the Promissory Note. DRS at No. 2.

DeRosa's rights to the Technology in the event Old LBF defaulted under the Asset Purchase Agreement were set forth in a separate security agreement, which provided that DeRosa had "a continuing security interest in, lien on, assignment of and right of set-off" over "all of Old LBF's assets" until Old LBF paid the Earn-Out Consideration. TPDRS at Nos. 6–8; Doc. No. 204-2 (the "Security Agreement") at 57. Specifically, the Security Agreement provided for the "termination" of the agreement upon the "payment of all Secured Obligations." TPDRS at No. 8. "Secured Obligations" are defined in the Security Agreement as "being Old LBF's obligation to pay the Earn-Out Consideration under the [Asset Purchase Agreement]." *Id.* at No. 7. Pursuant to the Security Agreement, in October 2018, DeRosa recorded a Uniform Commercial Code ("UCC")

Financing Statement which placed a lien against the Technology to secure Old LBF's obligations to pay him.  Doc. No. 204-2 at 126.  On December 20, 2019, Thomas—who desired to terminate DeRosa's lien—sent an email to DeRosa confirming a wire transfer by Old LBF to DeRosa's bank account of the $750,800 Earn-Out Consideration.  TPDRS at Nos. 10–11.  DeRosa acknowledges receiving the payment and Thomas's email.  *Id.* at No. 12.  Old LBF proceeded to file a UCC-3 Financing Statement amendment with the Delaware Secretary of State.  *Id.* at No. 24; *see* Doc. No. 210-23 at 2.  DeRosa disputes whether this terminated his lien on the Technology.  TPDRS at Nos. 11–13.

**B.   Sale of Old LBF**

In early 2019, Thomas informed DeRosa that Mondee, Inc. wanted to purchase Old LBF.  *Id.* at No. 14.  Mondee, Inc. is a wholly-owned subsidiary of Mondee Holdings, LLC, while LBF Travel Holdings, LLC and New LBF are wholly-owned subsidiaries of Mondee, Inc.  Doc. No. 210-3 ("Declaration of Prasad Gundumogula" or "Gundumogula Decl.") ¶¶ 1, 4.  Gundumogula is the Chief Executive Officer of each of these entities. *Id.* ¶ 1.

On June 19, 2019, Mondee, Inc., Thomas, and Old LBF executed a proposed term sheet (the "June Term Sheet") wherein Old LBF would "sell 100 percent of Old LBF's equity interests to Mondee, Inc."  PRS at No. 58; TPDRS at No. 14.  In exchange, Old LBF would receive $20 million, which would consist of $5 million in cash and $15 million in Mondee, Inc. stock.  PRS at No. 58; TPDRS at No. 14.

On November 22, 2019, DeRosa met with Thomas and Gundumogula at Mondee, Inc.'s Northern California office to discuss the potential sale of Old LBF.  TPDRS at No. 34.  "Gundumogula read a part of a due diligence report to DeRosa expressly indicating that Thomas had misappropriated Old LBF [a]ssets."  *Id.* at No. 25.  Thomas and Gundumogula also showed DeRosa the June Term Sheet at the meeting, which contained the $20 million purchase price.  *Id.* at No. 35; Gundumogula Decl. ¶ 8. DeRosa did not believe the proposed terms were fair and did not consent to the sale of

Old LBF at the November 2019 meeting.  TPDRS at No. 42; *see also* AMF at Nos. 60, 64.

On December 13, 2019, DeRosa stopped working for Old LBF.  PRS at No. 67. When he left Old LBF, DeRosa had "his personal laptop, which he regularly used for work."  *Id.* at No. 68.  "The laptop contained work email and code, which was regularly downloaded onto his computer as part of [DeRosa's] software development responsibilities."  *Id.* at No. 69.  DeRosa does not dispute that he possesses Old LBF's source code but testified that he has not otherwise used or disclosed the code after he stopped working for Old LBF.  *Id.* at No. 70.  On December 16, 2019, DeRosa sued Thomas and Old LBF in California state court.  *Id.* at No. 73.

Following DeRosa's departure from Old LBF, on December 20, 2019, Third-Party Defendants and Plaintiffs "consummated a deal for approximately $20 million."  *Id.* at No .74.  However, "[t]hey changed the structure of the deal from an equity purchase to an asset purchase to avoid the requirement of DeRosa's consent."  *Id.* at No. 75.  Third-Party Defendants "acquired Old LBF's assets except for the Technology . . . but Thomas now claims to have orally agreed with himself to provide a royalty-free license of the Technology to New LBF."  *Id.* at No. 76.

## II. *Daubert* Motions

DeRosa moves to exclude the expert testimony of Jason W. Anderson in its entirety.  *See* Doc. No. 203.  Both Plaintiffs and Third-Party Defendants move to exclude portions of the expert testimony of Kenneth D. Rugeti.  *See* Doc. Nos. 205, 211.  For the reasons set forth below, the Court **DENIES** DeRosa's motion to exclude Anderson's expert testimony, **DENIES** Third-Party Defendant's motion to exclude regarding Rugeti's opinion on "Additional Lost Value," and **DENIES without prejudice** Plaintiffs' motion to exclude Rugeti's rebuttal to Anderson's opinion.[5]

---

[5] Because the Court has not relied upon Rugeti's rebuttal to Anderson's opinion in coming to its conclusions in this Order, the Court finds it appropriate to **DENY without prejudice** Plaintiffs' *Daubert*

**A.      Legal Standard**

Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. As the Ninth Circuit recently explained:

> Under *Daubert* and its progeny, including *Daubert II*, a district court's inquiry into admissibility is a flexible one. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). In evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation and quotation marks omitted).
>
> "[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Id.* at 564 (quoting *Daubert*, 509 U.S. at 597). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565 (citation and internal quotation marks omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564 (citation omitted). The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car*, 738 F.3d at 969. Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969–70.

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014). "Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial

---

motion, subject to re-filing at a date closer in time to trial when the Court sets a date for the parties' motions in limine.

court judge.  A district court should not make credibility determinations that are reserved for the jury." *Id.* at 1044.

**B.    DeRosa's Motion to Exclude Anderson's Opinion**

DeRosa moves to exclude the entirety of the opinions and proposed testimony of Plaintiffs' expert Anderson.  Doc. No. 203-1 at 3.  Anderson was retained "to evaluate economic damages claims asserted by Plaintiffs against DeRosa." *Id.*  Anderson only opines on unjust enrichment damages, measured by DeRosa's "avoided development costs."  Doc. No. 203-3 at 28.  DeRosa argues that Anderson's opinion must be excluded because (1) he did not write the background section of his report; (2) Anderson's opinions are "untethered to the facts;" and (3) Anderson did not consider the actual source code that DeRosa possesses.  Doc. No. 203-1 at 3–4.  Each of DeRosa's arguments fail.

First, courts have admitted expert testimony where the expert worked with attorneys in preparing their reports.  *See Acentra Inc. v. Staples, Inc.*, No. CV 07-5862 ABC (RZx), 2010 WL 11459205, at *5 (C.D. Cal. Oct. 7, 2010) (finding the expert "was involved enough to have prepared the [report] to satisfy Rule 26" where she worked with attorneys as a group and as a team to create the report) (internal quotation marks omitted).  Thus, DeRosa's first argument is unavailing.

Second, DeRosa argues that Anderson's opinion must be excluded under *Daubert* because he based his opinion on the incorrect assumption that DeRosa "used" the source code.  Doc. No. 203-1 at 4–5.  However, improper assumptions are not bases to exclude expert testimony as they concern the weight of the testimony, not admissibility and may be challenged on cross-examination.  *See Shimozono v. May Dept. Stores Co.*, No. 00-04261 WJR, 2002 U.S. Dist. LEXIS 28478, 2002 WL 3437390, at *8 (C.D. Cal. Nov. 20, 2002) (citation omitted) (arguments that an expert relied on unfounded assumptions in forming his opinion go to the weight, not the admissibility, of expert testimony).  Accordingly, DeRosa's second argument also fails.

Finally, the Court is also unpersuaded by DeRosa's argument that Anderson "did

not even purport to analyze any code actually in DeRosa's possession." Doc. No. 203-1 at 5. In their opposition, Plaintiffs point to Anderson's deposition where he testified that his analysis was about Old LBF's software from 2010 to 2019. Doc. No. 230 at 6; Doc. No. 230-1 at 99–100. Again, the Court finds that DeRosa's arguments go to the weight of Anderson's opinion rather than its admissibility. *See Odyssey Wireless, Inc. v. Apple Inc.*, Nos. 15-cv-1735-H-RBB, 15-cv-1738-H-RBB, 15-cv-1743-H-RBB, 2016 WL 7644790, at *15 (S.D. Cal. Sept. 14, 2016) (declining to exclude expert's testimony because the defendant's "disagreement with the facts underlying that opinion go to the weight to be afforded the testimony and not its admissibility.").

For these reasons, the Court **DENIES** DeRosa's motion to exclude Anderson's opinion.

## C. Third-Party Defendants' Motion to Exclude Portions of Rugeti's Opinion

To support his damages claims, DeRosa hired Rugeti to provide expert analysis and testimony "on certain accounting, damages, financial and valuation issues[.]" Doc. No. 211-9 at 3. Although Rugeti's report includes his opinions on several categories of DeRosa's alleged losses, Third-Party Defendants seek to exclude only Rugeti's opinion concerning what he termed "Additional Lost Value," or the value of Old LBF when Third-Party Defendants acquired its assets. Doc. Nos. 211-1 at 6; 236 at 8.

Third-Party Defendants do not challenge Rugeti's qualifications as an expert. Instead, they argue that Rugeti's opinion must be excluded because (1) Rugeti failed to consider the income approach or any other reliable valuation methods when he valued Old LBF, (2) Rugeti did not "reliably employ the market approach because he erroneously calculated" Old LBF's profitability by using an adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA") multiplier that included "the value of certain synergies Mondee hoped to develop," and (3) Rugeti selected an unreasonable EBITDA multiplier. Doc. No. 211-1 at 7–8.

In opposition, DeRosa argues that Third-Party Defendants' "attacks go to the weight of the evidence, not admissibility" and that Rugeti's opinion is relevant to several

of his claims in this case.  Doc. No. 236 at 8.  The Court agrees.

Simply put, the question under *Daubert* is "whether or not the reasoning is scientific and will assist the jury.  If it satisfies these two requirements, then it is a matter for the finder of fact to decide what weight to accord the expert's testimony." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998).  "Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony.'" *Id.* (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)); *see also In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d at 1219 (S.D. Cal. 2010) (noting that the determination of weight and sufficiency of expert evidence is the sole province of the jury).  Moreover, whether Rugeti chose the correct factors to include in his calculations "and gave them the correct weight is for the jury." *S.E.C. v. Moshayedi*, No. SACV1201179JVSMLGX, 2013 WL 12129282, at *6 (C.D. Cal. Nov. 20, 2013).  Accordingly, although Third-Party Defendants point to several potential weaknesses in Rugeti's analysis, they "may explore these perceived deficiencies through cross examination." *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d at 1219; *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").

Therefore, the Court **DENIES** Third-Party Defendants' motion to exclude Rugeti's opinion on "Additional Lost Value."

### III. SUMMARY JUDGMENT

**A.  Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56,

[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  A fact is material if it could affect the outcome of the suit under applicable law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *See id.*

The party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)).  Moreover, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

Where cross-motions for summary judgment are at issue, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (citations omitted).  That said, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526,532 (9th Cir. 2011).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**B.      Evidentiary Objections**

The parties each raise a variety of evidentiary objections to the evidence presented by the opposing party.  *See* Doc. Nos. 237, 240, 245–46, 248.  Most of these objections are raised on the grounds that the evidence is argumentative, speculative, prejudicial, irrelevant, or that the form of the evidence is inadmissible because there is a lack of foundation, or it constitutes inadmissible lay opinion or hearsay.  The parties also object on the ground that the statements of fact mischaracterize the evidence.

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).  At the summary judgment stage, district courts consider evidence with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001).  Objections such as lack of foundation, speculation, hearsay, relevance, or that evidence is argumentative or constitutes an improper legal conclusion "are all duplicative of the summary judgment standard itself" and unnecessary to consider here.  *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).  Moreover, Federal Rule of Evidence 403 objections are unnecessary at the summary judgment stage because there is no jury that can be misled and no danger of confusing the issues.  *See Montoya v. Orange Cnty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 994 (C.D. Cal. 2013) (stating that courts "need not exclude evidence at the summary judgment stage for danger of unfair prejudice, confusion of the issues, or any other grounds outlined in Rule 403").  Accordingly, the Court **OVERRULES** the parties' objections on the grounds that the evidence is irrelevant, speculative, argumentative, prejudicial, that it constitutes hearsay or inadmissible lay opinion, or that there is a lack of foundation.  *See Burch*, 433 F. Supp. 2d at 1122.  Similarly, the Court **OVERRULES** the parties' objections to the characterization of or purported misstatement of the evidence represented.  *See Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1126 n.1 (E.D. Cal. 2008) (noting that

the parties' "'evidentiary objections' to [their adversary's] separate statements of undisputed facts are not considered because such objections should be directed at the evidence supporting those statements").

## C. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs seek summary judgment on their fifth cause of action for breach of contract related to the Promissory Note, the Pledge Agreement, and the Consulting Services Agreement. Doc. No. 204. In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Rankine v. Roller Bearing Co. of Am.*, No. 12-CV-2065-MMA BLM, 2013 WL 5944248, at *3 (S.D. Cal. Nov. 5, 2013), *aff'd sub nom. Rankine v. Does, 1-10*, 628 F. App'x 494 (9th Cir. 2015) (quoting *CDF Firefighters v. Maldonado,* 158 Cal. App. 4th 1226, 1239 (2008)).

DeRosa does not dispute: (1) the existence of the above-mentioned contracts, (2) Plaintiffs' performance, or (3) his breach. Instead, DeRosa asserts that the applicable statute of limitations and the doctrine of waiver bar Plaintiffs' claim. Doc. No. 223 at 3–10. In addition, as to Plaintiffs' claim regarding the Consulting Services Agreement, DeRosa argues Plaintiffs have failed to identify any damages. *Id.* at 8.

### 1. Promissory Note

DeRosa argues that Plaintiffs' claim is time-barred because "the Promissory Note was breached at the very latest on October 6, 2012," which "triggered the four-year statute of limitations" for a written contract set forth in Section 337 of the California Code of Civil Procedure. *Id.* at 6. However, under Section 3118(a) of the California Commercial Code, the statute of limitations for collections on a promissory note is six years from the "final due date" of a promissory note that is due at a specific time.[6]

---

[6] Plaintiffs correctly note that newer and more specific statutes take precedence over older and more general statutes. *See Allen v. Stoddard*, 212 Cal. App. 4th 807, 816 (2013). Therefore, the Court finds

*Oropeza v. State Farm Bank, F.S.B.*, No. 17-CV-06920-SK, 2018 WL 11471624, at *5 (N.D. Cal. Jan. 31, 2018) (citing *Cadle Co. v. World Wide Hospitality Furniture, Inc.*, 144 Cal. App. 4th 504, 514 n. 8 (2006)).  Here, the Promissory Note's final due date was October 1, 2012.[7]  *See* Doc. No. 204-2 at 83.  In addition, the Promissory Note contains a written waiver of defenses.  *Id.*  This is significant because California Code of Civil Procedure Section 360.5 provides that, if the limitations period is waived, the waiver may extend the statute an additional four years.[8]  Therefore, Plaintiffs' breach of contract claim regarding the Promissory Note, filed on December 9, 2020, was brought within the 10-year statute of limitations, and is timely.  Accordingly, the Court **GRANTS** Plaintiffs' motion as to the Promissory Note.

   *2.    Pledge Agreement*

   Plaintiffs argue that DeRosa breached the Pledge Agreement because "the express terms of the Pledge Agreement state that [DeRosa] 'shall be deemed to be in default of this Pledge Agreement in the event of a Default under the [Promissory] Note.'"  Doc. No. 204 at 9.  Plaintiffs also assert that DeRosa's "placing a UCC lien on the assets of [Old] LBF" constitutes a breach of the Pledge Agreement.  *Id.* at 2, 8–9.  DeRosa does not dispute that his failure to pay the Promissory Note is a breach of the Pledge Agreement.  Instead, DeRosa argues again that the statute of limitations bars Plaintiffs' cause of action.  Doc. No. 223.  Here, the Court agrees with DeRosa that Section 337's four-year statute of limitations applies and that Plaintiffs' claim regarding the Pledge Agreement is time-barred.  In addition, the Court finds Plaintiffs' alternative theory regarding the UCC lien unpersuasive because they fail to sufficiently explain how

---

that Commercial Code Section 3118 contains the applicable statute of limitations here because section 3118 was enacted in 1992, which is after Civil Procedure Code Section 337 was last amended in 1961.

[7] Commercial Code Section 3118(b) is not applicable here because that subdivision only applies to "pure" demand notes, *i.e.*, those lacking any due date.

[8] DeRosa also argues that Plaintiffs' claim fails because Plaintiffs waived their rights by not seeking enforcement of the Promissory Note earlier.  Doc. No. 223 at 9.  The Promissory Note's inclusion of the waiver of defenses negates this argument.

1  DeRosa's lien violates any applicable provision of the Pledge Agreement.  Accordingly,

2  the Court **DENIES** Plaintiffs' motion as to the Pledge Agreement.

3       3.     *Consulting Services Agreement*

4       As with Plaintiffs' claim regarding the Promissory Note, the Court rejects

5  DeRosa's statute of limitations argument for the Consulting Services Agreement on the

6  basis that the claim is timely under California law.  DeRosa's assertion that any breach of

7  contract must have occurred shortly after the Agreement expired in October 2012 is

8  contradicted by both the facts and the law.  The Consulting Services Agreement includes

9  a nondisclosure clause that provides that DeRosa was required to "return all Confidential

10  Information within ten (10) business days after the termination or expiration of [the]

11  Agreement and shall not retain any copies."  Doc. No. 204-2 at 76.  The clause also states

12  that "[t]his covenant of nondisclosure and [DeRosa's] liability for breach of such

13  covenant shall survive the expiration or termination of this Agreement."  *Id.*  Such

14  survival clauses are routinely enforced and DeRosa has failed to offer any reason why the

15  provision here should not be enforced.  *See PAI Corp. v. Integrated Sci. Sols., Inc.*,

16  No. C-06-05349 JCS, 2008 WL 11404541, at *15 (N.D. Cal. Feb. 15, 2008).  As this

17  claim is based on DeRosa's retention of source code after he stopped providing his

18  services to Old LBF in December 2019, which he does not dispute, the breach of this

19  obligation accrued within four years of the filing of the complaint.[9]

20       DeRosa also argues that Plaintiffs "fail to identify any damages from [his] failure

21  to return" their confidential information.  Doc. No. 223 at 8.  In response, Plaintiffs argue

22  that DeRosa's breach of the Consulting Services Agreement "constitutes improper

23  acquisition under the DTSA and CUTSA" and that they "have stated a valid theory of

24  damages for this breach under" both statutes.  Doc. No. 242 at 6.  Although DeRosa

25  disputes Plaintiffs' unjust enrichment theory of damages related to their trade secret

26

27  _____

28  [9] The Court also finds that the survival clause precludes DeRosa's waiver argument.  *See* Doc. No. 223 at 10.

claims, he does not address the fact that Plaintiffs also seek injunctive relief.  *See* Doc. No. 1 at 21 ¶¶ 74, 84, 111.  Because Plaintiffs seek injunctive relief in their Complaint, and because DeRosa expressly consented to injunctive relief in the Consulting Services Agreement,[10] *see* Doc. No. 208-5 at 6, the Court **GRANTS** Plaintiffs' motion as to the Consulting Services Agreement.  However, as discussed below in Section III.D.1, the Court **DENIES** Plaintiffs' motion to the extent they seek any other remedy.

**D.   DeRosa's Motion for Summary Judgment**

As a preliminary matter, the Court addresses DeRosa's request to enter an order "declaring that he is an owner of Old LBF with at least a 20 percent ownership interest." Doc. No. 208 at 3.  Plaintiffs argue that DeRosa's request is not appropriate for summary judgment.  Doc. No. 238 at 6.  Because he does not seek summary judgment as to any specific cause of action in the complaint, the Court construes DeRosa's request under Federal Rule of Civil Procedure 56(g), which states "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case."  Fed. R. Civ. P. 56(g).

Rule 56(g) "was intended to avoid a useless trial of facts and issues over which there was never really any controversy and which would tend to confuse and complicate a lawsuit."  *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) (quotation omitted); *see also Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 (9th Cir. 2009) (noting that the rule "serves the purpose of speeding up litigation") (quotation omitted).  The Advisory Committee Comments to the 2010 amendments to Rule 56(g) state: "Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established.  The court may conclude that it is better to leave open

---

[10] Both the Defend Trade Secrets Act and the California Uniform Trade Secrets Act provide for injunctive relief.  *See* 18 U.S.C. § 1836(b)(3)(A); Cal. Civ. Code § 3426.2.  In addition, injunctive relief is an available remedy for a breach of contract claim where damages may be inadequate.  *See Smith v. Mendonsa*, 108 Cal. App. 2d 540, 543 (1952).

for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event."  Fed. R. Civ. P. 56(g) advisory committee's cmt. (2010 amd.).

DeRosa argues that the Court may grant summary judgment on any part of a claim or defense, and that his "stake in Old LBF is part of three of his counterclaims."[11]  Doc. No. 244 at 7.  DeRosa contends that he owns at least 400,000 shares, or at least 20% of Old LBF, while Plaintiffs claim that DeRosa only owns 200,000 shares.  Doc. Nos. 208-1 at 13; 238 at 9.  Indeed, Plaintiffs dispute the majority of DeRosa's facts related to his percentage of ownership of Old LBF.  Doc. No. 238 at 7–10.  After considering the parties' arguments, the Court declines to enter an order pursuant to Rule 56(g) requiring that the facts stated in DeRosa's motion, Doc. No. 208-1 at 13–20, be treated as established in a jury trial.  *See SEC v. Retail Pro, Inc.*, No. 08cv1620-WQH-RBB, 2011 WL 589828 at *3, 2011 U.S. Dist. LEXIS 13095 at *8 (S.D. Cal. Feb. 10, 2011) (district courts have "open-ended discretion to decide whether it is practicable to determine what material facts are not genuinely at issue.").  Accordingly, the Court **DENIES** DeRosa's request.

As stated above, DeRosa seeks summary judgment on each cause of action in Plaintiffs' Complaint.  The Court will address each cause of action in turn.

### 1.  *Trade Secret Misappropriation (Claims 1 & 2)*

DeRosa moves for summary judgment on Plaintiffs' trade secret misappropriation claims under both the federal Defend Trade Secrets Act ("DTSA") and the California Uniform Trade Secrets Act ("CUTSA").  Doc. No. 208-1 at 20–24.  Specifically, DeRosa argues that Plaintiffs' claims fail for the following reasons: (1) they are precluded by the litigation privilege; (2) there is no evidence of misappropriation; and (3) they fail to provide any evidence of damages.  *Id.* at 20, 23.

---

[11] As noted in Footnote 2 above, DeRosa's counterclaims against Thomas are not at issue in any of the instant motions.

1   "The elements of misappropriation under the DTSA are similar to those under the

2   CUTSA, except that the DTSA applies only to misappropriations that occur or continue

3   to occur on or after its date of enactment on May 11, 2016." *Alta Devices, Inc. v. LG*

4   *Elecs., Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (quotations omitted).  Courts have

5   analyzed DTSA and CUTSA claims together "because the elements are substantially

6   similar." *Inteliclear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir.

7   2020).  This Court likewise concludes that it is appropriate to do so here.  To prevail on a

8   DTSA or CUTSA claim, a plaintiff must prove: "(1) the plaintiff owned a trade secret;

9   (2) the defendant misappropriated the trade secret; and (3) the defendant's actions

10  damaged the plaintiff."  *See* 18 U.S.C. § 1839(5); *Inteliclear*, 978 F.3d at 657–58; *Kimera*

11  *Labs Inc. v. Jayashankar*, No. 21-CV-2137-MMA (DDL), 2022 WL 11965058, at *6

12  (S.D. Cal. Oct. 20, 2022).

13          a.    Litigation Privilege

14  DeRosa argues "the First Amendment protects [his] alleged misconduct" because

15  he merely "collected evidence for this case, and . . . sent it to his lawyers."  Doc. No. 208-

16  1 at 21.  Because these claims involve DeRosa's breach of a nondisclosure agreement

17  related to trade secrets, the Court finds that the litigation privilege does not apply.  *See*

18  *ITT Telecom Products Corp. v. Dooley*, 214 Cal. App. 3d 307, 320 (1989) (finding the

19  privilege did not apply after balancing society's interest in accurate judicial proceedings

20  against the plaintiff's property interest in trade secrets and the defendant's signing of

21  written nondisclosure agreement).

22          b.    Ownership of Trade Secret

23  DeRosa does not dispute that Plaintiffs' code qualifies as a trade secret.  However,

24  he argues that Plaintiffs have failed to identify and provide any evidence that they own or

25  possess a trade secret other than the source code.  Doc. No. 208-1 at 22.  The Court

26  agrees.  *See MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 522 (9th Cir. 1993)

27  (finding a party "who seeks relief for misappropriation of trade secrets must identify the

28  trade secrets and carry the burden of showing that they exist").  In addition, Plaintiffs do

1  not dispute this argument in their opposition.  Accordingly, the Court **GRANTS**
2  DeRosa's motion for summary judgment as to any alleged trade secret other than
3  Plaintiffs' source code.

4  c.  Misappropriation of Trade Secret

5  Next, DeRosa argues that Plaintiffs show "no evidence of misappropriation."  Doc.
6  No. 208-1 at 22.  Under both the DTSA and CUTSA, misappropriation means either
7  "(1) the '[a]cquisition of a trade secret by another person who knows or has reason to
8  know that the trade secret was acquired by improper means;' or (2) the '[d]isclosure or
9  use of a trade secret of another without express or implied consent.'"  *Genasys Inc.*
10 *v. Vector Acoustics, LLC*, No. 22-CV-152 TWR (BLM), 2023 WL 4414222, at *18 (S.D.
11 Cal. July 7, 2023) (first quoting 18 U.S.C. § 1839(5); and then quoting Cal. Civ. Code
12 § 3426.1(b)).

13 Here, Plaintiffs do not contend that DeRosa improperly "used" or "disclosed" their
14 trade secret source code.  Doc. No. 238 at 13.  Instead, they argue their "theory of
15 misappropriation involves improper acquisition whereby [DeRosa] breached the
16 confidentiality provision of his Consulting [Services] Agreement."  *Id.*  A defendant
17 misappropriates trade secrets by acquisition if he or she "knew or had reason to know that
18 the trade secret was acquired by improper means," which includes "breach or inducement
19 of a breach of a duty to maintain secrecy."  *Masimo Corp. v. True Wearables Inc.*,
20 No. SACV182001JVSJDEX, 2021 WL 2548690, at *5 (C.D. Cal. Apr. 28, 2021), *aff'd*,
21 No. 2021-2146, 2022 WL 205485 (Fed. Cir. Jan. 24, 2022).  In his reply, DeRosa argues
22 that he did not breach the Consulting Services Agreement because it expired before he
23 left Old LBF.  Doc. No. 244 at 12.  However, the Court finds that the survival clause
24 contained in the Consulting Service Agreement's nondisclosure clause forecloses
25 DeRosa's argument.  Doc. No. 204-2 at 76; *PAI Corp. v. Integrated Science Solutions,*
26 *Inc.*, No. C-06-05349-JCS, 2008 WL 11404541, at *15 (N.D. Cal. Feb. 15, 2008).
27 Therefore, at minimum, because DeRosa does not dispute that he still holds Old LBF's
28 source code, the Court finds that Plaintiffs have provided sufficient evidence to show

DeRosa improperly acquired their source code by breaching the Consulting Services Agreement.

### d. Damages

The DTSA provides that a court may grant injunctive relief, an award of monetary damages, or both. *See* 18 U.S.C. § 1836(b)(3). It authorizes three separate measures of damages: (1) "damages for actual loss caused by the misappropriation of the trade secret;" (2) "damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss;" or (3) "in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret." 18 U.S.C. § 1836(b)(3)(B). An award of actual losses and unjust enrichment are permissible as long as there is no double counting. *See* 18 U.S.C. § 1836(b)(3)(B). CUTSA also authorizes three separate measures of damages: (1) "[a] complainant may recover damages for the actual loss caused by misappropriation;" (2) "[a] complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss;" and (3) [i]f neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited." Cal. Civ. Code § 3426.3(a) & (b). CUTSA also provides that "[i]f willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subdivision (a) or (b)." *Id.* § 3426.3(c). CUTSA differs from the DTSA on reasonable royalty as a court may order a reasonable royalty only where "neither actual damages to the holder of the trade secret nor unjust enrichment to the user is provable." *Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1308–09 (2010).

Here, neither party addresses the fact that Plaintiffs seek injunctive relief in their Complaint. As stated above, both DTSA and CUTSA allow injunctive relief as a

remedy.  *See* 18 U.S.C. § 1836(b)(3)(A); Cal. Civ. Code § 3426.2.  In addition, Courts have recognized that behavior similar to DeRosa's—where a defendant does not dispute that he possesses confidential information of the plaintiff's—can be evidence of trade secret misappropriation supporting injunctive relief.  *See WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 848 (N.D. Cal. 2019), *modified in part*, No. 5:18-CV-07233-EJD, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019); *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016); *Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1087 (E.D. Cal. 2012).  Therefore, to the extent Plaintiffs seek injunctive relief related to their trade secret misappropriation claims, the Court **DENIES** DeRosa's motion.  *See Medimpact Healthcare Sys., Inc. v. IQVIA Inc.*, No. 19CV1865-GPC(DEB), 2022 WL 6281793, at *20 (S.D. Cal. Oct. 7, 2022) (noting that even if the plaintiff's expert was excluded on damages, the plaintiff was still able to seek injunctive relief as a remedy in DTSA and CUTSA action).

As to other forms of relief, Plaintiffs claim that they have suffered damages through DeRosa's unjust enrichment.  Doc. No. 238 at 14.  Specifically, Plaintiffs argue they have suffered damages from DeRosa's avoided development costs by misappropriating their source code.  *Id.*  While Plaintiffs are correct that "avoided development costs" are a potential way to calculate a defendant's unjust enrichment, *see Ajaxo Inc.*, 187 Cal. App. 4th at 1305, the Court finds that the evidence provided by Plaintiffs fails as a matter of law.  Plaintiffs' retained software expert, Anderson, provides an opinion as to the amount of DeRosa's alleged avoided development costs.  Doc. Nos. 238 at 14; 203-3 at 25.  However, the Court agrees with DeRosa that Anderson's opinion is fatally flawed because it assumes DeRosa "used" Plaintiffs' source code.  Doc. Nos. 203-3 at 25; 208-1 at 24; *see Ajaxo Inc.*, 187 Cal. App. 4th at 1305 (stating "unjust enrichment might be calculated based upon cost savings or increased productivity resulting from *use* of the secret) (emphasis added).  Plaintiffs do not provide any counter-authority to DeRosa's argument that "use" is required to award unjust enrichment damages, and concede both that they have no evidence regarding "use" and that their

theory of misappropriation is only based on improper acquisition.  Doc. No. 238 at 13–
14.  Therefore, the Court finds Plaintiffs have failed to produce any genuine issue of
material fact regarding unjust enrichment damages.  Accordingly, the Court **GRANTS**
DeRosa's motion for summary judgment as to Plaintiffs' first and second causes of action
to the extent that Plaintiffs seek unjust enrichment damages.

>   2.   *Computer Fraud and Abuse Act (Claim 3)*

DeRosa moves for summary judgment as to Plaintiffs' third cause of action for
violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030 *et seq*.
Doc. No. 208-1 at 25–26.  In their opposition, Plaintiffs concede that "[d]iscovery did not
disclose evidence in support of Plaintiffs' CFAA claim" and state that they "will not
pursue their CFAA claim."  Doc. No. 238 at 15 n.1.  Therefore, the Court **GRANTS**
DeRosa's motion for summary judgment as to Plaintiffs' third cause of action.

>   3.   *Tort Claims (Claims 4 & 7–10)*

Next, DeRosa moves for summary judgment on Plaintiffs' claims for conversion
(Claim 4), breach of fiduciary duty (Claim 7), tortious interference with prospective
economic relations (Claim 8), unfair competition (Claim 9), and unjust enrichment
(Claim 10).  Doc. No. 208-1 at 25.  DeRosa argues that these claims "rest on the same
facts underlying their trade secrets claims" and that therefore, they are displaced by
CUTSA.[12]  *Id.*  The Court agrees.

With the exception of contractual claims, CUTSA displaces "common law claims
that are based on the same nucleus of facts as the misappropriation of trade secrets claim
for relief."[13]  *Peralta v. California Franchise Tax Bd.*, 124 F. Supp. 3d 993, 1002 (N.D.
Cal. 2015), *aff'd*, 673 F. App'x 975 (Fed. Cir. 2016) (internal quotation marks and

---

[12] The Court uses the term "displacement."  Courts have also used "supersession" and "preemption" to
describe CUTSA's effect on common law tort causes of action related to trade secret misappropriation.
[13] Although Plaintiffs' unfair competition claim is statutory, courts have ruled that CUTSA displaces
both common law and statutory unfair competition claims if they rely on the same facts as a
misappropriation claim.  *See K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal.
App. 4th 939, 961 (2009).

citation omitted); *see* Cal. Civ. Code § 3426.7.  To survive displacement, Plaintiffs'

claims must "allege wrongdoing that is materially distinct from the wrongdoing alleged

in a CUTSA claim."  *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp.

3d 994, 1006 (N.D. Cal. 2018), *aff'd*, 815 F. App'x 117 (9th Cir. 2020) (citation omitted).

Here, each of Plaintiffs' tort claims relies exclusively on the assertion that DeRosa

absconded with trade secrets and other confidential information.  *See, e.g.*, Doc. No. 1

¶¶ 99, 120, 127, 136, 142.  As this Court has previously noted, CUTSA displaces all

claims "based upon the misappropriation of . . . confidential information, whether or not

that information rises to the level of a trade secret."  *Kimera Labs Inc. v. Jayashankar*,

2022 WL 11965058, at *11 (citing *Jardin v. Datallegro, Inc.*, No. 10-CV-2552-IEG

WVG, 2011 WL 1375311, at *4 (S.D. Cal. Apr. 12, 2011)).  In their opposition, Plaintiffs

assert that their "tort claims rely on Defendant['] s improper action in placing a UCC lien

on Old LBF's assets and not on the misappropriation of trade secrets" and that their

"Complaint incorporated these allegations."  Doc. No. 238 at 15.  However, the Court

agrees with DeRosa that Plaintiffs fail to explain how placing a lien on Old LBF's assets

supports any of their tort claims.

Indeed, upon close review of Plaintiffs' Complaint, the Court finds that all of

Plaintiffs' tort claims rest squarely on their factual allegations of trade secret

misappropriation.  Therefore, the Court **GRANTS** DeRosa's motion as to Plaintiffs'

fourth, seventh, eighth, ninth, and tenth causes of action.

### 4. Breach of Contract (Claim 5)

DeRosa moves for summary judgment on Plaintiffs' fifth cause of action for

breach of contract related to the Promissory Note, Pledge Agreement, and Consulting

Services Agreement.  Doc. No. 208-1 at 27–29.  The Court analyzed this cause of action

in connection with Plaintiffs' motion for partial summary judgment.  *See supra* Section

III.C.  As required, the Court has evaluated DeRosa's motion for summary judgment on

this cause of action "on its own merits" and based on the evidence submitted in support

of both motions.  *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d

1132, 1136 (9th Cir. 2001). Consistent with its decision above but based on its independent analysis of DeRosa's motion, the Court **DENIES** DeRosa's motion as to the Promissory Note, **GRANTS** DeRosa's motion as to the Pledge Agreement because it is time-barred, **DENIES** DeRosa's motion as to the Consulting Services Agreement to the extent Plaintiffs seek injunctive relief, and **GRANTS** DeRosa's motion as to the Consulting Services Agreement to the extent Plaintiffs seek any other remedy.

### 5. *Breach of Oral Contract (Claim 6)*

DeRosa also seeks summary judgment on Plaintiffs' sixth cause of action for breach of oral contract. Doc. No. 208-1 at 28–29. "The elements of a breach of oral contract claim are the same as those for a breach of a written contract." *Rhub Commc'ns, Inc. v. Karon*, 2018 WL 707596, at *2 (N.D. Cal. Feb. 5, 2018); Cal. Civ. Code §§ 1622, 1644. Thus, Plaintiffs must show (1) the existence of a contract, (2) Plaintiffs' performance or excuse for nonperformance; (3) DeRosa's breach; and (4) resulting damages to Plaintiffs. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). The first element is dispositive. *See CC Lit Holding, LLC v. Infosys Ltd.*, No. 18-CV-00807-BLF, 2021 WL 5037676, at *4 (N.D. Cal. Oct. 29, 2021).

In their Complaint, Plaintiffs allege the following:

113. From about October 22, 2010 to December 12, 2019, LBF and Defendant entered several oral agreements whereby LBF agreed to advance a total of $322,394.29 against Defendant's Earn-Out Consideration and Defendant agreed the $322,394.29 would be paid as an offset to his Earn-Out Consideration when received.

114. LBF has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the oral contract. Specifically, LBF advanced the following monies to Defendant against his Earn-Out Consideration:

| | |
|---|---|
| Advance January 2017 | $135,000 |
| Advance Property Taxes July 2018 | $12,612 |
| Medical & Dental Insurance Paid through December 2019 | $167,410.82 |
| Personal Items Paid | $379 |
| Mobile Phone Paid | $982 |
| BMW Lease December 2019 – July 2020 | $6010.47 |
| TOTAL | $322,394.29 |

115. On December 20, 2019, Defendant breached the oral agreement by failing to offset the $750,800 Earn-Out Consideration, which LBF was forced to pay Defendant. . . .

*See* Doc. No. 1 at 22.

DeRosa argues that the alleged oral contracts at issue do not exist and "are pure fiction." Doc. No. 208-1 at 28. Plaintiffs do not dispute DeRosa's argument that there is no documentary evidence reflecting any oral agreements, *see* PRS ¶ 54, and that there is also "no documentary evidence reflecting the Old LBF ever accounted for any alleged advances to DeRosa on his earn-out payments in its general ledger or financial statements." Doc. No. 208-3 at 8 ¶ 47; PRS ¶¶ 55–56. In their opposition, Plaintiffs argue, in conclusory fashion, "that it was the action of [DeRosa] in threatening the acquisition and improperly placing a UCC lien on the assets of Old LBF that necessitated payment of the Earn-Out Consideration in full." Doc. No. 238 at 17. Upon diligent review of Plaintiffs' submitted evidence, the Court was unable to locate a record of any of the alleged "advanced monies" that are subject of the alleged oral contracts and Plaintiffs point the Court to none. Plaintiffs also have not provided any evidence from which the Court can infer that the parties agreed to all essential terms or that there was a "meeting of the minds . . . showing [the parties'] tacit understanding" that any advanced monies would "be paid as an offset to his Earn-Out Consideration" when received. Doc. No. 1 ¶ 113; *Reed v. KPS Alarms, Inc.*, No. CV 15-5482 DMG (EX), 2016 WL 1729041,

at *4 (C.D. Cal. Apr. 29, 2016) (citing *Moreno v. Los Angeles Child Care & Dev. Council,* 963 F. Supp. 876, 879 (C.D. Cal. 1997)); *Roth v. Garcia Marquez*, 942 F.2d 617, 627–28 (9th Cir. 1991). Therefore, the Court finds that there is no material dispute of fact that an oral contract did not exist between Plaintiffs and DeRosa. Accordingly, the Court **GRANTS** DeRosa's motion as to Plaintiffs' sixth cause of action.

### 6. Preliminary Injunctive Relief (Claim 11)

Finally, DeRosa moves for summary judgment as to Plaintiffs' separate claim for preliminary injunctive relief. Doc. No. 208-1 at 29. DeRosa's motion is **GRANTED** as Plaintiffs' opposition does not address DeRosa's arguments on this claim. *See Abogados v. AT & T, Inc.* 223 F.3d 932, 937 (9th Cir. 2000).

## E. Third-Party Defendants' Motion for Summary Judgment

Third-Party Defendants move for summary judgment on the remaining claims against them in DeRosa's SAP including: (1) aiding and abetting breach of fiduciary duties (Claim 6), (2) fraudulent conveyance (Claim 7), (3) unfair business practices (Claim 11), and (4) unjust enrichment (Claim 14). Doc. No. 210 at 2. Third-Party Defendants also request an order pursuant to Federal Rule of Civil Procedure 56(g) stating that DeRosa's lack of ownership interest or equitable lien on the Technology is not genuinely in dispute and treating this fact as established in this case. *Id.* at 3.

### 1. DeRosa's Interest in the Technology

The Court first addresses Third-Party Defendants' Rule 56(g) request. Third-Party Defendants argue that under the express terms of both the Asset Purchase Agreement and Security Agreement, DeRosa's lien against the Technology was terminated when Old LBF sent a wire transfer to DeRosa's bank account of the $750,800 Earn-Out Consideration. Doc. No. 210-1 at 14–15. In his opposition, DeRosa argues that his lien is still valid because Old LBF's payment was "years too late" and did not include interest pursuant to California Civil Code § 3289(b). Doc. No. 233 at 24. Third-Party Defendants reply that DeRosa's failure to return the $750,800 constituted an accord and satisfaction. Doc. No. 249 at 3. The Court agrees.

"An accord is an agreement to accept, in extinction of an obligation, something different from or less than that to which the person agreeing to accept is entitled."  Cal. Civ. Code § 1521.  However, "[t]hough the parties to an accord are bound to execute it . . . it does not extinguish the obligation until it is fully executed."  Cal. Civ. Code § 1522.  "Acceptance, by the creditor, of the consideration of an accord extinguishes the obligation, and is called satisfaction."  Cal. Civ. Code § 1523.  These statutes establish that "accord alone, by which is meant a mere agreement to accept something in extinction of an existing obligation, is insufficient as a defense to an action on the original obligation, and that such original obligation is not actually extinguished until there has been an acceptance of the consideration agreed upon, or, in other words, satisfaction." *Xerox Corp. v. Far W. Graphics, Inc.*, No. C-03-4059-JF(PVT), 2005 WL 1629815, at *2 (N.D. Cal. July 8, 2005) (citing *Silvers v. Grossman*, 183 Cal. 696, 699 (1920)).

Here, Thomas's email on December 20, 2019 to DeRosa confirming the wire transfer of the $750,800 and noting that it was "payment in full" constituted an accord. TPDRS at Nos. 10–11; *see* Doc. No. 210-20 at 2.  DeRosa relies on *Thompson v. Williams*, 211 Cal. App. 3d 566, 572 (1989) for the proposition that an "accord and satisfaction can only be successful if the debtor asserts that a payment is in full satisfaction, and the creditor clearly understood that the debtor intended it to be full satisfaction."  Doc. No. 233 at 24.  DeRosa argues that because the payment was wired directly into his account, "he was not given an opportunity to disagree" and that "his disagreement was obviously manifested by the fact that he filed" a state court lawsuit on December 16, 2019 "stating that he was owed interest on the Earn-Out Consideration." *Id.*  The Court finds that Thomas's email, which was sent *after* DeRosa had already filed his state court lawsuit, unequivocally states that the wire payment was payment in full of the Earn-Out Consideration and would terminate DeRosa's lien on the Technology.  This is analogous to the *Thomas* case where the debtor stated his payment was "take it or leave it."  *See* 211 Cal. App. 3d at 574.  Thus, there can be no dispute that Thomas's email constituted an accord.  Moreover, the Court agrees with Third-Party Defendants that

DeRosa's failure to return the payment—the consideration of the accord—after 90 days constituted a satisfaction.[14]  *See* Cal. Civ. Code § 3311.  Accordingly, the Court finds that DeRosa's lien on the Technology was terminated pursuant to the APA and Security Agreement, and as a result of the above-described accord and satisfaction.  Therefore, the Court **GRANTS** Third-Party Defendants' Rule 56(g) request and finds that the following fact is not in genuine dispute and will be treated as established in this case: DeRosa has no lien or interest in the Technology.

###    2.    *Aiding and Abetting Breach of Fiduciary Duties (Claim 6)*

Previously, this Court dismissed DeRosa's claim that Third-Party Defendants aided and abetted Thomas's breach of his fiduciary duties of care and loyalty by assisting Thomas in "usurping a corporate opportunity."  *See* Doc. No. 117 at 29.  Accordingly, Third-Party Defendants now move for summary judgment on all of the remaining theories of alleged wrongdoing related to DeRosa's sixth claim in his SAP including: (1) restructuring the equity purchase of Old LBF to an asset purchase in order to conceal Thomas's embezzlement and strip DeRosa of his security interest in the Technology; (2) underpaying for Old LBF and giving Thomas additional/undisclosed consideration as part of the purchase of Old LBF; and (3) refusing to provide DeRosa with information regarding the fact of and the terms of the proposed transaction.  *Id.* at 17–20; Doc. No. 210-1 at 15–23.

As an initial matter, the Court addresses DeRosa's assertion that Third-Party Defendants' "framing" of his allegations "is too narrow."[15]  Doc. No. 233 at 13.  In his opposition, DeRosa includes a new theory for his aiding and abetting claim based on

---

[14] The Court is not convinced by DeRosa's argument that he could not return the payment because "no one would communicate with him."  Doc. No. 233 at 24.  DeRosa, a sophisticated software engineer, had already engaged counsel by the time he received Thomas's email and has provided no evidence that he attempted to return the payment.

[15] DeRosa ignores that Third-Party Defendants framed the remaining issues regarding DeRosa's aiding and abetting claim in the same way the Court previously characterized his allegations in its Order on the Third-Party Defendants' most recent motion to dismiss.  *See* Doc. No. 117 at 17–18.

Third-Party Defendants' alleged use of the Technology without paying for it.  *Id.*
DeRosa argues that Third-Party Defendants' "purported royalty-free license" in the
Technology is part of an "overall scheme."  *Id.* at 18.  This new theory is not reflected in
DeRosa's SAP.  A plaintiff may not raise new theories for the first time on summary
judgment.  *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006).
Therefore, because DeRosa did not include these allegations in the SAP, the Court finds
that DeRosa failed to provide Third-Party Defendants with adequate notice of the
evidence they would need to defend against DeRosa's new allegations.  In addition,
because the Court has found that DeRosa has no interest in the Technology, the Court
agrees with Third-Party Defendants that "any payment purportedly due for use of the
Technology would be due to Old LBF, not DeRosa," Doc. No. 249 at 4, and that DeRosa
therefore lacks standing to pursue this theory.[16]  Accordingly. DeRosa's new theory will
be disregarded.

"Under California law, '[l]iability may . . . be imposed on one who aids and abets
the commission of an intentional tort if the person (a) knows the other's conduct
constitutes a breach of duty and gives substantial assistance or encouragement to the
other to so act or (b) gives substantial assistance to the other in accomplishing a tortious
result and the person's own conduct, separately considered, constitutes a breach of duty
to the third person.'"   *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101,
1118 (C.D. Cal. 2003) (quoting *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325–26
(1996)); *see also In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006).  To
establish liability for aiding and abetting, a plaintiff must prove: (1) the fact of
perpetration of the overall improper scheme; (2) the aider and abettor's knowledge of
such a scheme; and (3) the aider and abettor's substantial assistance furthered the scheme.
*Harmsen v. Smith*, 693 F.2d 932, 943 (9th Cir. 1982).  "Knowledge is the crucial

---

[16] DeRosa does not dispute that he only brings this claim individually and not derivatively on behalf of
Old LBF.  SAP ¶ 182; *see Schrage v. Schrage*, 69 Cal. App. 5th 126, 153, 158 (2021).

element" of aiding and abetting liability. *See In re First All. Mortg. Co.*, 471 F.3d at 995 (quoting *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1145 (2005)). If there is actual knowledge, even "ordinary business transactions" can qualify as substantial assistance. *See id.*

Here, Third-Party Defendants do not dispute that Thomas owed fiduciary duties to DeRosa or that Thomas breached those duties. Instead, they argue that DeRosa fails to provide any evidence that Third-Party Defendants substantially assisted or encouraged Thomas's alleged breaches. Doc. No. 210-1 at 17. Third-Party Defendants also argue that certain aspects of DeRosa's theories of aiding and abetting fail as a matter of law. *Id.* at 17–18.

        a.    <u>Restructuring of the Old LBF Sale Transaction</u>

In his SAP, DeRosa alleges that Third-Party Defendants provided substantial aid, assistance, and encouragement to Thomas in his breach of fiduciary duties by "restructur[ing] the planned equity purchase of Old LBF and call[ing] the new agreement an asset purchase" in order to (1) conceal Thomas's embezzlement of Old LBF and to (2) assist Thomas in stripping DeRosa of his security interest in the Technology. SAP ¶ 178. Third-Party Defendants point to several undisputed facts, including DeRosa's deposition testimony where he states he has no "specific knowledge" of Third-Party Defendants assisting Thomas in preparing false financial statements and that Gundumogula read part of a due diligence report to DeRosa informing him that Thomas had misappropriated certain Old LBF assets, to argue that DeRosa has failed to show they substantially assisted Thomas in concealing any alleged embezzlement. Doc. No. 210-1 at 17–18. In response, DeRosa argues that his own deposition testimony should not be dispositive because he "has never claimed to be a lawyer or forensic accountant" and that his "deposition was not a memory test and his personal knowledge is not controlling." Doc. No. 233 at 19. Upon a thorough review of the record and the parties' briefing, the Court finds that DeRosa has failed to provide sufficient evidence showing that Third-Party Defendants substantially assisted Thomas in any concealment of embezzlement of

Old LBF's assets.

Regarding DeRosa's theory that Third-Party Defendants restructured the Old LBF sale in order to aid and abet Thomas in stripping DeRosa of his security interest in the Technology, the Court finds this theory is not actionable because, as stated above, DeRosa's interest in the Technology had already terminated. As such, "there is simply no nexus between changing the mechanics" of the sale and any alleged "stripping" of DeRosa's security interest. Doc. No. 210-1 at 18.

> ### b.  Underpaying for Old LBF and Thomas's Additional/Undisclosed Consideration

Third-Party Defendants argue that DeRosa's theory they provided substantial assistance to Thomas in his breach of fiduciary duties by "further conceal[ing] Thomas's looting of Old LBF's assets by agreeing to pay Old LBF significantly less than Old LBF's equity and assets were worth" is not actionable as a matter of law. Doc. No. 210-1 at 18–19. Specifically, Third-Party Defendants argue that this claim cannot be brought by DeRosa as an individual, and instead must be brought derivatively on behalf of Old LBF because the crux of DeRosa's claim is that Old LBF itself has been harmed. *Id.* at 19. The Court agrees.

DeRosa's renewed reliance on *Jara v. Suprema Meats, Inc.*, 121 Cal. App. 4th 1238 (2004) is unpersuasive.[17] Doc. No. 233 at 22. DeRosa argues that under *Jara*, because Old LBF was a closely-held business, "any injury to Old LBF is an injury to DeRosa that may be raised directly." *Id.* Recently, the California Court of Appeal has stated that it has "doubt whether *Jara* was correctly decided." *Schrage v. Schrage*, 69 Cal. App. 5th 126, 155 (2021). In addition, *Jara* is easily distinguished from the case at bar. In *Jara*, the minority shareholder of a corporation alleged the two other shareholders

---

[17] At the hearing on Third-Party Defendants' most recent motion to dismiss, DeRosa urged the Court to find that under *Jara*, he could maintain his individual aiding and abetting claim based on his "usurping a corporate opportunity" theory and that he did not need to bring it as a derivative action. *See* Doc. No. 117 at 19 n.7. The Court declined to adopt DeRosa's reasoning. *Id.*

breached their fiduciary obligations by paying themselves excessive executive compensation without the plaintiff's approval and for the purpose of reducing the amount of profit to be shared with the plaintiff.  121 Cal. App. 4th at 1248, 1258.  The plaintiff did not allege the two majority shareholders mismanaged the corporation; in fact, the corporation's *success* enabled the majority shareholders to increase their executive compensation.  *Id.* at 1247.

In the instant case, on the other hand, DeRosa alleges that Third-Party Defendants aided and abetted Thomas in essentially "mismanaging" Old LBF by dissipating its assets.  SAP ¶¶ 179, 182.  Indeed, while the corporation at issue in *Jara* was an ongoing and profitable business, DeRosa concedes in his opposition that Old LBF was left "as a shell corporation that had no further business, no income, and [was] no longer [in] operat[ion]."  Doc. No. 233 at 19.  Moreover, if this Court allowed DeRosa to maintain this cause of action as an individual action, it would "essentially eliminate the derivative action rule in the context of close corporations and other closely held entities." *Schrage*, 69 Cal. App. 5th at 158.  And "California law does not support that result."  *Id.*

### c.     Refusing to Provide DeRosa with Information

Finally, Third-Party Defendants argue that DeRosa fails to provide evidence that they substantially assisted Thomas in breaching his fiduciary duties by refusing "to provide any information to DeRosa about the fact of and the terms of the proposed [Old LBF] transaction."[18]  Doc. No. 210-1 at 21; SAP ¶ 181.

Upon review of the evidence and the parties' briefing, the Court finds that DeRosa has failed to establish that Third-Party Defendants substantially assisted or encouraged Thomas in committing a breach by not providing *any* information about the transaction.

---

[18] Third-Party Defendants also argue that they did not owe DeRosa any duty "to keep him apprised of the terms of the LBF Sale Transaction."  Doc. No. 210-1 at 21.  However, as the Court previously ruled, defendants can be "liable for aiding and abetting a breach of fiduciary duty even though they did not owe a fiduciary duty to [a plaintiff.]"  Doc. No. 117 at 19 (citing *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451 (2014)).

Indeed, Third-Party Defendants point to DeRosa's own deposition testimony where he expressly acknowledges being provided information by Gundumogula about the proposed Old LBF sale. Doc. No. 210-1 at 22; TPDRS at No. 34. Moreover, DeRosa does not direct the Court to any contrary evidence that can establish substantial assistance by Third-Party Defendants. Therefore, the Court finds that summary judgment is appropriate on this issue as a matter of law.

Based on the foregoing, the Court **GRANTS** Third-Party Defendants' motion as to DeRosa's sixth cause of action.

### 3.    *Fraudulent Conveyance (Claim 7)*

Third-Party Defendants argue they are also entitled to summary judgment on DeRosa's seventh claim for fraudulent conveyance. Doc. No. 210-1 at 24. The elements for a fraudulent conveyance claim under common law are the same as under California's Uniform Voidable Transfer Act, California Civil Code § 3439.04. *See Lehman Bros. Holdings, Inc. v. Cafcalas*, No. LA CV16-03167 JAK (PJWx), 2018 U.S. Dist. LEXIS 229076, at *15–16 (C.D. Cal. Feb. 27, 2018) ("[T]he necessary elements and available remedies for a fraudulent transfer under common law are the same as under the UVTA[.]"); *see also Hyosung (Am.), Inc. v. Hantle USA, Inc.*, No. C 10–02160 SBA, 2011 U.S. Dist. LEXIS 21935, at *7 (N.D. Cal. Mar. 4, 2011) (citation omitted) (noting that in the UFTA,[19] "[T]he elements for a fraudulent transfer claim under common law or the UFTA, Cal. Civ. Code § 3439.04(a)(1), are the same."). "The UFTA permits defrauded creditors to reach property in the hands of a transferee." *Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003). "Under the UFTA, a transfer is fraudulent, both as to present and future creditors, if it is made '[w]ith actual intent to hinder, delay, or defraud any creditor

---

[19] California's Uniform Fraudulent Transfer Act ("UFTA") was superseded by California's Uniform Voidable Transactions Act ("UVTA"). *LBF Travel Mgmt. Corp. v. Derosa*, No. 20-CV-2404-MMA (AGS), 2022 WL 3588926, at *11 (S.D. Cal. Aug. 22, 2022).

of the debtor[,] and "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation."  *Id.* at 664; Cal. Civ. Code, § 3439.04(a).

Third-Party Defendants argue that DeRosa's claim fails because he cannot show an "actual intent to hinder, delay, or defraud any creditor of Old LBF" and because "Old LBF received reasonably equivalent value in exchange" for the Old LBF transaction. Doc. No. 210-1 at 26.  In order to prevail on his claim of fraudulent transfer against Third-Party Defendants, DeRosa must establish each of the following elements: (1) that DeRosa has a "claim" (as defined in California Civil Code § 3439.01(b)); (2) that Thomas "transferred" (as defined in California Civil Code § 3439.01(i)) an "asset" (as defined in California Civil Code § 3439.01(a)) to Third-Party Defendants; (3) that the assets were transferred with the actual intent to hinder, delay, or defraud one or more of Old LBF's creditors; (4) that DeRosa was harmed by the transfer; and (5) that Third-Party Defendants' conduct was a substantial factor in causing DeRosa's harm.

As an initial matter, the Court **GRANTS** summary judgment to Third-Party Defendants on DeRosa's fraudulent conveyance claim to the extent it is based on any "claim" to the Technology or any debt related to the payment of the Earn-Out Consideration.  DeRosa cannot satisfy element one above because, as the Court already found, he has no interest in the Technology because the Earn-Out Consideration was paid in full.  Therefore, he has no "right to payment."  *See* Cal. Civ. Code § 3439.01(b) (defining a "claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured").

Accordingly, as noted by Third-Party Defendants, DeRosa's claim then rests on his "right to payment from Thomas and Old LBF under the APA" and under DeRosa's services agreement as "Chief Technology Officer."  *See* Doc. No. 210-1 at 26 n.12; SAP ¶ 185.  Because the parties did not sufficiently brief the issue of whether DeRosa has a claim to any other payments under the APA or any other services agreement, and because the Court finds that there are genuine disputes over whether Old LBF was sold for a

1    "reasonably equivalent value," *see* AMF at Nos. 49–50, 55, 73, the Court **DENIES** the

2    remainder of Third-Party Defendants' motion on DeRosa's fraudulent conveyance claim.

3         *4.     Unfair Business Practices (Claim 11)*

4         DeRosa's eleventh cause of action alleges Third-Party Defendants violated

5    California's unfair competition law ("UCL") in violation of Business and Professions

6    Code § 17200.  SAP ¶¶ 211–231.  Specifically, DeRosa alleges Third-Party Defendants

7    "engaged in unlawful business acts or practices, including[] breach of fiduciary duties,

8    fraudulent conveyance, making fraudulent statements, and other illegal acts and practices

9    . . . all in an effort to gain unfair competitive advantage over DeRosa." *Id.* ¶ 212.

10        California's Unfair Competition Law prohibits unfair competition by means of any

11   unlawful, unfair or fraudulent business practice.  Cal. Bus. & Prof. Code §§ 17200–

12   17210.  Because the statute is written in the disjunctive, it prohibits three separate types

13   of unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, and

14   (3) fraudulent acts or practices.  *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1127 (9th

15   Cir.2009).  Here, DeRosa alleges Third-Party Defendants violated all three sub-parts of

16   the UCL.  SAP ¶ 214.

17        In their motion for summary judgment, Third-Party Defendants assert DeRosa's

18   UCL claim fails for a multitude of reasons, including failure to proffer sufficient evidence

19   to support a violation under the unlawful, unfair, or fraudulent prong.  Doc. No. 210-1 at

20   27.  Specifically, Third-Party Defendants argue DeRosa's eleventh claim fails because

21   they "owed no fiduciary duties to DeRosa at any time," "DeRosa's claim for fraudulent

22   conveyance fails," and "DeRosa has no evidence of any false statement the [Third Party

23   Defendants] allegedly made, nor is there any evidence of any alleged reliance on such

24   statements." *Id.*  In addition, Third-Party Defendants argue that DeRosa's UCL claim

25   fails to the extent it is based on DeRosa's allegation that they "paid far less for Old LBF

26   . . . than it was worth" and that he still has an ownership interest in the Technology.  *Id.* at

27   28.  In opposition, DeRosa only addresses Third-Party Defendants' arguments regarding

28   the price they paid for Old LBF and his ownership interest in the Technology.  Doc.

No. 233 at 26–27.

Because the Court previously ruled that DeRosa has no ownership interest or lien in the Technology, and because the Court granted Third-Party Defendants' summary judgment motion on DeRosa's aiding and abetting claim, the Court **GRANTS** summary judgment to Third-Party Defendants as to DeRosa's UCL claim to the extent it relies on these allegations.[20]  SAP ¶¶ 217, 221–22.  In addition, because DeRosa did not dispute Third-Party Defendants' argument that they did not owe him any fiduciary duties, the Court likewise **GRANTS** summary judgment to Third-Party Defendants as to the UCL claim to the extent it is based on their failure "to give notice of the de facto merger to DeRosa."  SAP ¶ 220, 225, 227.  However, the Court finds that DeRosa's UCL claim must survive to the extent it is based on the remaining portion of DeRosa's fraudulent conveyance claim, *see supra* Section III.E.3.  Accordingly, Third-Party Defendants' motion for summary judgment is **DENIED** to this extent.

### 5. Unjust Enrichment (Claim 14)

Finally, Third-Party Defendants move for summary judgment on DeRosa's fourteenth cause of action for unjust enrichment.  Doc. No. 210-1 at 29.  As to Third-Party Defendants, DeRosa alleges that "[t]hrough Gundumogula's fraudulent misstatements, acting in his capacity as CEO of Mondee Inc., DeRosa was dissuaded from investigating Thomas'[s] fraud and bringing suit against Old LBF and Thomas before Old LBF's assets were sold to Mondee Inc." and that Third-Party Defendants' "enrichment was at DeRosa's expense."  SAP ¶ 242–243.

Here, Third-Party Defendants argue that even assuming Gundumogula made any "fraudulent misstatements" to DeRosa, "they obviously did not dissuade DeRosa from investigating and pursuing his alleged fraud claims against Old LBF and Thomas before

---

[20] Accordingly, the Court notes that DeRosa is not entitled to any of the relief he seeks related to the Technology.  SAP ¶ 230.

Mondee's acquisition of Old LBF's assets."[21]  Doc. No. 210-1 at 29.  The Court agrees because the undisputed evidence shows that DeRosa engaged a lawyer and filed a state court lawsuit before the Old LBF sale.  TPDRS at Nos. 16–20.  In addition, DeRosa does not dispute this argument.  Instead, DeRosa now claims that Third-Party Defendants' unjust enrichment stems from their "improper[] use of the Technology at no cost."  Doc. No. 233 at 27–28.  As stated above, DeRosa may not raise new theories for the first time on summary judgment.  *Pickern*, 457 F.3d at 969.  Therefore, the Court disregards DeRosa's new theory of unjust enrichment and **GRANTS** Third-Party Defendants' motion for summary judgment on DeRosa's fourteenth cause of action.

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. DeRosa's motion to exclude Anderson's opinions, Doc. No. 203, is **DENIED**.

2. Plaintiffs' motion to exclude Rugeti's opinions, Doc. No. 205, is **DENIED without prejudice**.

3. Third-Party Defendants' motion to exclude Rugeti's opinions, Doc. No. 211, is **DENIED**.

4. Plaintiffs' motion for partial summary judgment, Doc. No. 204, is **GRANTED in part** and **DENIED in part**.

5. DeRosa's motion for summary judgment, Doc. No. 208, is **GRANTED in part** and **DENIED in part**.

6. Third-Party Defendants' motion for summary judgment, Doc. No. 210, is **GRANTED in part** and **DENIED in part**.

Because there are remaining claims[22] in Plaintiffs' Complaint, Doc. No. 1, against

---

[21] Third-Party Defendants also renew their argument from their previous motion to dismiss that unjust enrichment is not a standalone cause of action in California.  Doc. No. 210-1 at 29 n.14.  As the law is still unsettled in the Ninth Circuit, the Court declines to address this argument again.  *See LBF Travel Mgmt. Corp.*, 2022 WL 3588926, at *15.

[22] As consistent with this Order, only Claims 1 and 2 to the extent Plaintiffs seek injunctive relief remain against DeRosa.

DeRosa, and remaining claims[23] in DeRosa's SAP, Doc. No. 74, against both Plaintiffs and Third-Party Defendants that must proceed to trial, the Court will issue a scheduling order setting forth all relevant pretrial deadlines and hearings in due course.  Further, the Court **ORDERS** the parties to jointly contact the chambers of the assigned magistrate judge within five (5) business days of the date this Order is filed, for the purpose of scheduling a mandatory settlement conference at the convenience of the magistrate judge.

**IT IS SO ORDERED**.

Dated:  March 26, 2024

HON. MICHAEL M. ANELLO
United States District Judge

---

[23] As consistent with this Order, only part of Claims 7 and 11 remain against Third-Party Defendants.  In addition, as stated above, Claims 1–5, 7–8, 10–11, and 14–15 still remain against Plaintiffs.